IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SGCI HOLDINGS III LLC and SOOHYUNG KIM, | |
| *Plaintiffs*, | Case No. 24-1204-RC |
| v. | |
| FEDERAL COMMUNICATIONS COMMISSION; JESSICA ROSENWORCEL, in her official capacity as Chairwoman of the FCC; HOLLY SAURER, in her official capacity as Chief of the Media Bureau; THE ALLEN MEDIA GROUP, INC., f/k/a Entertainment Studios, Inc.; DISH NETWORK CORPORATION; THE GOODFRIEND GROUP, INC.; THE NEWSGUILD-CWA; NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES AND TECHNICIANS-CWA; UNITED CHURCH OF CHRIST, OC INC., d/b/a United Church of Christ Media Justice Ministry; COMMON CAUSE; BYRON ALLEN; CHARLES ERGEN; and DAVID GOODFRIEND, | |
| *Defendants*. | |

**THE GOODFRIEND DEFENDANTS'
MEMORANDUM SUPPORTING THEIR MOTION TO DISMISS**

## Table of Contents

Introduction ............................................................................................................... 1

Summary of the Amended Complaint ................................................................... 4

Argument ................................................................................................................... 5

   I.   The Amended Complaint should be dismissed, in its entirety and with prejudice, because the conduct it challenges was protected, in its entirety, by the First Amendment ........................................................................................ 5

       A.   First Amendment protections for petitioning the Government cannot be pierced by slinging accusations of racism ......................................................... 7

       B.   As a matter of law, the Goodfriend Defendants' efforts to influence the FCC were not "sham" efforts, which is the only thing that could pierce their First Amendment immunity ........................................................................ 7

   II.   The Amended Complaint also should be dismissed because it fails to allege sufficient facts to make out discriminatory intent even at the pleading stage. ...... 9

       A.   As against the Goodfriend Defendants, the Amended Complaint's only allegations of discriminatory intent focus on just three statements, none of which raise an inference of their discriminatory intent .................................... 9

       B.   The public FCC record, which is subject to judicial notice, contains clear facts demonstrating the Goodfriend Defendants' genuinely *nondiscriminatory* motives for questioning Mr. Kim's transaction, making Plaintiffs' wholly conclusory allegations of their discriminatory intent at best possible but not plausible, which is not enough even at the pleading stage ...................... 12

       C.   The Amended Complaint's wholly conclusory allegations of discriminatory intent are also fatally undercut by its profuse, contradictory acknowledgments of every Defendant's obvious nondiscriminatory motives ................................................................................ 15

   III.   The Amended Complaint also should be dismissed because it does not plausibly plead that the Goodfriend Defendants caused Mr. Kim's losses .......... 18

       A.   The Amended Complaint's theory of causation is not viable ........................... 18

B.   The Amended Complaint's attenuated causation allegations also fail to satisfy Plaintiffs' burden of establishing Article III standing............................ 18

IV.   The Amended Complaint's conspiracy allegations do not save it ......................... 19

Conclusion ................................................................................................................... 22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akyar v. TD Bank US Holding Co.,*
No. 18-CV-379 (VSB), 2018 WL 4356734 (S.D.N.Y. Sept. 12, 2018) ..........................8, 17

\* *Alemu v. Dept. of For-Hire Vehicles,*
327 F. Supp.3d 29 (D.D.C. 2020) (Contreras, J.) ................................................................

\* *Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................15, 19, 20

\* *Autor v. Pritzker,*
740 F.3d 176 (D.C. Cir. 2014) ........................................................................................6

*Barnes v. Dist. of Columbia,*
238 F. Supp.3d 106 (D.D.C. 2017) ................................................................................17

*Beck v. Prupis,*
529 U.S. 494 (2000) ........................................................................................................20

\* *Bell Atlantic v. Twombly,*
550 U.S. 544 (2007) ..................................................................................................15, 18

*Black Lives Matter D.C. v. Trump,*
544 F. Supp.3d 15 (D.D.C. 2021) ..................................................................................20

\* *Boone v. Redevelopment Agency of San Jose,*
841 F.2d 886 (9th Cir. 1988) ........................................................................................20

*Borough of Duryea, Pa. v. Guarnieri,*
564 U.S. 379 (2011) ........................................................................................................6

*Brown & Root, Inc. v. Louisiana State-AFL-CIO,*
10 F.3d 316 (5th Cir. 1994) ............................................................................................6

*Brownlee v. Lear Siegler Mgmt. Servs. Corp.,*
15 F.3d 976 (10th Cir. 1994) ........................................................................................16

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1977) ......................................................................................................18

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991)..........................................................................................8

\* *Eastern R.R. Presidents Conf. v. Noerr Motor-Freight, Inc.*,
365 U.S. 127 (1961).............................................................................1, 2, 5, 7

\* *Federal Prescription Service, Inc. v. Am. Pharmaceutical Ass'n.*,
663 F.2d 253 (D.C. Cir. 1981)........................................................................6

*Freedom Watch, Inc. v. Google, Inc.*,
368 F. Supp.3d 30 (D.D.C. 2019)...................................................................21

*Harris v. Mayorkas*,
No. 21-cv-1083 (GMH), 2022 WL 3452316 (D.D.C. Aug. 18, 2022)..............12

*Jenkins v. Howard Univ.*,
No. CV 22-0874 (RC), 2023 WL 3948815 (D.D.C. June 12, 2023)..................13

*Jones v. Louisiana State Bar Ass'n*,
738 F. Supp.2d 74 (D.D.C. 2010)....................................................................6

