**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SGCI HOLDINGS III LLC, et al., *Plaintiffs,* v. FEDERAL COMMUNICATIONS COMMISSION, *et al. Defendants.* | Case No. 1:24-cv-01204-RC |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
COMMON CAUSE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Alison Schary (#1014050)
Marietta Catsambas (#1617526)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
alisonschary@dwt.com
mariettacatsambas@dwt.com
(202) 973-4200

*Counsel for Defendant Common Cause*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND.................................................................................... 2

      A.     Common Cause's Mission Is to Protect and Promote Democracy ........................ 2

      B.     Common Cause Files an FCC Petition Opposing Plaintiffs' Proposed Merger with TEGNA, Raising Its Usual Objections ................................................................. 4

      C.     Plaintiffs Sue Common Cause for Its Petition to the FCC.................................. 11

              1.     The Amended Complaint Lacks Any Factual Allegations of a Race-Based "Conspiracy" Involving Common Cause..................................................... 11

              2.     The Amended Complaint Misrepresents the Public Record to Baselessly Allege that Common Cause Opposed the Deal Based on Mr. Kim's Race ................................................................................................................... 14

ARGUMENT ....................................................................................................... 16

I.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ................................................................................. 17

II.    PLAINTIFFS FAIL TO STATE ANY CLAIM AGAINST COMMON CAUSE UNDER RULE 12(B)(6) ....................................................................................... 19

      A.     All of Plaintiffs' Claims Against Common Cause Are Barred by the First Amendment.................................................................................................... 19

      B.     Plaintiffs Do Not and Cannot Plead the Necessary Elements of Each Claim Against Common Cause ................................................................................ 26

              1.     42 U.S.C. § 1981 (Count II).................................................................... 27

              2.     42 U.S.C. § 1985(3) (Count III)............................................................... 29

              3.     42 U.S.C. § 1986 (Count IV) .................................................................. 30

              4.     Tortious Interference with Contract and with Prospective Business Opportunity (Counts V and VI) ................................................................. 31

              5.     Civil Conspiracy (Count VII) .................................................................. 32

III.   CONCLUSION............................................................................................. 32

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbas v. Foreign Pol'y Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ............................................................................................27

*All Am. Tel. Co. v. FCC*,
    867 F.3d 81 (D.C. Cir. 2017) ................................................................................................19

*Americans for Prosperity Found. v. Bonta*,
    594 U.S. 595 (2021) ..............................................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................14, 27, 30

*Banneker Ventures, LLC v. Graham*,
    798 F.3d 1119 (D.C. Cir. 2015) ......................................................................................24, 31

*Barnes Found. v. Twp. of Lower Merion*,
    927 F. Supp. 874 (E.D. Pa. 1996) .........................................................................................24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................27

*Boling v. United States Parole Comm'n*,
    290 F. Supp. 3d 37 (D.D.C. 2017), *aff'd*, No. 15-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19,
    2018) .........................................................................................................................................4

*Brownsville Golden Age Nursing Home, Inc. v. Wells*,
    839 F.2d 155 (3d Cir. 1988) ..................................................................................................24

*Burnett v. Sharma*,
    511 F. Supp. 2d 136 (D.D.C. 2007) .......................................................................................31

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972) ..............................................................................................................21

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ..................................................................................................28

*City of Columbia v. Omni Outdoor Advertising*,
    499 U.S. 365 (1991) ..............................................................................................................26

*Cohen v. California*,
    403 U.S. 15 (1971) ................................................................................................................22

*Counterman v. Colorado*,
  600 U.S. 66 (2023) .................................................................................................22

*Donald J. Trump for President, Inc. v. Sec'y, Commw. of Pa.*,
  830 F. App'x 377 (3d Cir. 2020) ............................................................................28

*\*E. Sav. Bank, FSB v. Papageorge*,
  31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) ..........................23, 26

*El Tayieb v. Mayorkas*,
  No. CV 22-1857 (RDM), 2024 WL 3338853 (D.D.C. July 9, 2024) .....................................18

*\*FCC v. ITT World Commc'ns, Inc.*,
  466 U.S. 463 (1984) ...........................................................................................17, 19

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ................................................................................................20

*\*Ginx, Inc. v. Soho All.*,
  720 F. Supp. 2d 342 (S.D.N.Y. 2010) ...................................................................20, 22, 23, 29

*\*Graves v. United States*,
  961 F. Supp. 314 (D.D.C. 1997) .............................................................................30

*Hustler Mag., Inc. v. Falwell*,
  485 U.S. 46 (1988) ................................................................................................21

*\*Jefferson-11th St., LLC v. D.C.*,
  No. 19-CV-01416, 2020 WL 3035038 (D.D.C. June 5, 2020) ...............................................32

*Jones v. Louisiana State Bar Ass'n*,
  738 F. Supp. 2d 74 (D.D.C. 2010), *aff'd*, No. 10-5327, 2011 WL 11025624 (D.C. Cir. Oct. 3,
  2011) ...................................................................................................................24

*\*Kurd v. Republic of Turkey*,
  374 F. Supp. 3d 37 (D.D.C. 2019) ...........................................................................30

*Lozman v. City of Riviera Beach*,
  585 U.S. 87 (2018) ................................................................................................20

*\*Mais v. Gulf Coast Collection Bureau Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ...............................................................................19

*Manistee Town Ctr. v. City of Glendale*,
  227 F.3d 1090 (9th Cir. 2000) ................................................................................24

*Matal v. Tam*,
  582 U.S. 218 (2017) ..............................................................................................22

iii

*Mattiaccio v. DHA Grp., Inc.*,
   20 F. Supp. 3d 220 (D.D.C. 2014) .......................................................................................33

*McDonald v. Smith*,
   472 U.S. 479 (1985) ...........................................................................................................20

*Merritt v. Shuttle, Inc.*,
   245 F.3d 182 (2d Cir. 2001) ...............................................................................................19

*Modis, Inc. v. InfoTran Sys., Inc.*,
   893 F. Supp. 2d 237 (D.D.C. 2012) ....................................................................................32

*Moini v. LeBlanc*,
   456 F. Supp. 3d 34 (D.D.C. 2020) ......................................................................................28

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) .....................................................................................................21, 27

*NAACP v. State of Ala. ex rel. Patterson*,
   357 U.S. 449 (1958) ...........................................................................................................21

*Nader v. Democratic Nat'l Comm.*,
   555 F. Supp. 2d 137 (D.D.C. 2008),
   *aff'd on other grounds*, 567 F.3d 692 (D.C. Cir. 2009) ....................................23, 25, 26, 32

*New West, L.P. v. City of Joliet*,
   491 F.3d 717 (7th Cir. 2007) ..............................................................................................24

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ...........................................................................................................20

*Org. for a Better Austin v. Keefe*,
   402 U.S. 415 (1971) ...........................................................................................................27

*Pharm. Care Mgmt. Ass'n v. D.C.*,
   522 F.3d 443 (D.C. Cir. 2008) ...........................................................................................18

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .......................................................................................................25, 26

*Pub. Watchdogs v. S. Cal. Edison Co.*,
   984 F.3d 744 (9th Cir. 2020) ..............................................................................................20

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) ...........................................................................................................22

*Robledo v. Bond No. 9*,
   965 F. Supp. 2d 470 (S.D.N.Y. 2013) ................................................................................29

*Rondigo, LLC v. Twp. of Richmond*,
No. 08-cv-10432, 2012 WL 1021726 (E.D. Mich. Mar. 27, 2012), *aff'd*, 522 F. App'x 283
(6th Cir. 2013)........................................................................................................................24

*Shaikh v. City of Chi.*,
341 F.3d 627 (7th Cir. 2003) ................................................................................................29

*Smith v. Trump*,
No. 21-CV-02265, 2023 WL 417952 (D.D.C. Jan. 26, 2023)................................................31

*Snyder v. Phelps*,
562 U.S. 443 (2011)........................................................................................................20, 22

*Telecomms. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ................................................................................................18

*Terminiello v. City of Chi.*,
337 U.S. 1 (1949)..................................................................................................................22

*Texas v. Johnson*,
491 U.S. 397 (1989)..............................................................................................................22

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
858 F.2d 1075 (5th Cir. 1988) ..............................................................................................24

*Whelan v. Abell*,
48 F.3d 1247 (D.C. Cir. 1995) ..............................................................................................24

*Wiggins v. Hitchens*,
853 F. Supp. 505 (D.D.C. 1994) ...........................................................................................30

**State Cases**

*Vill. of Skokie v. Nat'l Socialist Party of Am.*,
373 N.E.2d 21 (Ill. 1978) .....................................................................................................22

**Federal Statutes**

28 U.S.C. § 2342.......................................................................................................................17

28 U.S.C. § 2344.......................................................................................................................17

42 U.S.C. § 1981............................................................................................................23, 28, 29

42 U.S.C. § 1985(3) .........................................................................................................29, 30, 31

42 U.S.C. § 1986.......................................................................................................................31

47 U.S.C. § 310(d) ......................................................................................................................5

47 U.S.C. § 402.................................................................................................................17, 18

Defendant Common Cause respectfully submits this statement of points and authorities in support of its motion to dismiss the Amended Complaint of Plaintiffs SGCI Holdings III LLC ("SGCI" or "Standard General") and Soohyung Kim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Common Cause is a small non-partisan public interest organization.  For the past 50 years, it has been a prominent advocate for free and fair elections, voting rights, redistricting, ethics in government, democracy, and the Constitution.   Because it believes that a diversity of voices in the media is good for democracy, Common Cause has frequently opposed media consolidation.  Indeed, Plaintiffs acknowledge Common Cause's robust work in this area in their Amended Complaint.  Am. Compl. ¶¶ 98, 111.

