# EXHIBIT 4

Case No. 1:24-cv-01204-RC



Federal Communications Commission
Washington, D.C. 20554

June 3, 2022

DA 22-603
Released: June 3, 2022

*Via Electronic Mail*

Scott R. Flick
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036
scott.flick@pillsburylaw.com

Jennifer A. Johnson
Hannah Lepow
Covington & Burling LLP
One CityCenter 850 Tenth Street, NW
Washington, D.C. 20001
jjohnson@cov.com

Michael D. Basile
Cooley LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
mdbasile@cooley.com

Re:   Applications to Transfer Control of TEGNA, Inc., to Standard General, L.P.
      MB Docket No. 22-162

Dear Counsel:

On April 21, 2022, the Federal Communications Commission (Commission) accepted for filing applications seeking consent to transfer control of subsidiaries of TEGNA, Inc. (TEGNA), the ultimate parent of the licensees of 64 full-power television stations, two full-power radio stations, and other related FCC licenses, to an indirect subsidiary of SGCI Holdings III LLC (SGCI Holdings), whose Managing Member is Soohyung Kim, the Managing Partner of Standard General L.P. (Standard General and, jointly with TEGNA, the Applicants) (the Merger).[1]  In addition, applications were filed contemporaneously for a series of related transactions.  First, Standard General affiliate Community News Media LLC proposes to transfer control of its four full-power television stations to a subsidiary of CMG Media Corporation (CMG),[2] which the Bureau previously determined to be under the de facto control of Apollo Global Management, Inc. (AGM).[3]  Second, CMG seeks to transfer control of WFXT(TV), Boston, MA, to SGCI

---

[1] *Media Bureau Establishes Pleading Cycle for Applications to Transfer Control of TEGNA, Inc., to Standard General, L.P.,. and Permit-but-Disclose Ex Parte Status for the Proceeding,* Public Notice, MB Docket No. 22-162, DA 22-443 (MB April 21, 2022) (First Public Notice).

[2] KBSI(TV), Cape Girardeau, MO; KLKN(TV), Lincoln, NE; WDKA(TV), Paducah, KY; and WLNE-TV, New Bedford, MA.

Holdings.  Finally, immediately upon consummation of the Merger, post-merger TEGNA (Combined Company) proposes to assign the licenses of four full-power television stations to indirect, wholly-owned subsidiaries of CMG.[4]

On May 20, 2022, the Media Bureau (Bureau) extended the pleading cycle, requiring petitions to deny to be filed by June 22, 2022, oppositions to be filed by July 7, 2022, and replies to be filed by July 18, 2022.[5]  In order for the Commission to review the applications and make the necessary public interest finding under Section 310(d) of the Communications Act of 1934, as amended (the Act),[6] the Bureau is seeking limited additional documents and information.

Accordingly, pursuant to Section 308(b) of the Act, we request that the Applicants provide the requested documents and written responses for each request set forth in the Attachment and amend the applications to reflect such responses.  In order to maintain the extended pleading cycle discussed above, and the filing cycle set out in the Public Notice being issued simultaneously with this request, Applicants' responses are due no later than June 13, 2022.

For instructions on how to identify and organize the documents and written responses called for by this request, please see the instructions in the Attachment.  Your responses should be filed with Marlene H. Dortch, Secretary of the Commission, through the Commission's Electronic Comment Filing System (ECFS), under reference number MB Docket No. 22-162.[7]  For any responses that contain confidential or proprietary information, please follow the filing instructions set forth in the Protective Order released today, June 3, 2022.

For any electronic filings in response to this letter made using the Commission's Electronic Filing System, please also serve the documents via e-mail to David Brown at david.brown@fcc.gov.  If you have any questions regarding this matter, please contact David Brown, david.brown@fcc.gov, Deputy Chief, Video Division, Media Bureau, at (301) 908-5926, or Chris Robbins, chris.robbins@fcc.gov, Video Division, (202) 418-0685.

Sincerely,

Holly Saurer
Chief, Media Bureau

Enclosures

---

[3] *Terrier Media Buyer, Inc.*, Declaratory Ruling, 34 FCC Rcd 10544, 10549, paras. 14-15 (MB 2019).

[4] KVUE(TV), Austin, TX; KMPX(TV), Decatur, TX; KHOU(TV), Houston, TX; and KTBU(TV), Conroe, TX.

[5] *Media Bureau Extends Pleading Cycle for Applications to Transfer Control of TEGNA, Inc., to Standard General, L.P.*, Public Notice, MB Docket no. 22-162, DA 22-562 (MB May 20, 2022) (Second Public Notice).

