# EXHIBIT 10

Case No. 1:24-cv-01204-RC

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| SGCI Holdings III LLC, TEGNA Inc., and CMG Media Corporation,  )<br><br>*Appellants*,  )<br><br>v.  )<br><br>Federal Communications Commission,  )<br><br>*Appellee*.  ) | Case No. 23-<u>1083</u> |

## NOTICE OF APPEAL

Pursuant to 47 U.S.C. § 402(b) and (c) and Federal Rule of Appellate Procedure 15, SGCI Holdings III LLC (Standard General), TEGNA Inc., and CMG Media Corporation (collectively, broadcasters) hereby appeal the final order of the Federal Communications Commission (Commission or FCC) captioned Hearing Designation Order, MB Docket No. 22-162, DA 23-149 (Feb. 24, 2023) (the Hearing Order), attached hereto as Exhibit A.

## I. Nature of the Proceedings

The broadcasters appeal from the February 24, 2023 order of the FCC denying their applications to transfer station licenses. See 47 U.S.C. § 402(b), (c); Ex. A.[1]

The broadcasters submitted the license-transfer applications to the Commission on March 10, 2022, pursuant to an $8.6 billion merger previously agreed to by the parties. See *Media Bureau Establishes Pleading Cycle for Applications to Transfer Control of TEGNA Inc., to Standard General, L.P.*, MB Docket No. 22-162, DA 22-443 (Apr. 21, 2022). Under the Communications Act, the FCC must grant the applications if they are in the public interest. 47 U.S.C. §§ 309(a), 310(d). The FCC has delegated authority to process license applications to its Media Bureau—a division within the agency. 47 C.F.R. §§ 0.61(a), 0.283. The FCC has publicly committed to try to adjudicate all license-transfer applications filed with the agency within 180 days. FCC, *Informal Timeline for Consideration of Applications for Transfers or Assignments*

---

[1] Additional background information can be found in the mandamus petition filed concurrently with this notice of appeal. *In re SGCI Holdings III LLC*, No. 23-___ (D.C. Cir. filed Mar. 27, 2023).

2

*of Licenses or Authorizations Relating to Complex Mergers*, bit.ly/3FcxUMe (last visited Mar. 27, 2023).

Rather than comply with this timeline, the Media Bureau repeatedly delayed the license-transfer applications and, on February 24, 2023, ordered a hearing before the Commission's administrative law judge that cannot be completed before the financing underpinning the transaction expires on May 22, 2023. Ex. A. ¶ 51; see Enforcement Bureau's Opposition to Applicants' Motion to Certify 6, 9, MB Docket No. 22-162 (Mar. 9, 2023) (agreeing that further proceedings will not be completed in time). The hearing ordered by the Media Bureau pursuant to delegated authority is unconstitutional and otherwise unlawful on multiple grounds, and its purpose and effect is to deny the applications.

The broadcasters urgently sought relief within the agency, but the ALJ denied their request and the FCC has done nothing as of this filing. Order re Motion for Certification, MB Docket No. 22-162, FCC 23M-06 (Mar. 16, 2023); Application for Review of Hearing Designation Order, MB Docket No. 22-162 (Mar. 17, 2023). Accordingly, 30 days after the issuance of the Hearing Order, the broadcasters filed this timely appeal. 47 U.S.C. § 402(c). This appeal seeks relief from the effective denial of

3

broadcasters' applications on the grounds that the Hearing Order (1) scheduled a hearing that the ALJ cannot constitutionally hold, (2) was based on grounds that the Commission cannot lawfully consider, and (3) was not based on evidence that could satisfy the statutory standard to trigger a hearing.

