# EXHIBIT 10

**Case No. 24-1204**

Pantelis Michalopoulos
202 429 6494

**Steptoe**

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

February 6, 2023

*BY ELECTRONIC FILING*

Marlene Dortch
Secretary
Federal Communications Commission
45 L Street NE
Washington, DC 20554

> Re:   Applications to Transfer Control of TEGNA, Inc., to Standard General, L.P, MB Docket No. 22-162

Dear Ms. Dortch:

  DISH Network Corporation ("DISH") responds to the January 20, 2023 letter submitted by Cox Media Group ("Cox") [1] in the above captioned-proceeding. In its letter, Cox again asks the Commission to strike from the record the portion of a term sheet DISH received from Cox demonstrating that Cox sought to increase retransmission consent fees for TEGNA stations after consummation of the proposed transactions.[2] As proposed by Cox, those terms would have superseded existing agreements between TEGNA and DISH and provided windfall profits to Cox after consummation of the transactions. Indeed, DISH cited Cox's attempts "to negotiate for stations it does not yet own"[3] as a principal reason for the parties' failure to reach an agreement. That evidence is therefore directly relevant to the Commission's review of this transaction. DISH urges the Commission to deny Cox's request to strike this submission from

---

[1] Letter from Michael D. Basile, Counsel for Cox, to Marlene Dortch, FCC, MB Docket No. 22-162 (Jan. 20, 2023) ("Cox Jan. 20, 2023 Letter"). As with Cox's December 30, 2022 letter, portions of Cox's January 20 letter are redacted in the public version. DISH's outside counsel has requested access to Highly Confidential materials under the Protective Order in this proceeding. Cox and other applicants objected to this request. *See* Joint Objection to Disclosure of Confidential and Highly Confidential Information, MB Docket No. 22-162 (Jan. 3, 2023). DISH replied to those objections. *See* Letter from Pantelis Michalopoulos, Counsel for DISH, to Marlene Dortch, FCC, MB Docket No. 22-162 (Jan. 6, 2023). DISH can only reply to the public version of the Cox January 20 letter in light of Cox's unreasonable position that DISH's counsel cannot fully access Cox's response. DISH counsel's request should be granted.

[2] *See* Letter from Pantelis Michalopoulos, Counsel for DISH, to Marlene Dortch, FCC, MB Docket No. 22-162, Exhibit 1, at 3-4 (Dec. 28, 2022).

[3] Press Release, DISH Network Corp., *Cox Media Group Removes Local Channels From DISH TV Customers* (Nov. 28, 2022), https://dish.gcs-web.com/news-releases/news-release-details/cox-media-group-removes-local-channels-dish-tv-customers.

EXHIBIT 10 - Page 001

Marlene Dortch
February 6, 2023
Page 2

the record, and further reiterates the need for the conditions it proposed in its January 13, 2023 submission.[4]

Unlike Standard General, Cox has not proposed or otherwise assented to conditions preventing it from immediately increasing retransmission consent fees or imposing other terms through after-acquired station clauses.[5] And, despite its submission, Standard General's proposed conditions still do not obviate DISH and others' concerns regarding the transaction, such as an increased likelihood for blackouts, and the conditions are not bulletproof in their current form. But Cox's refusal to assent even to those conditions, combined with DISH's evidence of Cox seeking price increases for TEGNA's stations, reveals Cox's true motives.

The Commission should not ignore the applicants' apparent plan to orchestrate these transactions to achieve price increases and impose other unwanted terms. The relevant circumstances could not be more different than those at time of the Nexstar/Tribune merger: this transaction presents evidence of the applicants' calculating conduct (the gerrymandering of station transfers in an apparent effort to maximize fees), evidence that was absent in the case of the Nexstar transaction. A precedent distinguished based on changed facts is not a precedent overruled. Nor are these important distinctions inconsistent in any way with the additional one cited by ATVA—"commandeering" of a single station in an apparent effort to trigger an automatic price increase for 97 other stations.[6] Indeed, this is precisely one choice example of the pernicious orchestration that DISH has expressed concern about.