*Keith v. GAO*,
No. 21-2010 (RC), 2022 WL 3715576 (Aug. 29, 2022).......................................11

*Mekuria v. Bank of Am.*,
883 F. Supp.2d 10 (D.D.C. 2011) ..................................................................12

*Metro Cable Co. v. Rockford, Inc.*,
516 F.2d 220 (7th Cir. 1975)............................................................................20

*Morgan v. District of Columbia*,
550 F. Supp. 465 (D.D.C. 1982) .....................................................................19

*Murthy v. Missouri*,
144 S. Ct. 1972 (2024)...............................................................................3, 18-19

*NAACP v. Claiborne Hardware*,
458 U.S. 886 (1982)........................................................................................5, 6

*Nader v. Democratic Nat. Comm.*,
555 F. Supp.2d 137 (D.D.C. 2008), *aff'd*, 567 F.3d 692 (D.C. Cir. 2009) ...........6

\* *Nader v. Democratic Nat'l Committee*,
567 F.3d 692 (D.C. Cir. 2009).........................................................................5

iv

*Nanko Shipping, Guinea v. Alcoa, Inc.*,
    330 F. Supp. 3d 439 (D.D.C. 2018) ...................................................................19

*Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...................................................................................5, 8

\*   *R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ........................................................................................7

*Regan v. Tax'n With Representation of Washington*,
    461 U.S. 540 (1983) ........................................................................................5

*Theme Promotions, Inc. v. NewsAmerica Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ...........................................................................5

*Thomas v. District of Columbia*,
    No. 21-cv-00584 (CRC), 2022 WL 2817855 (July 19, 2022) ...............................12

\*   *United Mine Workers v. Pennington*,
    381 U.S. 657 (1965) .....................................................................................2-3

*Venetian Casino Resort, LLC v. NLRB*,
    793 F.3d 85 (D.C. Cir. 2015) .......................................................................5, 6

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
    858 F.2d 1075 (5th Cir. 1988) ..........................................................................5

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..........................................................................5

**Statutes, Rules, and Regulations**

42 U.S.C. § 1985 ....................................................................................................20

Sherman Act ...........................................................................................................5

47 C.F.R. § 1.1200 *et seq.* ......................................................................................9

Fed. R. Civ. Proc. 12(b)(1) ...................................................................................19

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................22

**Other Sources**

\*   FCC Hearing Designation Order, *In re Tegna, Inc.*,
     MB No. 22-162 (Feb. 24, 2023), https://perma.cc/N7U5-LQ57 ......................................13

**Introduction**

Plaintiffs' case is an attack on core protected political speech. The Amended Complaint pleads nothing except citizens and businesses exercising their fundamental First Amendment right to petition the Government. Mr. Kim is suing David Goodfriend and his firm, the Goodfriend Group, merely for urging the FCC not to approve a merger transaction that Mr. Kim was backing. Mr. Goodfriend was representing two clients, NewsGuild-CWA, the largest union of journalists in the country, and NABET-CWA, the National Association of Broadcast Employees and Technicians. His clients were opposing the transaction, on grounds they have opposed transactions before—their concerns about how mergers in the telecommunications field cost their members jobs and ravage local independent journalism. In representing them, Mr. Goodfriend, a respected telecommunications lawyer, was doing what lawyers, consultants, and lobbyists lawfully do every day. He was making his client's views known to the Government. That's conduct at the very heart of the First Amendment—and representative democracy. It's not an overstatement to say, as the Supreme Court has said, that "to a very large extent, the whole concept of" representative democracy depends on the ability of the people "to make their views known to" Government. *Eastern R.R. Presidents Conf. v. Noerr Motor-Freight, Inc.*, 365 U.S. 127, 137 (1961). Plaintiffs' Amended Complaint ambushes the First Amendment, representative government, and regulatory agencies.

If this case is allowed to go forward, then no lawyer, consultant, or lobbyist working in Washington, D.C. or any state capital should consider themselves safe. If this case is

not dismissed at the outset, it will encourage innumerable other disgruntled regulated entities to avenge their losses in administrative proceedings by suing opposing lawyers, consultants, and lobbyists. Like Mr. Kim, they will see every defeat as a constitutional tort. Like Mr. Kim, they will be tempted to sue every other participant in their administrative proceedings. Witness the vast cast of alleged coconspirators in this case. Agency officials, whom Mr. Kim has also sued here, will not be safe either. They may hesitate to conduct reviews, to do their jobs, for fear of being sued too.

As against the Goodfriend Defendants, Plaintiffs' Amended Complaint should be dismissed in its entirety and with prejudice.[1] There are four main reasons to dismiss. *First*, the Goodfriend Defendants have First Amendment immunity—which is not lost because Mr. Kim is slinging accusations of racism. *Eastern R.R. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961) ("The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so"); *United Mine*

---

[1] "Goodfriend Defendants" refers to David Goodfriend and his firm. Mr. Goodfriend is a respected telecommunications lawyer, Georgetown Law adjunct professor, federally registered lobbyist, and former White House, Congressional, and FCC official. https://www. istreetadvocates.com/david-goodfriend. From 1993 to 1995, Mr. Goodfriend worked for Robert Underwood (D-Guam), a member of the U.S. Congressional Asian Pacific Islander caucus, on issues ranging from indigenous rights to fighting discrimination against Asian Americans in the military. Mr. Goodfriend's firm— incorporated as Emmer Consulting, Inc., now operating under the name "I Street Advocates," and formerly known as "The Goodfriend Group"—represents non-profit organizations, corporations, and labor unions on issues ranging from federal funding for children who survive cancer to increasing competition in the ticket resale industry. https://www.istreetadvocates.com/.