Plaintiffs seek to contort Common Cause's routine advocacy into a conspiratorial fever dream.  They posit that thirteen different actors – including Common Cause, the United Church of Christ Media Justice Ministry ("UCC"), two labor unions, the FCC, its chair and the chief of its media bureau, two media companies and their principal owners, and a lawyer – were supposedly working in lockstep to block SGCI's proposed acquisition of TEGNA stations, all because the company's owner, Soohyung Kim, is Asian American.

This is the stuff of online message boards and social media rants, not a federal court complaint.  The Court should dismiss the Amended Complaint for several independent reasons.

*First*, the case should be dismissed for lack of subject matter jurisdiction because the courts of appeals have exclusive jurisdiction to review FCC orders.  Plaintiffs may not evade the statutory scheme for judicial review by collaterally attacking the FCC's decision in this Court.

*Second*, the First Amendment bars all of Plaintiffs' claims against Common Cause because they arise entirely from Common Cause's exercise of its core First Amendment rights:

1

to petition the FCC, raise its concerns about a proposed merger, and associate with other organizations who share those concerns to join their voices together.  Plaintiffs cannot sidestep this foundational constitutional protection by recasting the filing of an FCC petition as a "conspiracy" to "interfere" with their business interests.  And Common Cause's petitioning activity would remain fully protected by the First Amendment *regardless of any alleged motive that Plaintiffs ascribe to it*. Thus, even if Plaintiffs could plausibly allege some anti-Asian motive behind Common Cause's opposition to the TEGNA transaction (which they do not and cannot do), they still cannot prevail on these claims targeting pure speech.

  ***Finally***, Plaintiffs fail to plead each and every one of their claims under Rule 12(b)(6). Plaintiffs have not plausibly alleged a single fact in support of Common Cause's involvement in an alleged "race-based conspiracy" to torpedo the proposed TEGNA deal *because* Mr. Kim is Asian American.  Instead, they rely on conclusory, unsupported assertions "on information and belief" and deliberate misrepresentations to the Court about the contents of Common Cause's publicly filed FCC pleadings.  Plaintiffs also fail to allege facts to support the requisite elements of each claim against Common Cause, and their deficient complaint cannot be fixed by yet another amendment.

  For these reasons, Common Cause respectfully requests that the Court dismiss all claims against it with prejudice.

## FACTUAL BACKGROUND

### A. Common Cause's Mission Is to Protect and Promote Democracy

  Common Cause is "dedicated to upholding the core values of American democracy."[1] One of its issue areas specifically focuses on the foundational role of a free and open media in

---

[1] https://www.commoncause.org/about-us/

fostering democracy, with campaigns fighting to expand internet access, protect freedom of the press, promote net neutrality, and – as particularly relevant here – to oppose media consolidation.[2]

Common Cause's longstanding position, stated prominently on its website, is that media consolidation is a threat to democracy. It explains that "[o]ur 21st-century democracy needs a diverse, open, and independent media – not a few mega-conglomerates controlled by the wealthy few. . . . That is why it is key to include a diverse array of voices in the conversation."[3]  Common Cause has consistently raised public concern about the devastating impact of media consolidation on local news, with newly merged companies closing local newsrooms and laying off journalists. As the Amended Complaint acknowledges, Common Cause has been a "frequent objector[]" to media mergers over the years, on the grounds that consolidation leads to "job losses and increased retransmission fees" that raise the cost to consumers of crucial media access.  Am. Compl. ¶¶ 98 & n.22, 111.[4]

---

[2] https://www.commoncause.org/issues/local-journalism-media-consolidation/

[3] *Id.*

[4] The public record reflects numerous statements by Common Cause to the FCC and the courts in support of a diversity of media voices and in opposition to media consolidation. *E.g.*, Brief of Citizen Petitioners Prometheus Radio Project, et al., *Prometheus Radio Project v. FCC*, Nos. 18-1092, 18-2943, https://www.freepress.net/sites/default/files/2018-12/media_ownership_brief_12_21_2018.pdf (3d Cir. Dec. 21, 2018); Brief of Respondents Prometheus Radio Project, et al., *FCC v. Prometheus Radio Project*, No. 19-1231, https://www.supremecourt.gov/DocketPDF/19/19-1231/148228/20200721115425325_FCC%20v.%20Prometheus%20BIO%20July%2021%20as%20filed.pdf (S. Ct. July 21, 2020); *Petition to Deny the T-Mobile-Sprint Merger*, Common Cause, https://www.commoncause.org/wp-content/uploads/2018/08/T-Mobile-Sprint-Petition-to-Deny-CC-CU-OTI-PK-WGA.pdf (Aug. 27, 2018); *Petition to Deny the Tribune-Nexstar Merger*, Common Cause, https://www.commoncause.org/wp-content/uploads/2022/05/Programming-Vendor-Diversity-Report-05.05.22.docx.pdf (Mar. 18, 2019); *Petition of Rulemaking*, Common Cause, https://www.commoncause.org/wp-content/uploads/2022/05/Programming-Vendor-Diversity-Report-05.05.22.docx.pdf (May 5, 2022).

**B.    Common Cause Files an FCC Petition Opposing Plaintiffs' Proposed Merger with TEGNA, Raising Its Usual Objections**

On April 21, 2022, the FCC's Media Bureau issued a Public Notice disclosing the filing of applications to transfer equity interests in TEGNA Inc., which controlled 64 television stations, two radio stations, and other FCC licenses, to an indirect subsidiary of SGCI.[5]  The Public Notice disclosed that additional applications were filed contemporaneously for a "series of related transactions," in which an affiliate of SGCI would transfer four television stations to a subsidiary of Cox Media Group ("Cox"), an entity controlled by hedge fund Apollo Global Management ("Apollo"); Cox would transfer one television station to SGCI; and the proposed post-merger TEGNA entity would transfer four separate stations to wholly-owned subsidiaries of Cox.  The Public Notice further disclosed that the transaction would be financed in part by affiliates of Apollo, and it set a pleading cycle for the filing and briefing of petitions to deny the applications.

On May 12, 2022, Common Cause, Public Knowledge, and Defendant NewsGuild-CWA filed a joint motion seeking additional information about the proposed transaction and an extension of time to file comments and petitions in connection with it.[6]  The joint motion raised concerns that the proposed transaction would not be in the "public interest," a requirement for

---

[5] A copy of the Public Notice is attached as Exhibit 1.  The proceedings before the FCC cited in this motion are all part of the public record, including Common Cause's filings in opposition to the planned merger, and they are incorporated by reference in the Amended Complaint.  The Court may take judicial notice of them.  *See Boling v. United States Parole Comm'n*, 290 F. Supp. 3d 37, 45 (D.D.C. 2017) ("[A] court may take judicial notice of its own record, public records from other proceedings, and documents attached as exhibits or incorporated by reference in the complaint, including administrative complaints and orders."), *aff'd*, No. 15-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018).

[6] Motion of the Public Interest Parties for Additional Information and Documents and an Extension of Time, *In re Tegna Inc.,* MB No. 22-162 (May 12, 2022), https://perma.cc/6JE5-6C7Q (attached as Exhibit 2).  *See* Am. Compl. ¶ 130 n.68.

approving the applications. *See* 47 U.S.C. § 310(d); *Nexstar-Media General Order*, 32 FCC Rcd. 183, 191-92 ¶ 19 (Jan. 11, 2017). The motion identified as "red flags" the involvement of hedge fund Apollo Global Management; the deal's byzantine structure, which appeared to be engineered to increase retransmission fees; and the threat of layoffs and cuts to local newsrooms in favor of a centralized national news desk. Am. Compl. ¶ 130; Ex. 2 at 2-4. **The motion for** **additional information and extension of time made no reference to Mr. Kim's race**.