[6] 47 U.S.C. § 3l0(d).

[7] If it is not possible to submit the responses electronically, please file in accordance with the instructions for paper filers set forth in the April 21, 2022 First Public Notice.

ATTACHMENT

**Inquiries: Information and Documents to be Provided**

The Applicants must provide the information and documents requested below, in accordance with the Instructions and Definitions below, by June 13, 2022, as set forth above.

Unless otherwise indicated, the time period covered by this Information Request is April 21, 2022, to current.

**Requests for Documents**

(1) Submit all documents submitted to the Department of Justice and Federal Trade Commission and designated as either 4(c), 4(d), or V documents, in connection with required clearance of the proposed transactions under the Hart-Scott-Rodino Antitrust Improvements Act and related regulations and instructions. If at all possible, we request that the Applicants use the same system of identification as used in the Department of Justice and Federal Trade Commission filings.

**Requests for Information**

(1) Describe the Combined Company's anticipated retransmission negotiating strategy Post-Transaction. Does the Combined Company anticipate jointly negotiating retransmission consent agreements or otherwise coordinating with AGM regarding the carriage of stations in Overlap Markets or Non-Overlap Markets Post-Transaction?

(2) Do the Combined Company and AGM intend to enter into (or have they already entered into) any Sharing Agreements, or any other agreements, including related to programming, operations, or sale of advertising, whether or not such agreements involve stations in the same market? If so, please describe.

(3) Provide a detailed explanation with supporting data describing how the Applicants anticipate the Transaction would serve the public interest in general and, more specifically, how the Transaction would improve local programming in the affected markets through investment in local content and production capabilities, including specific business synergies and efficiencies that would facilitate such investment or otherwise aid the operation of the stations, were the proposed Transaction to be consummated.

(4) Describe any changes regarding the composition of series A preferred shareholders since the filing of the Applications and submission of Exhibits B and C of the Contribution, Exchange and Merger Agreement, as well as a narrative description of any changes to the rights and/or restrictions of the series A and B preferred shareholders contained in Exhibits B and C of the Contribution, Exchange and Merger Agreement submitted with the Applications.

(5) Provide an accurate and detailed accounting of the impact the Transaction is expected to have in terms of anticipated staffing reductions.

**Affidavit Requirement**.  We direct the Applicants to support their answers with an affidavit or declaration under penalty of perjury, signed and dated by an authorized officer of TEGNA, Standard General, and AGM with personal knowledge of the representations provided in the responses.  The affidavit or declaration must verify the truth and accuracy of the information therein, state that all of the documents and information requested by this letter that is in the Company's possession, custody, control, or knowledge has been produced, and state that any and all documents provided in its answers are true and accurate copies of the original documents.  In addition to such general affidavit or declaration of the authorized officer of TEGNA, Standard General, and AGM described above, if such officer (or any other affiant or declarant) is relying on the personal knowledge of any other individual rather than his or her own knowledge, and if multiple employees contribute to the answer, TEGNA, Standard General, and AGM  shall provide separate affidavits or declarations of each such individual with personal knowledge that identify clearly to which answers the affiant or declarant with such personal knowledge is attesting.  All such declarations provided must comply with Section 1.16 of the Rules,[8] and be substantially in the form set forth therein.  Failure to so support the Company's answers could subject it to forfeiture.[9]

**Definitions.**  The following definitions apply only to this Information Request.  They are not intended to set or modify precedent outside the context of this document.  In this Information Request, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

    1.    The term "TEGNA" means TEGNA, Inc., and its Subsidiaries and Affiliates.

    2.    The terms "Standard General" means Standard General, L.P., and its Subsidiaries and Affiliates.

    3.    The term "AGM" means Apollo Global Management, Inc., and all of its Subsidiaries and Affiliates, including, specifically, CMG Media Corporation and its subsidiaries and affiliates.

    4.    The term "Applicants" means TEGNA, Standard General, and AGM.

    5.    The term "Applications" means the series of applications listed in the attachment to the April 21, 2022, Public Notice.

    6.    The term "Transaction" includes the proposed merger of TEGNA and Standard General and the related transactions the applications for which were approved for filing on April 21, 2022.

    7.    The term "Post-Transaction" refers to the time period following consummation of the proposed Transaction as approved by the Commission.

    8.    The term "Combined Company" means the Post-Transaction entity holding, controlling, or having an attributable interest in the FCC licenses that are currently held by, controlled by, or attributed to TEGNA and Standard General, respectively.