## II.  Jurisdiction

This Court possesses exclusive jurisdiction over the broadcasters' challenge to the Hearing Order pursuant to this Notice of Appeal. Section 402(b) requires that all appeals from denials of license-transfer applications be brought in this Court. 47 U.S.C. § 402(b)(3), (6). The appeal is timely—filed within 30 days of the Hearing Order's February 24, 2023, release date. See 47 U.S.C. § 402(c); *PSSI Global Services, LLC v. FCC*, 983 F.3d 1, 6-7 (D.C. Cir. 2020) (applying FCC regulation keying "public notice" to release date); 47 C.F.R. § 1.4(e), (j) (when filing date falls on weekend, deadline is the next business day); Fed. R. App. P. 26(a)(1)(C) (same).

Moreover, the Hearing Order is a final denial warranting this Court's review. An agency action is final if it (1) "mark[s] the consummation of the agency's decisionmaking process" and

4

(2) determines "rights or obligations" or causes "legal consequences [to] flow." *Bennett* v. *Spear*, 520 U.S. 154, 177-178 (1997) (citation omitted). This test is flexible and pragmatic, without many "self-implementing, bright-line rule[s]." *National Association of Home Builders* v. *U.S. Army Corps of Engineers*, 417 F.3d 1272, 1279 (D.C. Cir. 2005). It does not require the agency to issue "a formal statement," for "agency inaction may represent effectively final agency action that the agency has not frankly acknowledged." *Her Majesty the Queen in Right of Ontario* v. *EPA*, 912 F.2d 1525, 1531 (D.C. Cir. 1990). Considering the "practical effect" of an order prevents agencies from end-running judicial review— "preventing [applicants] from obtaining any explicitly final determination on [their] application[s]" while "thwarting the Court's interest in reviewing those agency actions." *Friedman* v. *FAA*, 841 F.3d 537, 541-542 (D.C. Cir. 2016).

The Hearing Order satisfies both criteria of this practical approach. It marks the consummation of the agency's decisionmaking process because the "actions suggest" that the FCC "has made up its mind." *Friedman*, 841 F.3d at 543. After nearly a year of slow-rolling the applications, the Media Bureau ordered a hearing on legally irrelevant

5

topics with full awareness that it would spell the end for the applications. The Hearing Order also effectively determines the broadcasters' legal right to transfer station licenses. *National Association of Home Builders*, 417 F.3d at 1279 (permit decisions "carry easily-identifiable legal consequences"). Even though the Commission has withheld "formal acknowledgement" of that denial, the "practical effect" of the decision constitutes a "constructive denial" of the applications. *Friedman*, 841 F.3d at 541–42; *Environmental Defense Fund, Inc.* v. *Hardin*, 428 F.2d 1093, 1098-1100 (D.C. Cir. 1970) (agency inaction was "tantamount to an order denying" the petition).

Out of an abundance of caution and in the alternative, the broadcasters have contemporaneously commenced a conditional petition for writ of mandamus seeking to compel the FCC to promptly issue a formal order resolving the applications. See *In re SGCI Holdings III LLC*, No. 23-___ (D.C. Cir. filed Mar. 27, 2023). This Notice of Appeal, however, is the proper vehicle to challenge the Hearing Order.

## III. Reasons For Granting The Appeal

The Media Bureau ordered a hearing in response to two petitions to deny the broadcasters' applications filed by special interest groups.

6

Under the Communications Act, if a petition to deny an application raises "no substantial and material questions of fact" and "a grant of the application would be consistent with" the public interest, the Commission "*shall* make the grant, deny the petition, and issue a concise statement of the reasons for" doing so. 47 U.S.C. § 309(d)(2) (emphasis added). The only reason the Media Bureau gave for failing to deny the objectors' petitions was the need for an ALJ hearing—which was based on speculation that Standard General might increase retransmission fees (fees that carriers pay stations to retransmit the stations' content) or decrease newsroom staffing following the deal's close. That reasoning was arbitrary and capricious, unconstitutional, contrary to law, and in excess of the Commission's authority.

Specifically, the Court should reverse the agency's effective denial of the broadcasters' applications for three independent reasons.