As for the applicants' attempt to achieve coterminous expirations, evidence available to the Commission confirms such efforts harm the public interest. DISH has shown that an existing blackout forces MVPDs to accede to higher-than-market rate demands for other companies' broadcast stations that come up for renewal during the blackout.[7] Coterminous agreements thus mean more stations at risk and higher consumer prices.

The applicants also erroneously suggest that DISH supports the notion of separate broadcast companies sharing information about their retransmission deals among themselves. Nothing could be further from the truth, as even the most casual review of DISH's comments would confirm. Information sharing is the problem, not the solution. If, as seems apparent, the applicants compared deals when negotiating with an eye to jettisoning the lower-priced ones, that

---

[4] Comments and Opposition of DISH Network Corp., MB Docket No. 22-162, at 6-8 (Jan. 13, 2023) ("DISH Jan. 13 Comments").

[5] *See* Letter from Soohyung Kim, Standard General, to Marlene Dortch, FCC, MB Docket No. 22-162 (Dec. 16, 2022).

[6] Letter from Michael Nilsson, ATVA Counsel, to Marlene Dortch, FCC, MB Docket No. 22-162, at 4 (Jan. 13, 2023).

[7] *See* Applications for Consent to Transfer Control of Tribune Media Company and Nexstar Media Group, Inc., Petition to Deny of DISH Network Corp., MB Docket No. 19-30 (Mar. 18, 2019) ("DISH Petition to Deny Nexstar/Tribune"); Reply of DISH Network Corp., MB Docket No. 19-30 (Apr. 9, 2019); Letter from Pantelis Michalopoulos, Counsel for DISH, to Marlene Dortch, FCC, MB Docket No. 19-30 (July 15, 2019), attaching Reply Declaration of William Zarakas and Jeremy Verlinda.

EXHIBIT 10 - Page 002

is reason enough to condition approval on stopping that practice in future negotiations.  Again, there is no inconsistency with ATVA's point that, post-transaction, the knowledge acquired by the applicants as a fruit of the transaction would be used as a sword to the detriment of the public unless appropriate conditions are imposed.

***Cox does not refute DISH's evidence of Cox's negotiating for TEGNA stations.***  Cox states that DISH "fails to show how the CMG Proposal could apply to stations owned by TEGNA," because "the express terms of that proposal state that it would apply only to stations currently owned by TEGNA if and when CMG acquires those stations."[8]  DISH of course acknowledges that Cox has not yet acquired the TEGNA stations at issue.  Cox's January 20 letter ignores the fact that the stations it plans to acquire from TEGNA are already subject to an asset purchase agreement.[9]  DISH is not "pretending" that Cox's proposal says anything other than what it says.[10]  DISH quoted the relevant section of the Cox term sheet verbatim.  In fact, Cox acknowledges DISH's observation that its proposal is "[u]nlike a standard after-acquired station clause,"[11] when it admits the proposal was indeed a "variation" on such clauses, and that it was not in fact "commonplace" or "routine."[12]  This "variation" is precisely the section where Cox (unusually) attempted to negotiate for stations it does not own.  Because Cox cannot refute the plain language of its own proposal, it again resorts to asking that it be stricken from the record.[13]  But the evidence is highly relevant to the Commission's public interest analysis, and provides all the more reason why Cox should not be singled out for more favorable treatment than Standard General in conditioning any approval of this transaction.

***Cox has not refuted DISH's evidence of Cox's intent to increases prices.***  Cox has not even attempted to refute the virtual certainty of it trying to hike prices upon consummation of the transactions.  The Applicants, for their part, have only responded to DISH and others' evidence of future price hikes with the meager statement that *Standard General* has waived its ability to hike retransmission consent fees for TEGNA stations.[14]  But since Cox has not made the same commitment, Cox is free to do what it has apparently intended from the start—raise prices upon consummation.