*Workers v. Pennington,* 381 U.S. 657, 670 (1965) ("*Noerr* shields ... a concerted effort to influence public officials regardless of intent of purpose").

*Second*, Plaintiffs' contrived narrative about race discrimination fails to plead a prima facie case of racist intent.

*Third*, on the question of causation, Plaintiffs have pled themselves out of court. And at the same time, by failing to sufficiently plead causation they have failed to meet their burden of demonstrating their Article III standing. *Murthy v. Missouri*, 144 S. Ct. 1972 (2024).

*Fourth*, no part of Plaintiffs' Amended Complaint is saved by its farfetched government conspiracy allegations. And without a viable conspiracy claim purporting to spread liability for other Defendants' alleged actions and motivations to the Goodfriend Defendants, the remaining allegations against the Goodfriend Defendants are too vague and sparse to state claims, even apart from their other deficiencies.

## Summary of the Amended Complaint

Plaintiffs have alleged an extravagant conspiracy with a sprawling cast of characters, inside and outside of government, who supposedly colluded so that the Federal Communications Commission would "kill" a merger transaction proposed by Plaintiff Kim— allegedly because no one in that vast cast was "about to let" a Korean American succeed. Am. Compl. ¶¶ 3, 24, 288, 378.[2]

According to Plaintiffs, if the transaction had closed, it would have netted Mr. Kim and his company "billions of dollars in benefits, " Am. Comp. ¶ 350, but it didn't close because its success was contingent on a financing package that expired before the FCC finished reviewing the deal, which is allegedly Defendants' fault. Am. Compl. ¶¶ 11–12, 261, 323. Under Mr. Kim's theory in the Amended Complaint, but for the private Defendants' objections to the transaction (Am. Compl. ¶ 371), but for the FCC Defendants allegedly in thrall to the private Defendants (Am. Compl. ¶¶ 161, 272, 298, 309, 383), and but for everyone's shared specific intent to stop this merger at all costs, because Mr. Kim

---

[2] According to the Amended Complaint, the coconspirators here included: (a) Senator Elizabeth Warren (D-MA); (b) the then-Speaker of the House, Nancy Pelosi (D-CA); (c) four nonprofits, two of them highly respected unions representing journalists, NewsGuild and the Nat. Assoc. of Broadcast Employees and Technicians (NewsGuild-CWA and NABET-CWA),and the other two storied organizations of uncommon virtue, Common Cause and the United Church of Christ Media Justice ministry; (d) two established media/communications companies and their CEOs—Allen Media Group, Byron Allen, DISH Network, and Charles Ergen; (e) a federal agency, its chairwoman and one of its bureau chiefs—the FCC, Jessica Rosenworcel, and Holly Saurer; and (f) David Goodfriend, a respected telecommunications lawyer, Georgetown Law adjunct professor, federally registered lobbyist, and former White House, Congressional, and FCC official, and his firm, the Goodfriend Group. Am. Compl. ¶ 24.

is Korean American (Am. Compl. ¶ 345), surely the merger would have been approved, with time to spare (Am. Compl. ¶ 379).

Argument

I. **The Amended Complaint should be dismissed, in its entirety and with prejudice, because the conduct it challenges was protected, in its entirety, by the First Amendment.**

Petitioning the Government—urging legislative, administrative, or judicial action—is First Amendment protected conduct. *Noerr Motor-Freight,* 365 U.S. 127; *Pennington, supra,* 381 U.S. 657.[3]

---

[3] In correspondence between the parties, Plaintiffs have suggested that immunity for petitioning the government is a Sherman Act doctrine created by the Supreme Court in *Noerr* and *Pennington*, with no application outside of antitrust law. That's wrong. "Lobbying is protected by the First Amendment." *Regan v. Tax'n With Representation of Washington*, 461 U.S. 540, 552 (1983) (Blackmun, J., concurring). "Noerr and Pennington are antitrust cases, *but they stand for the proposition that* when a person petitions the government for redress, the First Amendment prohibits any sanction on that action … so long as the petition was in good faith." *Nader v. Democratic National Committee,* 567 F.3d 692, 696 (D.C. Cir.2009) (emphasis added). They "implement th[e] general principle" that petitioning the government is constitutionally protected conduct. *Venetian Casino Resort, LLC v. NLRB,* 793 F.3d 85, 89–90 (D.C. Cir. 2015). The First Amendment immunity recognized in *Noerr* and *Pennington* "applies equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). "There is simply no reason that" claims outside of antitrust "can any more permissibly abridge or chill the constitutional right of petition." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988); *Theme Promotions, Inc. v. NewsAmerica Mktg FSI*, 546 F.3d 991 (9th Cir. 2008) (same). See also *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 59 (1993) (acknowledging that the Supreme Court has invoked *Noerr* in contexts besides antitrust); *NAACP v. Claiborne Hardware*, 458 U.S. 886, 913–15 (1982) ("Like the railroads in *Noerr*," civil rights activists trying to influence government to vindicate their equal rights are protected by the First Amendment).