On May 20, 2022, the FCC granted the joint motion to extend the pleading cycle.[7] On June 3, 2022, the FCC issued its own request for additional information about the proposed transaction that echoed the concerns raised by Common Cause and its co-petitioners, seeking information about the proposed "retransmission negotiating strategy," the new company's intended relationship with Apollo, the likely impact on local newsrooms, and any "anticipated staffing reduction[s]."[8] Am. Compl. ¶ 132; Ex. 4 at 3.

On June 22, 2022, Common Cause and Defendant UCC filed a joint Petition to Deny with the FCC (the "Petition").[9] The Petition raised two primary concerns: (1) that the merger would harm local news coverage due to consolidation, reliance on a centralized national news desk, and planned layoffs at local stations; and (2) that the transaction was structured to allow SGCI to raise retransmission fees charged to television providers, which would be passed on to

---

[7] Media Bureau Extends Pleading Cycle for Applications to Transfer Control of Tegna Inc., to Standard General, L.P., *In re Tegna Inc.* MB No. 22-162 (May 20, 2022), https://perma.cc/JX8V-P44K (attached as Exhibit 3). *See* Am. Compl. ¶ 131 n.70.

[8] Letter from Holly Saurer to Scott R. Flick et al., *In re Tegna Inc.,* MB No. 22-162 (June 3, 2022), https://perma.cc/963P-HA35 (attached as Exhibit 4). *See* Am. Compl. ¶ 132 n.71.

[9] Petition to Deny of Common Cause and UCC 19-25, *In re Tegna Inc.,* MB No. 22-162 (June 22, 2022), https://perma.cc/D7VM-LXNR (attached as Exhibit 5). *See* Am. Compl. ¶ 135 n.73.

consumers in the form of higher costs and could cause blackouts of coverage.  *See* Am. Compl.

¶ 135.  **The Petition made no reference to Mr. Kim's race.**

As the Amended Complaint concedes, these are precisely the same objections that

Common Cause "routinely" makes against media mergers.  *Id.* ¶ 98.  Defendants NewsGuild-

CWA and National Association of Broadcast Employees and Technicians-CWA ("NABET-

CWA"), two labor unions that represent journalists and employees working in television and

radio, filed a petition to deny raising similar concerns.[10]  Numerous other entities also filed

comments echoing the same concerns about consolidation of ownership in local news markets

and that the transactions appeared to be structured to take advantage of contractual clauses that

would allow them to raise prices.[11]

On July 7, 2022, SGCI filed its consolidated opposition to the various comments and

petitions to deny, including Common Cause's Petition.[12]  SGCI challenged Common Cause's

standing to object to the transaction.  *See* Am. Compl. ¶ 142.  It did not deny that the new

---

[10] Petition to Dismiss or Deny of the NewsGuild-CWA and NABET-CWA 3-4, 20-23, *In re Tegna Inc.*, MB No. 22-162 (June 22, 2022), https://perma.cc/9X6F-999T.  *See* Am. Compl. ¶ 135 n.73.

[11] *See* Comments filed by the American Television Alliance, *In re Tegna Inc.,* MB No. 22-162 (June 22, 2022), https://files.fcc.gov/ecfs/download/f72c0f35-7bae-4794-9e15-dddff43b7e46?orig=true&pk=cb77b2ec-1a58-dbc6-139b-ad192cfd5d9b; Comments filed by Altice USA, Inc., *In re Tegna Inc.,* MB No. 22-162 (June 22, 2022), https://files.fcc.gov/ecfs/download/6b17122e-1284-48e4-b971-7af19324dfb5?orig=true&pk=cb77b2ec-1a58-dbc6-139b-ad192cfd5d9b; Comments filed by Graham Media Group, Inc., *In re Tegna Inc.,* MB No. 22-162 (June 22, 2022), https://files.fcc.gov/ecfs/download/a674d8ed-39b4-40dd-93f4-04cea733f849?orig=true&pk=cb77b2ec-1a58-dbc6-139b-ad192cfd5d9b; Letter filed by NCTA – the Internet and Television Association, *In re Tegna Inc.,* MB No. 22-162 (June 22, 2022), https://files.fcc.gov/ecfs/download/07e977b6-a845-41c1-bade-06e565ae6693?orig=true&pk=cb77b2ec-1a58-dbc6-139b-ad192cfd5d9b.

[12] Applicants' Consolidated Opposition and Response to Comments ("Opposition"), *In re Tegna Inc.,* MB No. 22-162 (July 7, 2022), https://perma.cc/YAD5-54KP (attached as Exhibit 6).  *See* Am. Compl. ¶ 141 n.74.

company may seek to raise retransmission fees, but insisted that issue did not impact the FCC's determination whether the transaction was in the public interest. *See id.* ¶ 143. **And SGCI injected Mr. Kim's race into the discussion**, complaining that the public-interest petitioners "have always claimed to value diversity, but fail to even mention that the Transactions would create the largest minority-owned and female-led television station group in U.S. history" and chiding them for opposing a "minority buyer." Ex. 6 at 2-3.

On August 1, 2022, Common Cause and the other public-interest petitioners – UCC, NABET-CWA, and NewsGuild-CWA (together, the "Petitioners") – filed a joint reply to SGCI's Opposition.[13] Responding to SGCI's points about diversity, they stressed that the public interest is served by diversity of multiple *owners*, not consolidation under a single company – even if that parent company is owned by a woman or person of color:

> One reason the civil rights community and Petitioners oppose media concentration is that it results in fewer owners, fewer points of view and fewer opportunities for smaller entrepreneurs, including historically excluded entrepreneurs, to enter into the marketplace and compete against large companies. Indeed, petitioners have consistently called on the Commission not to relax media ownership limits in order to create more ownership opportunities for people of color and women. . . . A single owner controlling numerous stations throughout the country, producing news often far from the local communities those stations serve and likely reducing the number of journalists . . . would not produce diversity or advance the Communications Act's public interest standard. Under the Applicants' theory of diversity, the U.S. could achieve ownership diversity through a single owner of all television and radio stations in the country as long as that owner is a person of color or a woman.

Ex. 7 at 5. The Petitioners agreed it was "certainly a good thing" that Standard General was led by a woman and a person of color, but urged that the FCC "should not conflate the identity of one or two business leaders regarding a transaction that would further consolidate the

---

[13] Reply to Applicants' Consolidated Opposition and Response to Comments ("Reply") 4-6, 20, 24, *In re Tegna Inc.,* MB No. 22-162 (Aug. 1, 2022), https://perma.cc/QY5N-HPB3 (attached as Exhibit 7). *See* Am. Compl. ¶ 147 n.78.

marketplace with advancing its goals to promote ownership diversity." *Id.* at 6.  **These are the**
**_only_ comments that Common Cause made about the diversity of SGCI's owners in its FCC**
**submissions for this matter.**

The Petitioners also raised concerns about the involvement of "large hedge funds
headquartered in the Cayman Islands and the British Virgin Islands, thus necessitating a waiver
of the Commission's foreign ownership limits," describing them as "flashing red lights that cry
out for further inquiry" into the role and identity of these "shadowy foreign investors."  *Id.* at 20.

As the Amended Complaint admits, Plaintiffs were fully aware that because of these
foreign investors, the proposed deal would have to be scrutinized by the Department of Justice's
Committee for the Assessment of Foreign Participation in the U.S. Telecommunications Sector
("Team Telecom"), composed of the national security team of the Attorney General and the
Secretaries of Defense and Homeland Security, for exactly the reason Common Cause stated in
its Reply: Standard General "finance[d] the multi-billion-dollar deal with equity held in Cayman
Islands and British Virgin Islands investment funds."  Am. Compl. ¶ 74.  On August 3, 2022,
consistent with Common Cause's request, Team Telecom notified the FCC it was conducting its
"initial review" of the proposed transaction.[14]  On November 17, 2022, Team Telecom notified
the FCC that it had "no objection" to the proposed merger.[15]  Am. Compl. ¶ 189.

In December 2022, Standard General attempted to allay concerns that had been
consistently raised about the transaction – by Petitioners, other commenters, and the DOJ in its
antitrust review – by offering voluntary commitments related to retransmission fees, newsroom

---

[14] Letter filed by Committee for the Assessment of Foreign Participation in the United States
Telecommunications Services Sector, *In re Tegna Inc.,* MB No. 22-162 (Aug. 3, 2022),
https://www.fcc.gov/ecfs/document/10803175231735/1 (attached as Exhibit 8).

[15] Letter from Andrew Coley to Tom Sullivan, *In re Tegna Inc.,* MB No. 22-162 (Nov. 17,
2022), https://perma.cc/C3YT-ZRLL.  *See* Am. Compl. ¶ 189 n.119.

staffing, and layoffs.  Am. Compl. ¶¶ 195-200.[16]  On January 13, 2023, Common Cause and the

other public-interest petitioners filed comments criticizing Standard General's proposed

commitments as insufficient and continuing to raise concerns about layoffs, local newsroom

investment, and retransmission fees.[17]  **The January comments made no reference to Mr.**

**Kim's race, nor did they raise any further concern about offshore investors now that Team**

**Telecom had resolved that issue.**

On February 24, 2023, the FCC issued a Hearing Designation Order ("HDO") calling for

a hearing to consider the very issues raised by Common Cause and its co-petitioners: (1) whether

the transaction was structured to increase rates due to retransmission fees, and (2) whether

the transaction would negatively impact local news stations, including through layoffs.[18]  HDO ¶ 2.