    9.    The term "Multichannel Video Programming Distributor" or "MVPD" means an entity, including a cable operator, which is engaged in the business of making available for purchase, by subscribers or customers, multiple channels of Video Programming.

    10.    The term "DMA" means Designated Market Area, which are the geographic areas in the United States in which local television viewing is measured by Nielsen Media Research.

---

[8] *See* 47 CFR § 1.16.

[9] *SBC Commc'ns, Inc.*, 17 FCC Rcd at 7600, para. 28 (2002) (imposing a $100,000 penalty for failing to submit a sworn written response).

11. The term "Overlap Market" shall mean any DMA in which the Combined Company and AGM both shall own, control, and/or have an attributable interest in a full-power broadcast television station Post-Transaction.

12. The term "Non-Overlap Market" shall mean any DMA in which the Combined Company and AGM will not both own, control or have an attributable interest in a full-power broadcast television station Post-Transaction.

13. The term "Sharing Agreement" means (1) any "time brokerage" or "local marketing" agreements as defined in 47 CFR § 73.3555, Note 2(j); (2) any joint sales agreements as defined in 47 CFR § 73.3555, Note 2(k); (3) any agreement for the provision of any payroll, personnel, maintenance, or other administrative services, including, but not limited to agreements styled as "shared services agreements;" and (4) any agreement for the lease of facilities of a broadcast television station.

14. The terms "and" and "or" have both conjunctive and disjunctive meanings.

15. The word "any" shall be construed to include the word "all," and the word "all" shall be construed to include the word "any." The word "each" shall be construed to include the word "every," and the word "every" shall be construed to include the word "each." All words used in the singular should be construed to include the plural, and all words used in the plural should be construed to include the singular.

16. The term "documents" means all computer files and written, recorded, and graphic materials of every kind in the possession, custody, or control of the Applicants. The term "documents" includes without limitation, electronic correspondence, metadata, embedded, hidden and other bibliographic or historical data describing or relating to documents created, revised, or distributed on computers systems, and all duplicates of documents (whether or not identical) in the files of or in the files maintained on behalf of all directors, officers, managers or other supervisory employees, duplicates of documents in all other files that are not identical duplicate of the originals, and duplicates of documents the original of which are not in the possession, custody, or control of the Applicants. The term "documents" includes spreadsheets, as well as underlying cell formulae and other codes. In addition, the term "documents" includes without limitation any amendments, side letters, appendices, or attachments. The term "computer files" includes without limitation information stored in, or accessible through, computer or other information retrieval systems. Thus, the Applicants should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes and archive disks and tapes, and other forms of offline storage, whether on or off the Applicants' premises. Electronic mail messages should also be provided, even if only available on backup or archive tapes or disks. Computer files shall be printed and produced in hard copy or produced in machine-readable form (provided that Commission staff determine prior to submission that it would be in a format that allows the Commission to use the computer files), together with instruction and all other materials necessary to use or interpret the data. Unless otherwise specified, the term "documents" excludes bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature and also excludes architectural plans and engineering blueprints. Where more than one identical copy of a requested document exists, the Applicants shall only produce one representative copy.

**Instructions**

  1. Submit responses to Information Requests in both paper and electronic form.  Submit responsive documents (including materials containing Highly Confidential or Confidential Information) in electronic form only, unless otherwise specified.  The Commission does not now require the submission of paper copies of these documents at this time but reserves the right to require their submission at a later time.

  2. The Commission accepts electronic productions loaded onto hard drives, CD-ROMs, or DVD-ROMs.  Where the size of the production exceeds the capacity of a single DVD-ROM, hard drives should be used as the delivery medium.  For each piece of media, a unique identifier (MEDIAID) must be provided and must be physically visible *on the exterior* of the physical item.  If the media is encrypted, supply the tool for decryption on or with the same media, as well as instructions for decryption.  Provide the password separately.  All documents produced in electronic format shall be scanned for, and free of, viruses.  The Commission will return any infected media for replacement, which may affect the timing of the Applicants' compliance with this Information Request.  The Commission does not accept load file productions via email or those that are posted on download sites *(e.g.,* FTP, secure server).

  3. For each statement submitted in response to the Information Request, indicate, by number and subsection, the specific request to which it is responsive.

  4. The specific requests made herein are continuing in nature.  The Applicants are required to produce in the future any and all documents and information that are responsive to the requests made herein but not initially produced.  In this regard, the Applicants must supplement their responses (a) if the Applicants learns that, in some material respect, the documents and information initially disclosed were incomplete or incorrect or (b) if additional responsive documents or information are acquired by or become known to the Applicants after the initial production.