1.  The Hearing Order is contrary to law because it sets a hearing before an ALJ who is unconstitutionally insulated from presidential control. Article II of the Constitution requires that the President have the power to hold Executive officers accountable by "removing them from office, if necessary." *Free Enterprise Fund* v. *Public Company Accounting*

7

*Oversight Board*, 561 U.S. 477, 483 (2010). The Supreme Court has made clear that, when two layers of for-cause removal protection shield an inferior officer from the President, that scheme is "incompatible with the Constitution's separation of powers." *Id.* at 498. *A fortiori*, the Commission's ALJ cannot lawfully conduct the hearing: she is an inferior officer, see *Lucia* v. *SEC*, 138 S. Ct. 2044, 2053-2054 (2018), who enjoys *three* layers of for-cause removal protection, 5 U.S.C. § 7521(a) (ALJ); 5 U.S.C. § 1202(d) (Merit System Protection Board); 47 U.S.C. § 154(c)(1) (Commission); see *Jarkesy* v. *SEC*, 34 F.4th 446, 463-465 (5th Cir. 2022), petition for cert. pending, No. 22-859 (filed Mar. 8, 2023).

    2.    The Media Bureau's effective denial rested on grounds that lie beyond the Commission's statutory authority: supposedly increased retransmission fees and decreased station-level employment. The Communications Act charges the Commission with evaluating whether proposed license transfers will "serve[]" the "public interest." 47 U.S.C. § 309(a); see *id.* § 310(d). But that directive does not give the Commission its own "broad license to promote the general public welfare"; instead, Congress obligated the agency to pursue "the purposes of the regulatory legislation." *Bilingual Bicultural Coalition on Mass Media, Inc.* v. *FCC*,

8

595 F.2d 621, 624 (D.C. Cir. 1978) (en banc). Thus, this Court has held that the Communications Act *prohibits* the Commission from considering nondiscriminatory employment practices. *Ibid*. Consistent with this statutory limitation, the Commission has "never suggested that a reduction in a station's staff is contrary to the public interest, if conducted in a nondiscriminatory manner." *Univision Holdings, Inc.*, 7 FCC Rcd 6672, 6683 n.45 (1992).

The Commission also lacks power to consider retransmission consent rates as part of the "public interest" analysis—indeed, it has disclaimed such power until now. See *Tribune Media Co.*, 2019 WL 4440126, at *5 (F.C.C. Sept. 16, 2019). As the Commission has acknowledged, it is "not the proper forum for resolving an alleged private contractual dispute." *Id.* at 8463 ¶ 59. Under the Communications Act, negotiations over retransmission fees are a matter of private contract. See 47 U.S.C. § 325(b)(3)(C).

3. The Hearing Order was arbitrary, capricious, and contrary to law because its conclusions were supported exclusively by "evidence" that is categorically excluded by statute. The Commission may order a hearing based on a petition to deny only if the petition sets forth "specific

9

allegations of fact" showing that granting the application "would be prima facie inconsistent with" the public interest. 47 U.S.C. § 309(d)(1). Those allegations must either be "supported by affidavit" by witnesses with "personal knowledge" or concern a proper subject of "official notice," and they must establish a "substantial" question of "material" fact. *Id.* § 309(d)(1)-(2); see *Citizens for Jazz on WRVR, Inc.* v. *FCC*, 775 F.2d 392, 394-395 (D.C. Cir. 1985). Here, however, the challengers offered only speculation, magazine articles, irrelevant documents, and bald allegations. Those "conclusionary" facts and "general allegations" fall far short of the threshold showing necessary to trigger a hearing, and therefore could not support the Media Bureau's decision not to grant the broadcasters' transfer applications. *Stone* v. *FCC*, 466 F.2d 316, 322 (D.C. Cir. 1972).