---

[8] Cox Jan. 20, 2023 Letter at 1.

[9] See Teton Merger Corp. and CMG Media Corp., Amended and Restated Asset Purchase Agreement (Mar. 10, 2022); Teton Parent Corp. and CMG Farnsworth Television Operating Co., LLC, Asset Purchase Agreement (Feb. 22, 2022).

[10] Cox Jan 20, 2023 Letter at 3.

[11] DISH Jan. 13 Comments at 10.

[12] Cox Jan. 20, 2023 Letter at 3, 4.

[13] *Id.* at 5.

[14] Applicants' Joint Reply Comments, MB Docket No. 22-162, at 2, 6-7 (Jan. 20, 2023) ("Applicants' Reply Comments").

EXHIBIT 10 - Page 003

Marlene Dortch
February 6, 2023
Page 4

Nor does Cox's aside that it recently reached retransmission consent agreements with other MVPDs refute Cox's intent to raise prices here.[15] Unlike the applicants, DISH is not aware of the terms that Cox reaches with other MVPDs. DISH invites Cox to submit the terms of any such agreements into the record (and if they are already in the record, withdraw its objection to allowing DISH outside counsel to examine them).

**_Evidence of Cox's intended price increases shows public interest harm._** Cox complains that its term sheet "could [not] possibly be relevant to any issue under consideration in this proceeding."[16] But the term sheet is of course highly relevant to the Commission's public interest determination. Among other things, the Commission assesses the potential for anticompetitive price increases as part of its review.[17] The Commission explained that "harm [from retransmission consent price increases] exists only where an increase is not the product of competitive marketplace considerations."[18] Here, such a result would be the product of Cox's artificial manipulation of retransmission consent clauses. Evidence of Cox's intent to do so is thus relevant to the Commission's review. Of course, there are different circumstances here than the Commission considered in _Nextstar_. The applicants' desire to artificially create coterminous expiration dates that increase the pressure on MVPDs is itself a public interest harm: DISH has also shown that an existing blackout forces DISH to accede to higher-than-market-rate demands for other companies' broadcast stations that come up for renewal during the blackout.[19] This means that coterminous agreements translate into greater pressure for price increases, and they also translate into the prospect that the distributor will have to succumb to these pressures or else face much more extensive blackouts.

**_DISH's proposal is consistent with ATVA._** Lastly, the Applicants contend DISH's proposal that the applicants be prevented from enforcing retransmission consent agreements to achieve higher retransmission consent prices or impose other terms as a result of the transactions

---

[15] _See_ Cox Jan. 20, 2023 Letter at 3.

[16] _Id._ at 4.

[17] _See, e.g_, _Application of Verizon Communications Inc. & American Movil, S.A.B. De C.V. for Consent to Transfer Control of International Section 214 Authorization_, Memorandum Opinion and Order, 36 FCC Rcd. 16994, 17006 ¶ 34 (2021) ("Horizontal transactions raise potential competitive concerns when the combined entity post-merger has the incentive and the ability, either unilaterally or in coordination with other service providers, to raise prices, lower quality, or otherwise harm competition in a relevant market."). _See also_ Letter from Chairwoman Rosenworcel to Senator Warren at 1 (Jan. 18, 2023) ("[T[he Media Bureau will carefully review the record and the supplemental information filings of the applicants to determine whether the transfer is consistent with the public interest under Section 310(d) of the Communications Act.").

[18] _Tribune Media Co. et al._, Memorandum Opinion and Order, 34 FCC Rcd. 8436, 8451 ¶ 29 (2019) (internal quotations omitted).

[19] DISH Petition to Deny Nexstar/Tribune at 7 ("If DISH has to renegotiate a contract with a broadcaster at a time when it is subject to a blackout of another broadcast group's stations, it is more likely to accede to some of that first broadcaster's demands to avoid a second blackout . . . an inability to retransmit a station in one market increases the price DISH is willing to pay for the right to retransmit a station in another market.").