"Every person engaged … in trying to persuade [governmental] action is exercising the First Amendment right of petition." *Brown & Root, Inc. v. Louisiana State-AFL-CIO*, 10 F.3d 316 (5th Cir. 1994). And the immunity for petitioning is broad. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927–28 (1982) (extending First Amendment protections even to impassioned petitions that were designed to cause plaintiffs economic harm and also contained exhortations to violence). The right to petition is among the most basic rights between the governed and their governors. It dates back to the Magna Carta. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 395 (2011); *Venetian Casino Resort, LLC v. NLRB*, 793 F.3d 85, 89-90 (D.C. Cir. 2015).

Genuine attempts to influence government action are "securely within the protection" of the First Amendment. *Federal Prescription Service, Inc. v. Am. Pharmaceutical Ass'n.*, 663 F.2d 253, 262 (D.C. Cir. 1981). And Plaintiffs' Amended Complaint alleges nothing else. First Amendment immunity shields the Goodfriend Defendants from everything that Plaintiffs' Amended Complaint alleges. *Autor v. Pritzker*, 740 F.3d 176, 182 (D.C. Cir. 2014) ("[R]egistered lobbyists are protected by the First Amendment right to petition"); *Nader v. Democratic Nat. Comm.*, 555 F. Supp.2d 137 (D.D.C. 2008), aff'd, 567 F.3d 692 (D.C. Cir. 2009) (dismissing a complaint alleging a civil conspiracy to petition the government as barred by First Amendment immunity); *Jones v. Louisiana State Bar Ass'n*, 738 F. Supp.2d 74 (D.D.C. 2010) (where "it is clear that all of plaintiff's allegations … solely concern [defendant law firm's] petitioning activities on behalf of their clients before various governmental bodies," those allegations are barred by the First Amendment).

A. **First Amendment protections for petitioning the Government cannot be pierced by slinging accusations of racism.**

If Plaintiffs hoped to pierce the Goodfriend Defendants' immunity by slinging accusations of racism, they're foreclosed. The First Amendment shields efforts to influence government action regardless of motive or purpose. *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ("fighting words," obscenity, and defamation may fall outside of First Amendment protections, but even bias-motivated speech does not). *Eastern R.R. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961) ("The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so"); *United Mine Workers v. Pennington,* 381 U.S. 657, 670 (1965) ("*Noerr* shields ... a concerted effort to influence public officials regardless of intent of purpose").

B. **As a matter of law, the Goodfriend Defendants' efforts to influence the FCC were not "sham" efforts, which is the only thing that could pierce their First Amendment immunity.**

Exceptions to First Amendment immunity exist for genuinely "sham" efforts to petition the government: baseless efforts undertaken without any goal of influencing government action are not protected. In a wispy effort to squeeze this case within that exception, Plaintiffs have tacked a conclusory allegation onto the very end of their Amended Complaint, asserting that "From that day on, Defendants pursued a strategy *not meant to genuinely influence or persuade* the FCC." Am. Compl. ¶ 323 (on p. 124) (emphasis added). But as a matter of law, such a bare conclusory assertion ("a strategy not meant to genuinely influence or persuade") is insufficient to bring Plaintiffs' claims

within s "sham" exception. See *Alemu v. Dept. of For-Hire Vehicles*, 327 F. Supp.3d 29, 52 (D.D.C. 2020) (Contreras, J.) (granting motion to dismiss claims that plaintiffs had been defrauded by an agency corrupted by private interests opposed to their own, while noting both that legitimate lobbying "fail[s] to satisfy the 'sham' exception" and that governmental action between a defendant's petitioning and any regulatory setback experienced by a plaintiff "severs the causal chain").

"Any lobbyist or applicant, in addition to getting himself heard, seeks by procedural and other means to get his opponent ignored." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 382 (1991). Policing the boundaries of those strategies impermissibly trenches on the First Amendment, which is why "[i]f the denial was wrongful there may be other remedies," but not litigation against opponents. *Id.* See also *Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993) (quotation omitted) ("[A] successful effort to influence governmental action ... certainly cannot be characterized as a sham"). And see: https://www.fcc.gov/ecfs/document/ 111521023279/1 (letter in the public record, from Mr. Goodfriend to the FCC, summarizing the genuine disparities between what Mr. Kim was telling the FCC and what he was telling his lenders, validating and substantiating Defendants' objections to his transaction).

\* \* \* \* \* \*

By itself, the Goodfriend Defendants' First Amendment immunity requires dismissing all claims against them, with prejudice.

8

**II.   The Amended Complaint also should be dismissed because it fails to allege sufficient facts to make out discriminatory intent even at the pleading stage.**

The Goodfriend Defendants are entitled to First Amendment Immunity, requiring dismissal here. But even if they were not, the Amended Complaint fails to allege sufficient facts to raise any inference that they harbored any discriminatory intent. And that deficiency also requires dismissal.

**A.   As against the Goodfriend Defendants, the Amended Complaint's only allegations of discriminatory intent focus on just three statements, none of which raise an inference of their discriminatory intent.**

The Amended Complaint broadly accuses the Goodfriend Defendants of "race-based attacks" and "twenty-first-century race-baiting." Am. Compl. ¶¶ 20, 22. But as evidence for those labels it points to only *three* statements by the Goodfriend Defendants, none of which are probative of discriminatory intent.