The FCC held that Common Cause (along with the other public-interest petitioners) had standing

to file their petitions and designated them "parties in interest" to the hearing.  *Id.* ¶ 18.

On March 27, 2023, SGCI appealed the HDO to the D.C. Circuit, construing it as a "final

order" of the FCC denying their applications to transfer station licenses.[19]  Contemporaneous

---

[16] Notice of Ex Parte Communication by SGCI Holdings III, LLC and TEGNA, Inc., *In re Tegna Inc.,* MB No. 22-162 (Dec. 1, 2022), https://www.fcc.gov/ecfs/document/12012850016176/1;
Letter filed by SGCI Holdings III, LLC, *In re Tegna Inc.,* MB No. 22-162 (Dec. 16, 2022), https://www.fcc.gov/ecfs/document/1216162385188/1; Letter filed by SGCI Holdings III, LLC, *In re Tegna Inc.,* MB No. 22-162 (Dec. 22, 2022),
https://www.fcc.gov/ecfs/document/1223777911564/1; Letter filed by SGCI Holdings III LLC, Apollo Global Mgmt., Inc., and CMG Media Corp., *In re Tegna Inc.,* MB No. 22-162 (Dec. 23, 2022), https://www.fcc.gov/ecfs/document/1223184415415/1.  *See* Am. Compl. ¶¶ 197, 199-200 nn.123, 125-26.

[17] Comments of the NewsGuild-CWA, NABET-CWA, UCC, and Common Cause, *In re Tegna Inc.,* MB No. 22-162 (Jan. 13, 2023), https://perma.cc/2D73-4LRX (attached as Exhibit 9).  *See* Am. Compl. ¶ 208 n.134.

[18] Hearing Designation Order ("HDO"), *In re Tegna Inc.,* MB No. 22-162 (Feb. 24, 2023), https://perma.cc/N7U5-LQ57 (attached as Exhibit 14).  *See* Am. Compl. ¶ 222 n.143.

[19] Notice of Appeal, No. 23-1083 (D.C. Cir.) ("Notice of Appeal") (attached as Exhibit 10).

with that appeal, it filed with the D.C. Circuit a "conditional petition for a writ of mandamus" to require the FCC to resolve its applications if the court were to conclude that it could not review the HDO as a final appealable order.[20]  Plaintiffs filed an emergency motion to expedite and consolidate the two proceedings.  Notably, none of these filings raised any concern about an alleged "conspiracy" involving Common Cause (or any other defendant) to oppose the deal based on racial animus or anti-Asian bias.

On April 3, 2023, the D.C. Circuit dismissed SGCI's appeal from the HDO as premature but granted its motion to expedite the mandamus petition, setting a briefing schedule that would conclude by April 14, 2023.[21]  The mandamus petition was fully briefed, including a response filed by the Public Interest Petitioners.  Again, SGCI's briefing did not make any allegation of a "race-based conspiracy" to oppose the transaction.

On May 21, 2023, the D.C. Circuit denied the mandamus petition.  In a per curiam order, the court stated: "Petitioners have not demonstrated that [the FCC] has unreasonably delayed in acting on their applications. . . . Nor have they shown that [the FCC] has a 'crystal clear' duty to rule on their applications without resort to a hearing."[22]

On May 24, 2023, SGCI notified the FCC that the merger had been terminated,[23] and on June 1, 2023, the FCC issued an order terminating the hearing proceeding.[24]

---

[20] Conditional Petition for a Writ of Mandamus to the Federal Communications Commission, No. 23-1084 (D.C. Cir.) ("SGCI Mandamus Petition") (attached as Exhibit 11).

[21] Apr. 3, 2023 Order, No. 23-1083 (D.C. Cir.) (attached as Exhibit 12).

[22] Apr. 21, 2023 Order, No. 23-1084 (D.C. Cir.) ("Mandamus Order") (attached as Exhibit 13).

[23] Status Report, *In re Tegna Inc.,* MB No. 22-162 (May 25, 2023), https://www.fcc.gov/ecfs/document/10524565816599/1.

[24] Order Terminating Proceeding, *In re Tegna Inc.,* MB No. 22-162 (June 1, 2023), https://docs.fcc.gov/public/attachments/FCC-23M-10A1.pdf.

### C.     Plaintiffs Sue Common Cause for Its Petition to the FCC

Nearly a year later, Plaintiffs initiated this case on April 24, 2024 against Common Cause and 12 other defendants – three other public-interest objectors who joined with it in various FCC filings (UCC, NewsGuild-CWA, and NABET-CWA); the lawyer representing NewsGuild-CWA and NABET-CWA in their FCC petitions (David Goodfriend and The Goodfriend Group); two other media companies and their owners (Allen Media Group, Byron Allen, DISH Network Corporation, and Charles Ergen); and the FCC, its Chairwoman, and the Chair of the Media Bureau.[25]  On August 9, 2024, Plaintiffs filed an Amended Complaint that added an additional claim against the FCC defendants but otherwise made minimal substantive changes and did not alter the claims against Common Cause.  In the Amended Complaint, Plaintiffs allege a convoluted, wide-ranging conspiracy whereby these various individuals, businesses, nonprofits, and government actors colluded to oppose SGCI's proposed merger based on a shared racial bias against Mr. Kim.  Plaintiffs assert six claims against Common Cause (and all of the non-government defendants): three federal civil rights claims, two tortious interference claims, and one civil conspiracy claim.

### 1.     The Amended Complaint Lacks Any Factual Allegations of a Race-Based "Conspiracy" Involving Common Cause

Despite basing their entire theory of liability on the existence of a conspiracy to prevent Plaintiffs from purchasing TEGNA *because* of Mr. Kim's race, the Amended Complaint does not allege any facts to show that Common Cause was engaged in such a race-based "conspiracy" when it filed standard objections with the FCC.  To the contrary, the Amended Complaint

---

[25] David Goodfriend and The Goodfriend Group will be referred to as the "Goodfriend Defendants"; Byron Allen and the Allen Media Group as the "Allen Defendants"; and Charles Ergen and DISH Network Corporation as the "DISH Defendants."

concedes Common Cause is a "frequent objector[] at the FCC," where it "routinely file[s] petitions to deny license-transfer applications and express[es] concerns over job losses and retransmission fees," Am. Compl. ¶¶ 98, 111 – exactly the same concerns Common Cause raised here, *id.* ¶ 135.  As for Common Cause's alleged "co-conspirators," the Amended Complaint pleads entirely different motivations: Mr. Allen, Allen Media Group, DISH, and Mr. Ergen had commercial motivations for opposing Plaintiffs' proposed transaction,[26] and Mr. Goodfriend was representing his clients NewsGuild-CWA and NABET-CWA in filing their joint FCC petition.[27]

Yet the Amended Complaint posits a dizzying chain of imagined manipulation that supposedly reveals the true, secret reason that Common Cause lodged its otherwise "standard" objection, *id.* ¶ 98: because  Mr. Allen and DISH controlled Mr. Goodfriend, and Mr. Goodfriend controlled Common Cause, and together these manipulators orchestrated Common Cause's objections to the merger based on a shared intent to discriminate against Mr. Kim for being Asian American.  These allegations are made "on information and belief," and none are remotely plausible:

- "***On information and belief***, Mr. Goodfriend had been working behind the scenes for some time before formally appearing in August, not only for the objectors but also for his longtime clients at the Allen Group and DISH."   *Id.* ¶ 158.

- "***On information and belief***, the Goodfriend Group and Mr. Goodfriend coordinated [Common Cause's] strategy of delay and baseless objections." *Id.* ¶ 323.

Notably, Plaintiffs' original complaint went much further, alleging "[o]n information and belief" that Common Cause appeared in these proceedings "at the behest of" the Allen

---

[26] *E.g.*, Am. Compl. ¶ 319 (DISH and Ergen had a "commercial agenda"); *id.* ¶ 18 ("Mr. Allen wanted the TEGNA stations for his company.").

[27] Am. Compl. ¶ 137.

Defendants, the DISH Defendants, and/or the Goodfriend Defendants, and that the DISH and Allen Defendants "exercised complete control" over Common Cause and the "substance of its filings" via the Goodfriend Defendants. Compl., ECF No. 10-1, ¶¶ 288-89. Rather than bolstering these assertions with factual allegations in the Amended Complaint, Plaintiffs removed them altogether, effectively conceding that they lack factual support.