The broadcasters therefore respectfully request that this Court reverse the Hearing Order and remand to the agency with instructions to grant the applications.

| | |
|---|---|
| March 27, 2023 | Respectfully submitted, |
| | /s/ Miguel A. Estrada |
| Kevin F. King | Miguel A. Estrada |
| Jennifer A. Johnson | *Counsel of Record* |
| Jocelyn G. Jezierny | Jonathan C. Bond |
| COVINGTON & BURLING LLP | GIBSON, DUNN & CRUTCHER LLP |
| One CityCenter | 1050 Connecticut Avenue, N.W. |
| 850 Tenth Street, N.W. | Washington, D.C. 20036 |
| Washington, D.C. 20001 | (202) 955-8500 |
| (202) 662-6000 | mestrada@gibsondunn.com |
| | |
| *Counsel for Appellant* | Stephen J. Hammer |
| *TEGNA Inc.* | GIBSON, DUNN & CRUTCHER LLP |
| | 2001 Ross Avenue, Suite 2100 |
| | Dallas, TX 75201 |
| | (214) 698-3100 |
| David E. Mills | |
| Michael D. Basile | Scott R. Flick |
| Henry H. Wendel | Jessica T. Nyman |
| COOLEY LLP | PILLSBURY WINTHROP |
| 1299 Pennsylvania Avenue, N.W. |   SHAW PITTMAN LLP |
| Suite 700 | 1200 Seventeenth Street, N.W. |
| Washington, D.C. 20004 | Washington, D.C. 20036 |
| (202) 842-7800 | (202) 663-8000 |
| | |
| *Counsel for Appellant* | *Counsel for Appellant* |
| *CMG Media Corporation* | *SGCI Holdings III LLC* |

11

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| SGCI Holdings III LLC, TEGNA Inc., and CMG Media Corporation, <br><br> *Appellants*, <br><br> v. <br><br> Federal Communications Commission, <br><br> *Appellee*. | Case No. 23-___ |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, appellants disclose the following corporate parents:

SGCI Holdings III LLC is a Delaware limited-liability company that serves as an investment vehicle.[*] Soohyung Kim is the sole managing member of SGCI Holdings III LLC. Standard General Master Fund II L.P., a Cayman Islands limited partnership, owns 20.4% of the equity of SGCI Holdings III LLC. Standard General Master Fund II L.P. is wholly controlled by Standard General L.P., a Delaware limited

---

[*] This certificate represents the ownership status of SGCI Holdings III LLC as it currently stands. It therefore deviates from the ownership structure described in the applications to the Commission, which show the company's post-closing owners.

partnership. Standard General L.P. is wholly controlled by Standard General Holdings L.P., a Delaware limited-liability company, which is in turn wholly controlled by Standard General S. Corp., a Delaware corporation. Standard General S. Corp. is wholly controlled by Acme Amalgamated Holdings LLC, a Delaware limited-liability company. No corporation owns more than 10% of Acme Amalgamated Holdings LLC. SGCI Holdings LLC, a Delaware limited-liability company, owns 23.90% of the equity of SGCI Holdings III LLC. SGCI Holdings LLC, is wholly controlled by Standard General L.P. EPSG Master SPC Ltd., a Cayman Islands limited corporation, owns 39.1% of the equity of SGCI Holdings III LLC. EPSG Master SPC Ltd. is wholly controlled by EPSG SPC Ltd., a Cayman Islands limited corporation. EPSG SPC Ltd. is wholly controlled by Standard General L.P. No other corporation owns more than 10% of the equity of SGCI Holdings III LLC.

TEGNA Inc. is a publicly traded Delaware corporation that provides media services. The Vanguard Group owns 10.52% of the stock of TEGNA Inc. BlackRock, Inc. owns 12.2% of the stock of TEGNA Inc. No other corporation owns more than 10% of the stock of TEGNA Inc.