EXHIBIT 10 - Page 004

Marlene Dortch
February 6, 2023
Page 5

"conflicts" with Altice's and the ATVA's theory of harm.[20] Not so. As Altice explained, "the harmful action is within the transaction itself: the after-the-fact commandeering of an after-acquired station clause by a party that did not negotiate it."[21] In other words, Standard General, by acquiring a single station from Cox, and 97 stations from TEGNA, will be able to apply the retransmission consent rates of the single Cox station to *all* of the TEGNA stations. The same is true of Cox's proposed one-way-ratchet price increases for the TEGNA stations it acquires. This maneuvering serves no purpose other than to raise prices and impose other anticompetitive terms on MVPDs. The applicants state that ATVA and Altice object to Standard General paying a rate it didn't negotiate for.[22] In reality, ATVA objects to Standard General instantly jacking up its profits. All of the third-party commandeering identified by Altice and ATVA, DISH's evidence that Cox will raise prices, and the changes in circumstances since *Nexstar* point in the same direction.[23] Further, it is not clear why Cox objects so strenuously to being included in the same conditions that Standard General itself already agreed to.

Nor is DISH's proposal contrary to ATVA's concern about information sharing among the applicants.[24] Cox is conflating information sharing during merger or acquisition negotiations with knowledge after the consummation of a merger or acquisition. The former is bad and should be prohibited. The latter is also bad and the applicants should be prevented from weaponizing their knowledge. Under DISH's proposal, Cox would be prohibited from enforcing a retransmission consent agreement between any applicant and an MVPD that would, by reason of any of the transactions that may be approved in *this* proceeding, result in the retransmission agreement applying to any station that is (immediately prior to the closing of such transaction) a party to another retransmission agreement with the MVPD, and which would result in a higher retransmission fee or more favorable terms for that station. There is nothing here inconsistent with ATVA's comments, which in relevant part focused on information acquired post-

---

[20] Applicants' Reply Comments at 11-12.

[21] Letter from Cristina Chou, Altice, to Marlene Dortch, FCC, MB Docket No. 22-162, at 2 (Oct. 20, 2022).

[22] Applicants' Reply Comments at 12 ("Altice and ATVA asserted that the sole reason the FCC could deviate in this proceeding. . . is because this proceeding would have involved Standard General enforcing a retransmission consent agreement assigned to it rather than one Standard General had itself negotiated.").

[23] The Applicants suggest that imposing merger conditions relating to retransmission consent agreements is "beyond the Commission's authority." Applicants' Joint Reply Comments at 12. That is false. The Commission made clear that it has authority to condition transactions to stop retransmission consent fee increases when such increases are "not the product of competitive marketplace considerations." *Tribune Order*, 34 FCC Rcd. at 8451 ¶ 29. If the Commission lacked authority over the terms of retransmission consent agreements, then the conditions already accepted by Standard General in this proceeding would be unenforceable.

[24] Applicants' Reply Comments at 13.

EXHIBIT 10 - Page 005

Marlene Dortch
February 6, 2023
Page 6

transaction by New Tegna, and proposed conditions to prevent misuse of that information.[25] DISH fully supports these conditions.

\* \* \*

    DISH presented evidence of Cox seeking to raise prices and impose other unfavorable terms on MVPDs upon consummation of this transaction. That evidence is relevant to the Commission's public interest analysis of the transactions, and at minimum warrants subjecting Cox to the same conditions already accepted by Standard General. The Commission should deny Cox's demand to strike DISH's filing from the record for this reason. Further, the Commission should impose the conditions previously proposed by DISH.

    Respectfully submitted,

    /s/ Pantelis Michalopoulos
    Pantelis Michalopoulos
    *Counsel to DISH Network Corporation*

---

[25] *See* Reply Comments of the American Television Alliance, MB Docket No. 22-162, at 11 (Aug. 1, 2022).

EXHIBIT 10 - Page 006