The first statement is a fabrication. Plaintiffs allege that the Goodfriend Defendants maligned Mr. Kim as a "*shadowy foreign investor*." The Goodfriend Defendants never spoke or used the words "shadowy foreign investor"—about Mr. Kim or anyone else. Am. Compl. ¶¶ 5, 151, 174, 320. Plaintiffs are twisting the wording of two letters that Mr. Goodfriend wrote to the FCC, referring to "anonymous foreign investment" in Mr. Kim's project.[4] And those three words ("anonymous foreign investment"), the only words the

_____

[4] The Amended Complaint cites these letters in its footnotes 99 and 99. The letters are available at https://perma.cc/3TTV-PAJN and https://perma.cc/AR9L-WFPG. The Amended Complaint falsely insinuates that these letters were improper "ex parte" communications. But under its "permit-but-disclose" policy, the FCC expressly authorizes these communications. They are standard part of practice before the FCC. 47 C.F.R. § 1.1200 *et seq.*

Goodfriend Defendants spoke or wrote, do not malign *or even refer to* Mr. Kim, who is an American citizen raised in Queens, neither foreign nor anonymous. What's more, the phrase anonymous foreign investment" is, as even Plaintiffs concede, an accurate description of the substantial, anonymous third-party investors in offshore equity and investment funds who were providing financing to Mr. Kim. "Shadowy foreign investor" is not probative of discriminatory intent here—because the Goodfriend Defendants never spoke or said those words.

The second statement from which Plaintiffs labor to extract discriminatory animus is Mr. Goodfriend's statement, in the same two letters, that "China increased tensions in the Taiwan Strait." Am. Compl. ¶¶ 19, 174, 189. And here once again, Plaintiffs have willfully misconstrued the record. They have plucked this reference to China and Taiwan out of context, selectively quoting only half the sentence in which those words appear, seemingly to try to smear Mr. Goodfriend as categorically anti-Asian, allegedly hostile not just to Mr. Kim but also to the Chinese and possibly the Taiwanese. That is deliberate distortion. What the letters actually say is that:

> Since the announcement of the proposed transaction in this proceeding, ***Russia invaded Ukraine and*** China increased tensions in the Taiwan Strait. The Commission should not assume that [the interagency Committee on Foreign Investment in the U.S., or CFIUS] alone is responsible for the implications of ***anonymous foreign investment.***" (Emphasis added).[5]

Once again, the *actual language*, rather than Plaintiffs' distortions of it, is not about Mr.

---

[5]The two letters are available at https://perma.cc/3TTV-PAJN and https://perma.cc/AR9L-WFPG.

Kim. And neither is it plausibly anti-Asian. The reference to China and the Taiwan Strait

appears in a discussion of global geopolitical issues. And it follows immediately on the

heels of the same observation about Russia and Ukraine, which, however, Plaintiffs have

conspicuously and misleadingly edited out—to manufacture their false anti-Asian-

narrative.[6] This second statement, like the first, neither establishes nor raises any

inference of discriminatory animus. And the same is true of the third and last statement.

The third and last statement that the Amended Complaint attributes to the

Goodfriend Defendants—a statement incessantly repeated in the Amended Complaint,

¶¶ 4, 19, 147, 174, 228, 290, 345— is a statement that Mr. Kim's transaction would "do

nothing" to advance diversity. But those words *were not written, signed, or spoken by the*

*Goodfriend Defendants.* They appear in a filing, part of the public record, written and made

*not* by the Goodfriend Defendants but by other lawyers (and available at

https://perma.cc/QY5N-HPB3). Plaintiffs have willfully misrepresented the public record,

accusing the Goodfriend Defendants of a statement they demonstrably did not make.

In short, despite its prolix 142 pages and 399 paragraphs, the Amended Complaint

has a gaping hole: it contains no well-pleaded facts showing racist motivations for the

Goodfriend Defendants. And that failing is fatal. See *Keith v. GAO,* No. 21-2010 (RC), 2022

WL 3715576, *4 (Aug. 29, 2022) (dismissing complaint, while noting that "conclusory

allegations" and invocations of protected status "cannot by themselves give rise to an

---

[6] While misleadingly redacting Mr. Goodfriend's mention of Russian's invasion of Ukraine, by contrast, when it suits them, for their own purposes, Plaintiffs readily invoke it. Am. Comp. ¶ 262.

inference of discrimination"); *Harris v. Mayorkas,* No. 21-cv-1083 (GMH), 2022 WL

3452316 (D.D.C. Aug. 18, 2022) (dismissing complaint for failure to allege sufficient facts

to support any plausible inference that mistreatment was racially motivated); *Mekuria v.

Bank of Am.*, 883 F. Supp.2d 10, 14–15 (D.D.C. 2011) (dismissing § 1981 complaint for

failing to plead facts supporting allegations of racial motivation).[7]

> **B.  The public FCC record, which is subject to judicial notice, contains clear facts demonstrating the Goodfriend Defendants' genuinely *nondiscriminatory* motives for questioning Mr. Kim's transaction, making Plaintiffs' wholly conclusory allegations of their discriminatory intent at best possible but not plausible, which is not enough even at the pleading stage.**

On a motion to dismiss, it is enough that the Amended Complaint alleges no

statements or acts by the Goodfriend Defendants establishing or raising any inference

that they harbored racial animus toward Mr. Kim. That, alone, should compel

dismissal. But even if it did not, The FCC public record, of which the Court should take

judicial notice, would.[8]

---

[7] This conspicuous hole in the Amended Complaint helps explain, however, Plaintiffs' otherwise perplexing reliance on foundationless calumnious statements by interlopers with no personal knowledge of Plaintiffs' transaction or Defendants' motivations. See, e.g., Am. Comp. ¶¶ 235–36 (quoting Hazel Dukes and Reverend Al Sharpton). See also *id.* ¶¶ 155, 237–38. Having no direct evidence of the Goodfriend Defendants' motives, Plaintiffs have resorted, instead, to quoting inadmissible statements by partisans, some of whom, as Plaintiffs acknowledge, likely hold grudges against one or more Defendants from past litigation. *Id.* ¶ 283.