Instead, Plaintiffs spin their conspiracy theory about Common Cause entirely from a series of anodyne calendar entries connected by rhetorical red string. The theory goes like this: (1) on May 12, 2022, Mr. Allen made a public statement that he was still "in the fight" for TEGNA and his lobbyist had a scheduled meeting with Ms. Saurer, head of the FCC Media Bureau; (2) Mr. Goodfriend also had a scheduled meeting with Ms. Saurer that same day, about a separate petition for rulemaking joined by multiple nonprofit entities ( including Common Cause); and (3) that was also the same day Common Cause and its co-petitioners filed a petition for additional information and time to object to the Standard General-TEGNA transaction. Am. Compl. ¶¶ 128-30. Plaintiffs do not explain how the simple fact of two scheduled meetings and an FCC filing by separate defendants occurring on the same day leads to the "obvious inference" of a conspiracy in which Common Cause agreed to act as "straw objectors" for the benefit and at the direction of the Allen, DISH, or Goodfriend Defendants, let alone a conspiracy motivated by racial animus toward Mr. Kim. There are no allegations whatsoever that Common Cause had any contact with the Allen or DISH Defendants; as for the Goodfriend Defendants, Plaintiffs' allegations are limited to the fact that Common Cause was a co-petitioner on FCC filings where Mr. Goodfriend appeared on behalf of his labor union clients.

With these glaring holes in its narrative, Plaintiffs' alleged conspiracy – that the Allen and/or DISH Defendants controlled the Goodfriend Defendants who in turn controlled Common

Cause – is not remotely plausible.  Common Cause has a long history of opposing consolidation of media companies, and its opposition raised the same issues it routinely does – loss of jobs, consolidation of viewpoints, and increased costs to consumers.

        **2.**      **The Amended Complaint Misrepresents the Public Record to Baselessly Allege that Common Cause Opposed the Deal Based on Mr. Kim's Race**

Not only are Plaintiffs' claims of racial discrimination implausible and without any factual basis, they are based on deliberate misrepresentations of public filings.  Common Cause's objections to the transaction were detailed in public submissions to the FCC.  A review of those submissions makes clear that Common Cause *never* objected to the transaction based on Mr. Kim's race.  Rather, as noted above, it was Plaintiffs who inserted race into the proceedings at all – prompting Common Cause to explain that while the race and gender of Standard General's two senior leaders was "certainly" something to be celebrated, that did not alleviate its broader concerns about consolidation.

To spin their false narrative of a race-based conspiracy, Plaintiffs deliberately mischaracterize Common Cause's August Reply – the only filing by Common Cause that even references Mr. Kim's race, and only does so in response to an argument by SGCI.  The Amended Complaint claims that Common Cause and its co-petitioners "baselessly asserted that Mr. Kim and Ms. McDermott have not been 'barred by his race' or 'her gender' in achieving their successes, bizarrely contrasting the experiences of an Asian-American man and a woman to 'historically excluded groups' and those that have suffered 'long-standing inequities produced by structural racism, xenophobia or misogyny.'"  Am. Compl. ¶ 147.  But the actual passage these cherry-picked quotes come from bears no resemblance to Plaintiffs' purported summary:

> It is certainly a good thing that Mr. Kim is not barred by his race from becoming a
> successful entrepreneur with the acumen and business relationships giving him
> access to capital such that he is at the lead of this transaction.  It is certainly a

good thing that Ms. McDermott is not barred by her gender to be selected to run a large corporation. Unfortunately, it *is* rare for members of either of these groups to be in such a position. But a single large LLP or corporation of the type proposed here is not going to ameliorate or address long-standing inequities produced by structural racism, xenophobia or misogyny - and is not likely to provide additional members of historically excluded groups the opportunity to gain wealth and influence in society. The identity of the executives leading these companies should not and does not insulate a transaction of this scope from a thorough and searching review by federal regulators.

Ex. 7 at 6.[28] This innocuous comment is, if anything, complimentary of Mr. Kim and Ms. McDermott and their successes. It cannot be transformed, as Plaintiffs would have it, into some kind of racist rant. Accordingly, it is not a plausible basis for Plaintiffs' claims.

Plaintiffs also claim that Common Cause "peddled . . . xenophobia" by urging the FCC to investigate "the involvement of shadowy foreign investors" – insisting that Common Cause "couched [its] criticism as one about Standard General's offshore funding sources," and that the "shadowy foreign investor" was a covert reference to Mr. Kim, "an Asian American with a foreign-sounding last name." Am. Compl. ¶¶ 148-49. This, too, is a deliberate misreading of the August Reply. Common Cause never described Mr. Kim as "foreign" or "shadowy"; it was raising concerns about SGCI's *unknown offshore investors*, consistent with its longstanding concern about anonymous hedge fund ownership. Common Cause pointed out that "involvement of large hedge funds headquartered in the Cayman Islands and the British Virgin Islands . . . necessitat[es] a waiver of the Commission's foreign ownership limits" and called for

---

[28] Common Cause also issued a press release along with its reply in August 2022, echoing these views: "*While the diversity of the business leaders in this merger is laudable*, the agency's goals to increase media ownership opportunities for women and people of color are grounded in creating pathways for multiple owners with multiple viewpoints and backgrounds to enter the marketplace." *See* https://www.commoncause.org/press/common-cause-files-response-opposing-proposed-apollo-global-management-standard-general-tegna-merger/ (emphasis added).

disclosure of these offshore investors, urging the government to explore "the involvement of shadowy foreign investors."    Ex. 7 at 20.

This is obviously not a reference to Mr. Kim.  Mr. Kim is an American citizen, not a hedge fund headquartered in the Caribbean; he did not need, and did not seek, a waiver of foreign ownership rules; and his identity was publicly known.  Moreover, Common Cause's concern about foreign ownership and the need for careful national security review by the government was entirely legitimate, as the Amended Complaint itself concedes.  Am. Compl. ¶ 71.  The Amended Complaint admits that the very inquiry requested by Common Cause was in fact required here "because Standard General was able to finance the multi-billion-dollar deal with equity held in Cayman Islands and British Virgin Islands investment funds."  *Id.*  The investigation of foreign ownership interests in the proposed acquisition was mandatory in these circumstances and was undertaken by Team Telecom without objection from Plaintiffs.  Team Telecom's review was completed by November 2022, and it registered no objections to the merger.  *Id.* ¶ 189.  After that point, Common Cause raised no further concerns about foreign investors.  Instead, it focused only on the objections noted by the FCC and stated in the Amended Complaint:  newsroom layoffs and increased costs to customers.

Plaintiffs' attempt to twist Common Cause's legitimate concern about the involvement of opaque offshore hedge funds into racist "fearmongering" about Mr. Kim "because of his Asian race" egregiously mischaracterizes the public record and the legal requirements that the national security agencies in fact resolve such issues.  Am. Compl. ¶ 151.  For these reasons, the allegation is not plausible.

## ARGUMENT

None of Plaintiff's claims against Common Cause satisfy the requirements of Rule 12(b)(6).  **First**, the Court lacks subject matter jurisdiction because this suit is an improper

collateral attack on FCC orders whose review is committed exclusively to the D.C. Circuit, not this Court. **Second**, all of Plaintiffs' claims are barred as a matter of law because Common Cause's FCC submissions are fully protected by the First Amendment. **Third**, Plaintiffs' claims against Common Cause also fail as a matter of law because they do not – and cannot – plausibly plead the elements of any of these claims against Common Cause.

Accordingly, this Court should dismiss all claims against Common Cause with prejudice.

## I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

This Court can and should dismiss this matter without even reaching the merits because it lacks jurisdiction to review the FCC's Hearing Designation Order, or any of the other FCC orders that are the foundation of Plaintiffs' claims. Congress granted the courts of appeals "exclusive jurisdiction" to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" the FCC's final orders. 28 U.S.C. §§ 2342, 2344 ("Hobbs Act"); 47 U.S.C. § 402(a); *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984). This exclusive jurisdiction includes claims that the FCC engaged in "unreasonable delay" in issuing a final order – which is an essential predicate to all of Plaintiffs' claims against Common Cause.[29] *Telecomms. Rsch. &*

---

[29] Even if this Court were to exercise jurisdiction, Plaintiffs would be estopped from asserting that the FCC unreasonably delayed a final decision on its applications because they already litigated – and lost – that argument before the D.C. Circuit. "[N]on-mutual defensive estoppel . . . precludes a plaintiff from contesting an issue it has previously litigated and lost in another case against a different defendant." *Pharm. Care Mgmt. Ass'n v. D.C.*, 522 F.3d 443, 446 (D.C. Cir. 2008). The doctrine applies when (1) the same issue now being raised was contested by the parties and submitted for judicial determination in the prior case; (2) the issue was actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case will not work a basic unfairness to the party bound by the first determination. *El Tayieb v. Mayorkas*, No. CV 22-1857 (RDM), 2024 WL 3338853, at *9 (D.D.C. July 9, 2024). Here, Plaintiffs allege that the purported "conspiracy" led to "enormous delays, blowing past the 180-day shot clock." Am. Compl. ¶ 137; *see also, e.g.*, *id.* ¶ 167 (noting "objectors' strategy of delay"); *id.* ¶ 323 (alleging the Goodfriend Defendants "coordinated the [] objectors' strategy of delay and baseless objections"). They made the same argument to the D.C.