13

CMG Media Corporation is a Delaware corporation that provides media services. CMG Media Corporation is wholly owned by CMG Media Holdings II, Inc., a Delaware corporation. CMG Media Holdings II, Inc., in turn, is wholly owned by CMG Holdings, Inc., a Delaware corporation. AP IX Titan Holdings, L.P., a Delaware limited partnership, owns 71% of CMG Holdings, Inc. AP IX Titan Holdings, L.P. is owned by funds managed by affiliates of Apollo Global Management, Inc. (AGM) and ultimately is controlled by AP IX (PMC) VoteCo, LLC (VoteCo), a Delaware limited liability company. AGM's common shares are publicly traded on the New York Stock Exchange (NYSE: APO). Neither VoteCo nor AGM have any parent companies, and no corporation owns more than 10% of either VoteCo or AGM. Cox Enterprises, Inc., a Delaware corporation, owns 19.8% of CMG Holdings, Inc. No publicly traded company owns more than 10% of the stock of Cox Enterprises, Inc. No other corporation owns more than 10% of CMG Holdings, Inc.

14

March 27, 2023                                       Respectfully submitted,

                                                             /s/ *Miguel A. Estrada*

Kevin F. King                                        Miguel A. Estrada
Jennifer A. Johnson                                     *Counsel of Record*
Jocelyn G. Jezierny                                  Jonathan C. Bond
COVINGTON & BURLING LLP                              GIBSON, DUNN & CRUTCHER LLP
One CityCenter                                       1050 Connecticut Avenue, N.W.
850 Tenth Street, N.W.                               Washington, D.C. 20036
Washington, D.C. 20001                               (202) 955-8500
(202) 662-6000                                       mestrada@gibsondunn.com

*Counsel for Appellant*                              Stephen J. Hammer
*TEGNA Inc.*                                         GIBSON, DUNN & CRUTCHER LLP
                                                     2001 Ross Avenue, Suite 2100
                                                     Dallas, TX 75201
                                                     (214) 698-3100

David E. Mills
Michael D. Basile                                    Scott R. Flick
Henry H. Wendel                                      Jessica T. Nyman
COOLEY LLP                                           PILLSBURY WINTHROP
1299 Pennsylvania Avenue, N.W.                         SHAW PITTMAN LLP
Suite 700                                            1200 Seventeenth Street, N.W.
Washington, D.C. 20004                               Washington, D.C. 20036
(202) 842-7800                                       (202) 663-8000

*Counsel for Appellant*                              *Counsel for Appellant*
*CMG Media Corporation*                              *SGCI Holdings III LLC*

15

# CERTIFICATE OF SERVICE

I hereby certify that, on March 27, 2023, I served the foregoing notice of appeal on the Federal Communications Commission via email at litigationnotice@fcc.gov in accordance with 47 C.F.R. § 1.113(b). I further certify that I have caused the foregoing notice of appeal to be served by Federal Express overnight service and by electronic mail on parties to the proceedings before the Commission as follows:

**United Church of Christ Media Justice Ministry**
c/o Cheryl A. Leanza
100 Maryland Avenue, N.E.
Washington, D.C. 20002
cleanza@alhmail.com

**Common Cause**
c/o Yosef Gettachew
Jonathan Walter
805 15th Street N.W., Suite 800
Washington, D.C. 20005
ygetachew@commoncause.org
jwalter@commoncause.org

**NewsGuild-CWA and National Association of Broadcast Employees and Technicians-CWA**
c/o Andrew J. Schwartzman
4000 Cathedral Avenue, N.W.
Apt. 617B
Washington, D.C. 20016
andyschwartzman@gmail.com

c/o David Goodfriend
The Goodfriend Group
208 I Street, N.E.
Washington, D.C. 20002
david@dcgoodfriend.com

c/o Arthur Belendiuk
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W.
Suite 301
Washington, D.C. 20016
abelendiuk@fccworld.com

March 27, 2023                                  Respectfully submitted,

                                                   */s/ Miguel A. Estrada*
                                                   Miguel A. Estrada
                                                   GIBSON, DUNN & CRUTCHER LLP
                                                   1050 Connecticut Avenue, N.W.
                                                   Washington, D.C. 20036
                                                   (202) 955-8500
                                                   mestrada@gibsondunn.com