[8] On a motion to dismiss, the court may consider both "public records subject to judicial notice" and documents "referred to in the complaint" that "are integral to [plaintiffs'] claim." *Thomas v. District of Columbia*, No. 21-cv-00584 (CRC), 2022 WL 2817855, *2 (July 19, 2022). All documents from the FCC record referred to in this brief qualify on both

The FCC public record contains abundant, unambiguous, factual evidence of the Goodfriend Defendants' and their clients' genuinely *nondiscriminatory* motives for questioning Mr. Kim's transaction. Validating the Goodfriend Defendant's efforts, the FCC identified "substantial and material questions" about the transparency of Mr. Kim's funding and about the potential effects of his transaction on "jobs, local journalism, and the cost of cable and satellite subscription fees." The FCC also determined that these were questions that Mr. Kim's eleventh-hour "commitments" and assurances had not resolved. See FCC Hearing Designation Order ¶¶ 2, 4, 24–25, 31, 43-44.[9] Again validating the Goodfriend Defendants' efforts, the FCC concluded: (1) that it was "unable to find that the commitments offered by the Applicants would adequately mitigate" the risk that rates to subscribers would not rise beyond competitive levels because of this transaction," and (2) that there was genuinely "conflicting evidence" about Mr. Kim's "intentions and commitments" regarding job cuts. FCC Hearing Designation Order ¶¶ 32, 43.

Undermining the plausibility of the allegations in the Amended Complaint still further, the FCC public record establishes that "the race card" (Am. Compl. ¶ 280–81,

---

counts. In addition, where factual allegations in a complaint contradict matters subject to judicial notice, the court should disregard those allegations. *Jenkins v. Howard Univ.*, No. CV 22-0874 (RC), 2023 WL 3948815, at *3 (D.D.C. June 12, 2023) (granting motion to dismiss and denying motion to amend).

[9] The FCC's Hearing Designation Order and its contents are referred to repeatedly in the Amended Complaint, including at ¶¶ 222, 227–28 & n. 143. The HDO is available at https://perma.cc/N7U5-LQ57.

292) was injected here *by Mr. Kim*, not by any Defendant. In July 2022, Mr. Kim urged the FCC to approve his merger deal because, he said—repeatedly—the merger "would create the *largest minority-owned and* female-led television group in U.S. history."[10] In response to Mr. Kim's playing that "race card," the nonprofit Defendants *deemphasized* race. In filings with the FCC, they advocated that the goal of the agency's "media ownership diversity objectives" is *not* to promote "one kind of owner over another" or create "more ownership opportunities for people of color and women." The goal is to promote "multiple viewpoints."[11] And as the nonprofit Defendants also pointed out, transactions like Mr. Kim's compromise that goal by "increas[ing] consolidation," resulting in fewer viewpoints. As the FCC record shows, While *Mr. Kim* was advocating for racial preference, the Goodfriend Defendants were *not.*

* * * * * *

At bottom, Plaintiffs' complaint boils down to a claim (1) that Mr. Kim was, in their view, mistreated and (2) that there *must* be a connection between that supposed mistreatment and his being Korean American. That is not enough.

---

[10] Opposition and Response to Comments filed by SCGI Holdings III, Tegna Inc. and CMG Media pp. 9. 1, 7, 13, 47, *In re Tegna, Inc.*, MB No. 22-162 (July 7, 2022) ) (emphasis added), available at https://perma.cc/YAD5-54KP.

[11] Reply to Opposition filed by The NEWSGuild-CWA, NABET-CWA, and United Church of Christ Media Justice Ministry, Response, *In re Tegna, Inc.*, MB No. 22-162 (Aug. 1, 2022), https://perma.cc/QY5N-HPB3, also cited in ¶ 147 & n.78 of the Amended Complaint.

What is missing in the Amended Complaint are *facts* to take its accusations "across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The Amended Complaint is full of labels—such as "straw objectors" and "race baiting." See Am. Compl. ¶¶ 19, 20, 22, 98. Over and over, it characterizes actions taken by the Goodfriend Defendants as "race-based," "race-laden," or "motivated by the belief that Mr. Allen's Black-owned company deserved greater solicitude than Mr. Kim's Asian American-owned company." But it makes its accusations in conclusory fashion without facts bearing on intent to support them, see *id.* ¶¶ 22, 27, 70, 184, 279, 280, 285, 299, 313, 323, 345, and, stunningly often, on information and belief. See *id.* ¶¶ 24, 41, 158, 171, 206, 220, 221, 272, 278, 296, 304, 314, 315, 323.

As in *Iqbal*, this complaint should be dismissed because purposeful, invidious discrimination is not a plausible inference from the scant facts bearing on intent that have been alleged. See *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (rejecting claims of invidious discrimination).

### C. The Amended Complaint's wholly conclusory allegations of discriminatory intent are also fatally undercut by its profuse, contradictory acknowledgments of every Defendant's obvious nondiscriminatory motives.

On the one hand, the Amended Complaint alleges that Defendants' supposed bigotry killed Mr. Kim's deal. But at the same time, it also contains explicit allegations of every Defendant's race-neutral, commercial motivations for opposing Mr. Kim's transaction. Contradicting its imagined allegations of every Defendant's supposed racial animus, the Amended Complaint simultaneously asserts that:

- <u>Mr. Allen and the Allen Media Group</u> were not motivated by racial animus. Instead, they were motivated by their continuing interest in buying TEGNA for themselves. Am. Compl. ¶¶ 18, 60-62.