*Action Ctr. v. FCC*, 750 F.2d 70, 75-78 (D.C. Cir. 1984).  And pursuant to 47 U.S.C. § 402(b), the D.C. Circuit has exclusive jurisdiction over appeals regarding the transfer, assignment, or disposal of station licenses.

Plaintiffs are well aware that the D.C. Circuit has exclusive jurisdiction over their challenges to the HDO; that is why they appealed directly to the D.C. Circuit from that order and, in the alternative, sought an expedited writ of mandamus if the HDO was not deemed a final order.[30]  The court denied Plaintiffs' appeal as premature but considered their petition for mandamus, setting an expedited schedule (as Plaintiffs requested) for briefing.  But after review of those briefs, the court *did not agree* with Plaintiffs on the fundamental assumptions underpinning their crusade: it held that Plaintiffs did not demonstrate "unreasonable delay" by the FCC, nor did the FCC have an obligation to rule on their applications without a hearing.

Having lost their arguments before the D.C. Circuit, Plaintiffs now attempt a do-over in this Court.  But litigants cannot skirt the statutory review framework "by requesting the District Court to enjoin action that is the outcome of the agency's order," even if they claim that the agency order was *ultra vires*.  *All Am. Tel. Co. v. FCC*, 867 F.3d 81, 93 (D.C. Cir. 2017).  *See also ITT World Commc'ns, Inc.*, 466 U.S. at 468 (district court lacked jurisdiction over *ultra vires* claim where complaint "raised the same issues and sought to enforce the same restrictions upon agency conduct as did the petition for rulemaking that was denied by the FCC").  Litigation between private parties is not exempt from these jurisdictional rules; what matters is whether a

---

Circuit in their mandamus petition, arguing that the FCC unreasonably delayed by not issuing an order within 180 days.  *See* SGCI Mandamus Petition at 31-38. The D.C. Circuit held there was no showing of unreasonable delay and the FCC did not have an obligation to rule on the application without the benefit of a hearing.  *See* Mandamus Order.  Because this issue was already litigated before and ruled upon by the D.C. Circuit, Plaintiffs cannot raise it again here.

[30] *See* SGCI Notice of Appeal, at 4 ("This Court [the D.C. Circuit] possesses exclusive jurisdiction over the broadcasters' challenge to the Hearing Order . . . .").

plaintiff's claims "depend on establishing that all or part of an FCC order subject to the Hobbs Act is 'wrong as a matter of law' or is 'otherwise invalid.'" *Mais v. Gulf Coast Collection Bureau Inc.*, 768 F.3d 1110, 1119-21 (11th Cir. 2014) (noting that whether challenge to an "FCC order 'arises in a dispute between private parties makes no difference'" and looking instead to the "practical effect of a proceeding" to impose jurisdictional bar) (citation omitted). *Accord Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187-89 (2d Cir. 2001) ("[S]tatutes . . . that vest judicial review of administrative orders exclusively in the courts of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with review of such orders.") (citation omitted).

Here, Plaintiffs' claims against Common Cause all turn on the HDO's validity; they insist it was pretextual, "objectively baseless," and without "evidentiary support." Am. Compl. ¶¶ 287, 292. These allegations directly challenge "conduct that is expressly licensed, certified, and regulated by" the FCC and, as such, necessarily "falls within the scope of the Hobbs Act." *Pub. Watchdogs v. S. Cal. Edison Co.*, 984 F.3d 744, 766 (9th Cir. 2020). Accordingly, this Court should dismiss the action for lack of subject matter jurisdiction.

## II.    PLAINTIFFS FAIL TO STATE ANY CLAIM AGAINST COMMON CAUSE UNDER RULE 12(B)(6)

### A.    All of Plaintiffs' Claims Against Common Cause Are Barred by the First Amendment

All of Plaintiffs' claims against Common Cause fail because they target its exercise of core First Amendment rights: petitioning the government to express its view that a proposed transaction does not satisfy the "public interest" required by law. Such speech on matters of public interest "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)).

The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). This is because "speech concerning public affairs is more than self-expression; it is the essence of self-government," *Garrison v. Louisiana*, 379 U. S. 64, 74-75 (1964). Recognizing that "the 'right to petition [is] one of the most precious of the liberties safeguarded by the Bill of Rights,'" speech implicating that right is "high in the hierarchy of First Amendment values." *Lozman v. City of Riviera Beach*, 585 U.S. 87, 101 (2018) (citation omitted). *See also McDonald v. Smith*, 472 U.S. 479, 482 (1985) ("The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression."). "The right of petition extends to all departments of the Government, including administrative agencies" like the FCC. *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 363 (S.D.N.Y. 2010), *as corrected* (Aug. 19, 2010) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

Similarly, "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). As the Supreme Court has recognized, "[e]ffective advocacy of both public and private points of view . . . is undeniably enhanced by group association," and "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958). *See also Cal. Motor Transp. Co.*, 404 U.S. at 510-11 ("[I]t would be destructive of rights of association and of petition to hold that groups with common interests may not . . . use the channels and procedures of state and

federal agencies and courts to advocate their causes and points of view.")  Indeed, "one of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means."  *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 933 (1982).

Plaintiffs attempt to paper over the obvious First Amendment flaws in their claims by characterizing Common Cause's FCC filings as "straw objections" that were motivated by "race-based" bias against Mr. Kim.  *E.g.*, Am. Compl. ¶ 323.  But while Plaintiffs' theory of a racist conspiracy is invented out of whole cloth (*see supra* at 11-16), it is also completely irrelevant.  "[T]he right of the people to petition their representatives in government 'cannot properly be made to depend on their intent in doing so.'"  *Claiborne Hardware Co.*, 458 U.S. at 913 (quoting *Eastern R.R. Presidents Conf. v. Noerr Motor Freight Inc.*, 365 U.S. 127, 139-40 (1961)).  Indeed, "in the world of debate about public affairs, many things done with motives that are less than admirable are protected by the First Amendment."  *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 53 (1988).  *See also Ginx*, 720 F. Supp. 2d at 363 (recognizing that citizens "have a right to petition the [g]overnment, even if their motive is despicable").

In fact, even an FCC petition that *did* make overtly racist or sexist statements about SGCI's leadership – which, again, is not the case here – would not be actionable.  "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."  *Texas v. Johnson*, 491 U.S. 397, 414 (1989) (collecting cases).  "Speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'"  *Matal v. Tam*, 582 U.S. 218, 246 (2017) (prohibition against federal trademark registration for "disparaging marks" held unconstitutional).  *See also R.A.V. v. City of*

21

*St. Paul*, 505 U.S. 377, 382 (1992) (First Amendment "prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed").  Applying these principles, courts have repeatedly held that offensive – even abhorrent – speech is protected by the First Amendment, where it does not fall into one of the "few limited areas" where content-based restriction is permissible.  *Counterman v. Colorado*, 600 U.S. 66, 73, (2023) (quoting *United States v. Stevens*, 559 U.S. 460, 470 (2010)).[31]  These "historically unprotected categories of speech" include incitement to imminent lawless action, defamation, obscenity, and "true threats."  *Id.* (collecting cases). Plaintiffs do not allege that a single statement from Common Cause's FCC filings falls within any of these categories.

Ginx v. Soho Alliance*, 720 F. Supp. 2d 342 (S.D.N.Y. 2010), is instructive.  In *Ginx*, the court rejected Section 1981 civil rights claims against individuals and community groups who opposed the plaintiffs' procurement of a liquor license for a local establishment.  Plaintiffs claimed that the defendants' efforts to oppose the liquor license – which included organizing community protests, voicing opposition at a State Liquor Authority ("SLA") hearing, and challenging the SLA's issuance of the license in court – were motivated by racial animus and interfered with its contracts and business relations by "tying up [the] liquor permit application until the establishment was no longer financially viable."  *Id.* at 357, 363.  But the court dismissed these claims under Rule 12(b)(6) because they targeted the defendants' exercise of their core First Amendment right to petition the government – which "cannot be attacked via

---

[31] *See, e.g., Snyder*, 562 U.S. at 458-59 (anti-homosexual picketing at soldier's funeral); *Cohen v. California*, 403 U.S. 15, 26 (1971) (wearing jacket saying "F--- the Draft" in courthouse); *Terminiello v. City of Chi.*, 337 U.S. 1, 3, 5 (1949) (inflammatory speech attacking "various political and racial groups"); *Vill. of Skokie v. Nat'l Socialist Party of Am.*, 373 N.E.2d 21, 26 (Ill. 1978) (display of Nazi swastikas at public demonstration).