- <u>DISH</u> was not motivated by racial animus. Instead, DISH's motive was economic: DISH opposed the transaction because, if it didn't close, DISH would "save potentially millions" in retransmission consent fees. Am. Compl. ¶ 304; see also *id.* ¶ 319 (acknowledging DISH's "commercial agenda") and ¶ 138 ("DISH would make more by paying less").

- <u>The Goodfriend Defendants</u> were not motivated by racial animus. The Amended Complaint acknowledges that the Goodfriend Defendants—like most lawyers, consultants, and lobbyists—were acting as *agents* not principals. Rather than forming their own intent or pursuing their own purposes, the Amended Complaint acknowledges that they were representing clients, as lawyers generally do. The Amended Complaint alleges that the clients on whose behalf the Goodfriend Defendants included Byron Allen, Allen Media, and DISH (Am. Compl. ¶¶ 38, 157 ), which is false, but also immaterial because Plaintiffs' admission that the Goodfriend Defendants' role here was "on behalf of" others (Am. Compl. ¶¶ 137, 157, 164, 166, 174, 187. 256 )—that the Goodfriend Defendants were agents not principals—is dispositive. There is "no authority for imputing a principal's *discriminatory intent* … to an innocent agent." *Brownlee v. Lear Siegler Mgmt. Servs. Corp.*, 15 F.3d 976 (10th Cir. 1994) (emphasis in original).

- <u>The FCC Defendants</u> were not motivated by racial animus. According to the Amended Complaint, they were motivated by concern for protecting Jessica Rosenworcel's position as FCC chair. Am. Compl. ¶¶ 124–25, 184, 219–20, 289, 314–15.

- <u>NewsGuild-CWA, NABET-CWA, UCC, and Common Cause</u> were not motivated by racial animus. Instead, they were motivated by the prospect of job losses and increased retransmission fees. Am. Compl. ¶¶ 98, 111. Indeed, Plaintiffs describe the nonprofit Defendants as "frequent objectors" who "*routinely* file license-transfer applications and express concerns *over job losses and increased retransmission fees*." *Id.* (emphasis added). See also https://cwa-union.org/news/releases/media-unions-tell-fcc-to-reject-local-news-takeover (protesting that "local news is being murdered by Wall Street," endangering "the news, industry, local journalism, and our democracy," with Mr. Kim's transaction being "just the latest example").

These allegations render Plaintiffs' theory of race discrimination at best a "possible" account of what happened but not a plausible one, which is not enough. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A civil rights complaint like Plaintiffs'—pleading clear motives that do not turn on racial animus and no specific facts suggesting racial animus— contradicts a claim of racial discrimination and pleads a plaintiff out of court. *Akyar v. TD Bank US Holding Co.*, No. 18-CV-379 (VSB), 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018) (dismissing § 1981 complaint because it identified other possible motives, contradicting a claim of racial discrimination, and conclusions but no "specific facts" suggesting discriminatory animus). See also *Barnes v. Dist. of Columbia*, 238 F. Supp.3d 106 (D.D.C. 2017) (dismissing complaint that undercut itself by making multiple allegations contrary to its theory).

**III.   The Amended Complaint should also be dismissed because it does not plausibly plead that the Goodfriend Defendants caused Mr. Kim's losses.**

First Amendment immunity and improbable, insufficient allegations of discriminatory intent are only two of the defects in Plaintiffs' Amended Complaint. A third is its failure to plead any plausible causal link between the Goodfriend Defendants' actions and Mr. Kim's losses.

**A.   The Amended Complaint's theory of causation is not viable.**

Even if First Amendment immunity *could*, in principle, be pierced and a causal chain could be established by alleging that governmental were coconspirators in a plan to harm a plaintiff, the Amended Complaint's conclusory allegations of causation, unsupported by well-pled facts, would still be deficient. Plaintiffs' bare conclusory assertions that the FCC acted at Defendants' "behest" and for racist reasons (see Am. Compl. ¶¶ 1, 16, 184, 220, 227–28, 309, 312–13, 317) do not overcome the presumption of good faith that attaches to government decision-making. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 (1977), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). And neither do they in any other way cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 570 (1977).

**B.   The Amended Complaint's attenuated causation allegations also fail to satisfy Plaintiffs' burden of establishing Article III standing.**

The Amended Complaint's attenuated causation allegations are also an Article III problem, as highlighted by the Supreme Court's recent decision in *Murthy v. Missouri*, 144 S. Ct. 1972 (2024). The plaintiffs in *Murthy* sued various federal agencies, alleging that the agencies had pressured social media platforms into censoring their social media content.

The Supreme Court rejected those claims, explaining that even if pressure from the agencies had "played a role" in the platforms' censorship decisions, 144 S. Ct. at 1988, without a demonstration that the platforms had buckled under that pressure rather than exercising their own judgment, the case had fatal holes: traceable injury, causation, and Article III standing were all missing. Analogously here, Plaintiffs' Amended Complaint does not satisfy their burden of showing, with well-pleaded facts, that it is plausible and not just possible, *Iqbal*, 556 U.S. at 678, that the Goodfriend Defendants *caused* their injuries—that the FCC acted because of pressure from the Goodfriend Defendants *rather than exercising its own judgment*, particularly given the presumption of good faith that attaches to government decision-making. And without sufficient facts to plead plausible causation, Plaintiffs have not demonstrated their standing, independently requiring dismissal of their Amended Complaint. Fed. R. Civ. Proc. 12(b)(1).