[Section] 1981, regardless of their motive." *Id.* at 363. The same reasoning applies here, and warrants dismissal of Plaintiffs' claims against Common Cause.

Moreover, the very activity Plaintiffs target in this action – organizing with like-minded parties to petition the government – is expressly protected by the *Noerr-Pennington* doctrine, which "holds that defendants who petition the government for redress of grievances . . . are immune from liability for such activity under the First Amendment." *Nader v. Democratic Nat'l Comm.,* 555 F. Supp. 2d 137, 156 (D.D.C. 2008) (applying *Noerr-Pennington* to bar claims for abuse of process and malicious prosecution over lawsuits challenging presidential candidate's ballot eligibility), *aff'd on other grounds*, 567 F.3d 692 (D.C. Cir. 2009). While it was originally developed in an antitrust context, courts in this Circuit and across the country have applied *Noerr-Pennington* to reject a variety of claims – including tortious interference, civil conspiracy, and federal civil rights claims. *See, e.g., Nader*, 555 F. Supp. 2d at 156-61; *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 20 (D.D.C. 2014) (applying *Noerr-Pennington* to tortious interference and abuse of process claims), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *Jones v. Louisiana State Bar Ass'n*, 738 F. Supp. 2d 74, 80-81 (D.D.C. 2010) (civil rights claims against attorneys barred by *Noerr-Pennington* where plaintiff's allegations "solely concern [defendants'] petitioning activities . . . before governmental bodies"), *aff'd*, No. 10-5327, 2011 WL 11025624 (D.C. Cir. Oct. 3, 2011); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.,* 858 F.2d 1075, 1084 (5th Cir. 1988) (applying *Noerr-Pennington* to tortious interference and Section 1983 claims); *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3d Cir. 1988) (applying *Noerr-Pennington* to tortious interference and civil conspiracy claims); *Manistee Town Ctr. v. City of Glendale,* 227 F.3d 1090, 1092 (9th Cir. 2000) ("[W]e have held that *Noerr-Pennington* immunity applies to claims under 42 U.S.C. § 1983 that are based on the petitioning

of public authorities."); *New West, L.P. v. City of Joliet,* 491 F.3d 717, 722 (7th Cir. 2007)

*("Noerr-Pennington* has been extended beyond the antitrust laws, where it originated, and is

today understood as an application of the first amendment's speech and petitioning clauses.");

*Rondigo, LLC v. Twp. of Richmond,* No. 08-cv-10432, 2012 WL 1021726, at *5, *8 (E.D. Mich.

Mar. 27, 2012) (applying *Noerr-Pennington* to Section 1983 and defamation claims), *aff'd*, 522

F. App'x 283 (6th Cir. 2013); *Barnes Found. v. Twp. of Lower Merion*, 927 F. Supp. 874, 875-77

(E.D. Pa. 1996) (applying *Noerr-Pennington* to Section 1985 claim, noting it was "irrelevant"

whether petitioning activity "may have been motivated by racism).[32]

To overcome the broad First Amendment protections recognized in *Noerr-Pennington*,

Plaintiffs would have to establish that Common Cause's petition before the FCC was a "sham,"

meaning it was (1) "objectively baseless in the sense that no reasonable litigant could

realistically expect success on the merits" and (2) "brought with the specific intent to further

wrongful conduct through the use of the governmental process – as opposed to the outcome of

that process."  *Nader*, 555 F. Supp. 2d at 157.  Plaintiffs would bear the burden of demonstrating

that this "sham" exception applies, and the second (subjective) prong need be considered only if

Plaintiffs demonstrate that the petition was objectively baseless under the first prong.  *Id.*; *see*

---

[32] The D.C. Circuit has not yet ruled on the application of *Noerr-Pennington* outside the antitrust context.  *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1137 n.8 (D.C. Cir. 2015) (noting in dicta footnote that the court had not yet applied *Noerr-Pennington* to tort claims, but "tak[ing] no position on the matter" since the doctrine would not apply to the case at bar). However, the D.C. Circuit previously recognized that the fundamental principles in *Noerr-Pennington* – construing claims to avoid conflict with the First Amendment – would apply equally to other causes of action that target the filing of otherwise lawful, non-fraudulent petitions with courts or administrative agencies.  *Whelan v. Abell*, 48 F.3d 1247, 1254 (D.C. Cir. 1995) ("As *Noerr–Pennington* rests on the conclusion that the filing of claims in court or before administrative agencies is part of the protected right to petition, it is hard to see any reason why, as an abstract matter, the common law torts of malicious prosecution and abuse of process might not in some of their applications be found to violate the First Amendment.").

*also Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("Only if [the] challenged [petition] is objectively meritless may a court examine the litigant's subjective motivation.").

Common Cause's petition was plainly was not a "sham." As the Amended Complaint acknowledges, Common Cause raised the same objections it routinely asserts in connection with proposed transactions that would consolidate ownership of local media outlets. Am. Compl. ¶ 98. But most importantly, Common Cause's FCC petitions cannot be a "sham" *because they were successful*: the FCC held Common Cause had standing to pursue its petition, named it a "party in interest," and ordered a hearing on the very concerns it had raised, namely whether "(1) the Transactions are structured in a way that is likely to trigger a rate increase harmful to consumers, as a result of contractual clauses that take immediate effect after the consummation of the Transactions, and (2) the Transactions will reduce or impair localism, including whether they will result in labor reductions at local stations." HDO ¶¶ 2, 18. These rulings foreclose any attempt to apply the "sham" exception to Common Cause. *See Pro. Real Est. Invs.*, 508 U.S. at 58 ("[A] successful effort to influence governmental action . . . certainly cannot be characterized as a sham.") (citation and internal quotation marks omitted); *Nader*, 555 F. Supp. 2d at 157 ("One cannot come before a court and argue that litigation that terminated in one's opponent's favor is objectively baseless") (citation and internal quotation marks omitted); *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 20 (suit not "objectively baseless" where it survived motion to dismiss).

Even if they could satisfy the first prong (which they cannot), Plaintiffs *also* would not be able to show that Common Cause subjectively intended to use government proceedings for wrongful conduct as required by the second prong. Under *Noerr-Pennington*, "[a] 'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable

government action' at all." *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 380

(1991) (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4

(1988)). But there is no question that Common Cause genuinely sought to persuade the FCC that

SGCI's proposed acquisition of the TEGNA stations was not in the public interest – just as it

"routinely" opposes large mergers that result in media consolidation and threaten job losses and

increased costs. Am. Compl. ¶ 98.

In sum, Common Cause has a First Amendment right to express its opposition to a

proposed media merger. It has a right to file petitions with the FCC and to join its voice with

like-minded allies in public advocacy. The fact that its advocacy was *successful* – that the FCC

agreed with its concerns and ordered a hearing for further consideration – cannot transform its

constitutionally protected speech and petitioning activity into civil liability. The First

Amendment fully protects speech that is "intended to influence" the conduct of its audience,

*Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971), and the government "may not award

compensation for the consequences of nonviolent, protected activity," *Claiborne Hardware Co.*,

458 U.S. at 918 (white merchants' claims for conspiracy and tortious interference arising from

civil rights boycott barred by First Amendment). Because all of Plaintiffs' claims target

Common Cause for exercising its core First Amendment rights to petition the FCC and express

its objections to the proposed merger, these claims fail as a matter of law.

**B. Plaintiffs Do Not and Cannot Plead the Necessary Elements of Each Claim Against Common Cause**

This Court need go no further to dispose of all claims against Common Cause (Counts II-

VI). But each of Plaintiffs' claims against Common Cause also fails independently because the

Amended Complaint does not – and cannot – plausibly allege the requisite elements. Because

further amendment "could not possibly cure [these] deficienc[ies]," "[d]ismissal with prejudice is warranted." *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1340 (D.C. Cir. 2015).

The Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that a complaint must contain a plausible claim for relief to survive a motion to dismiss under Rule 12(b)(6).   A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.  In applying the plausibility standard, the Supreme Court instructs that a "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 679.   The complaint must contain sufficient well-pleaded facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 1.    42 U.S.C. § 1981 (Count II)

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  To state a claim under Section 1981, "the plaintiff must allege that (1) [he] is a member of a racial minority; (2) the defendant intended to discriminate against [him] on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981" – here, the right to make and enforce contracts.  *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 46 (D.D.C. 2020) (quoting *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 91 (D.D.C. 2019)).  Plaintiffs' Section 1981 claim fails on at least two grounds.