## IV. The Amended Complaint's conspiracy allegations do not save it.

Claims for civil conspiracy to violate civil rights require *facts* plausibly suggesting: (1) an agreement between two or more persons (2) manifesting each person's "specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a discriminatory motive,[12] and (3) an actionable underlying civil rights

---

[12] *Nanko Shipping, Guinea v. Alcoa, Inc.*, 330 F. Supp. 3d 439, 450 (D.D.C. 2018) ("To allege a conspiracy, the plaintiff must present factual allegations to provide plausible support that 'defendants manifested the specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a racially discriminatory motive.'"); *Morgan v. District of Columbia*, 550 F. Supp. 465, 469 (D.D.C. 1982) ("[T]here must be at least an

violation, (4) causing injury. 42 U.S.C. § 1985. The Amended Complaint does not pass that test.

*First*, the complaint states no claim for any underlying civil rights violation. The entirety of the conduct described in the complaint is protected by the First Amendment, which "cannot be circumvented merely by alleging that a government official was involved in the alleged conspiracy." *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 897 (9th Cir. 1988); *Metro Cable Co. v. Rockford, Inc.*, 516 F.2d 220, 230 (7th Cir. 1975). Because there is no underlying civil rights violation, there is likewise no civil conspiracy, dooming the conspiracy claims in Counts III and VII.[13] And without Count III, Count IV (for violation of Section 1986) must be dismissed too. *Black Lives Matter D.C. v. Trump*, 544 F. Supp.3d 15, 38 (D.D.C. 2021) ("A plaintiff who has not stated a claim under § 1985 has no basis for relief under § 1986.")

*Second*, on a motion to dismiss, conclusory allegations must be disregarded. *Iqbal*, 556 U.S. at 678 (describing "two-pronged approach," where a court considering a motion to dismiss begins by identifying allegations that should be ignored because they

accusation that the defendants manifested their specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a discriminatory motive").

[13] Civil conspiracy is not an independent cause of action. It is only a mechanism for subjecting coconspirators to liability for each other's tortious acts, requiring, therefore, an independent underlying common-law, statutory, or constitutional tort. See generally *Beck v. Prupis*, 529 U.S. 494, 501 (2000). And here, because petitioning the government is not tortious, Plaintiffs have alleged no actionable tort—and, therefore, no actionable conspiracy either.

20

are no more than conclusions). This means that, among others, all the allegations below,

all of them purely conclusory, do not count toward the sufficiency of conspiracy claims

(or any other claim) in the Amended Complaint:

- The allegation that the FCC blocked Mr. Kim's transaction "at the behest" of Mr. Allen. ¶ 16.

- The allegation that Mr. Goodfriend "orchestrated" objections for Mr. Allen. ¶ 19.

- The allegation that the FCC chair "put the imprimatur of the federal government on Mr. Allen and his straw objectors' race-based attacks."¶ 22.

- The allegation that "[t]he FCC killed the deal motivated by the belief that Mr. Allen's Black-owned company deserved greater solicitude than Mr. Kim's Asian American-owned company." ¶ 70.

- The allegation that, "on information and belief," FCC officials "knew they had to kill the deal to placate … Mr. Allen." ¶ 220. And,

- The allegation that "on information and belief, the Allen Group, DISH, Mr. Allen, or Mr. Ergen exercised complete control over the straw objectors and the substance of their filings through the Goodfriend Group." ¶ 289.

Without the allegations above, all that's left as support for Counts III and VII are

allegations of parallel action, which cannot create a plausible suggestion of conspiracy.[14]

And without sufficient allegations of conspiracy, *none* of the alleged statements, actions,

and purposes of the other Defendants can be spread to the Goodfriend Defendants,

leaving only such sparse and vague allegations against the Goodfriend Defendants that

---

[14] *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp.3d 30, 37 (D.D.C. 2019) ("While the Plaintiffs sufficiently alleges that each of the Platforms acted to suppress or censor conservative content, they fail to show how the Platforms' purportedly parallel actions stem from a conspiracy.")

there aren't enough to state any claim against them.

## Conclusion

Under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6), Plaintiffs' Amended Complaint should be dismissed in its entirety and with prejudice. Its substantive claims are barred by the First Amendment. It fails to make out a prima facie case of racial animus against the Goodfriend Defendants. The allegations of causation are self-contradictory. Plaintiffs have not demonstrated their standing. And its vast government conspiracy theory is implausible.

Dated: Sept. 9, 2024

Respectfully submitted,

*/s Joshua Karsh*

*One of the Attorneys for*
*the Goodfriend Defendants*

Cyrus Mehri
CMehri@findjustice.com
Mehri & Skalet PLLC
2000 K Street NW, Suite 325
Washington, D.C. 20006
Tel: (202) 822-5100

Joshua Karsh (pro hac vice)
jkarsh@findjustice.com
Mehri & Skalet PLLC
1237 Judson Ave.
Evanston, IL 60202
Tel: 773-505-7533

*Attorneys for Defendants*
*David Goodfriend and the Goodfriend Group, Inc.*

22

**<u>Certificate of Service</u>**

I certify that I caused a true and accurate copy of the foregoing memorandum of law in support of the Goodfriend Defendants' motion to dismiss to be filed today, Sept. 9, 2024, through the Court's CM/ECF system, which will send notice to all parties of record.


<u>/s/ Joshua Karsh</u>