***First,*** the Amended Complaint fails to plead facts showing that Common Cause intentionally discriminated against Plaintiffs on the basis of race, as required to state a Section 1981 claim.  As described above, Plaintiffs have not plausibly alleged ***any*** facts supporting their allegations of racial animus.  Instead, their entire theory of a race-based conspiracy against Mr. Kim is built on deliberate misrepresentations of Common Cause's FCC filings and conclusory

assertions "on information and belief." *See supra* at 11-16. But "[o]n information and belief" is just "a lawyerly way of saying that [SGCI] does not know that something is a fact but just suspects it or has heard it." *Donald J. Trump for President, Inc. v. Sec'y, Commw. of Pa.*, 830 F. App'x 377, 387 (3d Cir. 2020). Plaintiffs "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory"; they must provide actual factual allegations to back up those claims. *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).

The only fact Plaintiffs offer to support their theory of a race-based conspiracy is that Mr. Allen and Mr. Goodfriend happened to have scheduled meetings with FCC officials on the same day that Common Cause and its co-petitioners filed a petition for additional information and time to object to the Standard General-TEGNA transaction. *See* Am. Compl. ¶¶ 128-30. Plaintiffs do not explain how this simple fact leads to the "obvious inference" of a conspiracy in which Common Cause agreed to act as "straw objectors" for the benefit and at the direction of the Allen, DISH, or Goodfriend Defendants, motivated by racial animus toward Mr. Kim. *See id.* ¶ 137. There are no allegations that Common Cause had any contact with any of these defendants, other than the fact that Common Cause was a co-petitioner on FCC filings where Mr. Goodfriend appeared on behalf of his labor union clients. Even more damning, assuming all these allegations showed a conspiracy to oppose the SGCI application, they do not remotely suggest that such an imagined conspiracy was because of Mr. Kim's race. Thus, Plaintiffs' alleged conspiracy is not remotely plausible, and this claim fails as a matter of law.

**Second,** Plaintiffs cannot maintain a Section 1981 claim because they had no authority over the contract at issue, which is the right that Section 1981 protects. "[L]iability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a

contract with the third party." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 477 (S.D.N.Y. 2013) (cited at Am. Compl. ¶ 339). Here, the decision to approve the TEGNA transaction lay solely with the FCC, not with Common Cause (or any other third-party petitioner). This dooms Plaintiffs' claim as a matter of law. *See Ginx*, 720 F. Supp. 2d at 359 (dismissing Section 1981 claim because it was the acts of the State Liquor Authority and the state courts, not defendants' "petitioning, passing out fliers, campaigning, threatening to hire lawyers, filing a lawsuit," that "kept [plaintiffs' business] from getting its liquor license"); *Shaikh v. City of Chi.*, 341 F.3d 627, 629 (7th Cir. 2003) (Section 1981 claim failed "[b]ecause the City had no power directly to affect HUD's proposed sale of the property to Shaikh").

### 2.    42 U.S.C. § 1985(3) (Count III)

Without a Section 1981 claim, Plaintiffs' remaining civil rights claims have no legal foundation. Section 1985 provides an action for damages against anyone who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." "There can be no recovery under section 1985(3) absent a violation of a substantive federal right." *Wiggins v. Hitchens*, 853 F. Supp. 505, 511 (D.D.C. 1994) (dismissing Section 1985(3) claim where plaintiff failed to allege a violation of Section 1981).

Count III also fails because Plaintiffs fail to allege a plausible conspiracy to violate their civil rights. To state a Section 1985(3) claim, "it is not sufficient that Plaintiffs allege an agreement between Defendants to harm Plaintiffs. Instead, Defendants must have formed an agreement *with the purpose of violating the civil rights of Plaintiffs*." *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 61 (D.D.C. 2019) (emphasis added).

Here, Plaintiffs fail to allege a single fact in support of an agreement between Common Cause and any alleged co-conspirator, as required for a Section 1985(3) claim. As explained

*supra*, there can be no plausible inference of conspiracy based on the facts Plaintiffs allege, let alone a conspiracy based on Mr. Kim's race, and conclusory allegations "on information and belief" that Common Cause's objections were effectively ghostwritten by third parties to "advance[] Allen's race-based motivations," Am. Compl. ¶¶ 158, 323, are not sufficient to plead this claim. *See Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing plaintiff's Section 1985(3) claims where he "fail[ed] to allege (beyond conclusory assertions) that there was an agreement or meeting of the minds between any of the defendants to violate his civil rights because of his membership in a protected class"). As in *Iqbal*, 556 U.S. at 682, the "obvious alternative explanation" for Common Cause's objections – a genuine opposition to SGCI's application on the same grounds that it usually asserts – is far more likely than the far-fetched (and unsupported) conspiracy to discriminate on the basis of race that Plaintiffs allege "on information and belief."

### 3.    42 U.S.C. § 1986 (Count IV)

Section 1986 provides a cause of action against any person who "having knowledge [of] any of the wrongs conspired to be done and mentioned in Section 1985" fails to prevent them, having the power to do so. Without a viable Section 1985(3) claim, Plaintiffs also cannot state a claim under Section 1986. *Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007) (Section 1985 claim is a "prerequisite" for Section 1986 claim) (quoting *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 72 (D.D.C. 1988)). And independently, Plaintiffs cannot state a Section 1986 claim because Common Cause did not have "actual authority" over the FCC's decisions. *Smith v. Trump,* No. 21-CV-02265, 2023 WL 417952, at *7 (D.D.C. Jan. 26, 2023) ("[T]o hold a private individual responsible under § 1986, the person must be someone with actual authority to compel others to act or refrain from acting."), *aff'd*, No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023).

    **4.**    **Tortious Interference with Contract and with Prospective Business Opportunity (Counts V and VI)**

"To state claims for tortious interference under District of Columbia law [with respect to contract or prospective business opportunity], a plaintiff must allege the existence of a contract or business expectancy, the defendant's knowledge of the contract or business expectancy, intentional interference causing the breach of the contract or termination of the business expectancy, and damages." *Banneker Ventures*, 798 F.3d at 1134. These claims fail as a matter of law.

*First*, Common Cause's petition did not "cause" any breach or termination of contract. By their own admission, Plaintiffs terminated the merger because they were unable to secure the necessary FCC approvals within the limited time frame they chose to negotiate with their financiers. Indeed, the FCC only discontinued its proceedings after Plaintiffs notified it that the merger was terminated. Plaintiffs' allegation that they would have consummated the TEGNA acquisition "[b]ut for" Common Cause's petition, Am. Compl. ¶ 371, 379, cannot square with the rest of its Amended Complaint, which blames 12 other defendants as the simultaneous proximate cause of the same alleged termination – including the FCC, which is the only entity that had the legal authority to approve the transactions.

*Second*, because the merger deal was "subject to government approval," Plaintiffs "cannot claim a concrete business expectation" to support a tortious interference claim. *Jefferson-11th St., LLC v. D.C.*, No. 19-CV-01416, 2020 WL 3035038, at *8 (D.D.C. June 5, 2020).

*Third*, Common Cause did not engage in conduct that rises to the level of unlawful interference. To establish either type of tortious interference claim, "the plaintiff must demonstrate that the defendant engaged in conduct that is 'egregious; for example, it must

31

involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement.'" *Modis, Inc. v. InfoTran Sys., Inc.*, 893 F. Supp. 2d 237, 241 (D.D.C. 2012) (citation omitted). "An interfering defendant may avoid liability by showing that its interference was not improper – in other words, not something beyond mere competitive activity." *Id.* Plaintiffs fail to show any alleged interference was improper. There are no allegations that Common Cause's FCC filings contained libelous statements, constituted fraud, misrepresentation, or disparagement, or involved any other tortious conduct.

### 5.    Civil Conspiracy (Count VII)

Under D.C. law, "civil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Nader*, 567 F.3d at 697 (citation omitted). Because Plaintiffs' tortious interference claims fail (Counts V and VI), there is no predicate for civil conspiracy. Nor could Plaintiffs plausibly could not plead any such conspiracy; as explained above, Plaintiffs fail to allege any agreement among purported co-conspirators, and their allegations in support of a conspiracy are "purely conclusory and devoid of any factual support." *Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (quoting *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010)).

### III.    CONCLUSION

For the reasons explained above, Common Cause respectfully requests that the Court dismiss the claims against it with prejudice.

Dated: September 9, 2024                    Respectfully submitted,

                                           /s/ *Alison Schary*
                                           Alison Schary (#1014050)
                                           Marietta Catsambas (#1617526)
                                           Davis Wright Tremaine LLP
                                           1301 K Street NW, Suite 500 East
                                           Washington, D.C. 20005
                                           alisonschary@dwt.com
                                           mariettacatsambas@dwt.com
                                           (202) 973-4200

                                           *Counsel for Defendant Common Cause*