# EXHIBIT B

**Case No. 1:24-cv-1204-RC**



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

July 26, 2024

DISH Network Corp. & Charles Ergen
c/o Elyse D. Echtman
Steptoe LLP
1114 Avenue of the Americas
New York, NY 10036

**Re:  Rule 11 Motion for Sanctions,**
     *SGCI Holdings III LLC et al. v. FCC et al.*, **No. 1:24-cv-1204-RC (D.D.C.)**

Dear Ms. Echtman:

We have considered your proffered Rule 11 motion, which describes the lawsuit as "a rich man's manifestation of a temper tantrum" and our client as "an entitled entrepreneur." Mot. 1, 25. Ad hominem attacks cannot save your improper motion. The motion can only be understood as an attempt to intimidate or harass. It ignores settled law that Rule 11 is no substitute for a motion to dismiss. And at various points, the motion violates your duty of candor to the Court. If you proceed with filing, we will ask for our fees and costs incurred in defending against your "cavalier approach to sanctions motions," together with all other appropriate relief. *Jordan v. U.S. Dep't of Lab.*, 273 F. Supp. 3d 214, 246 (D.D.C. 2017) (Contreras, J.); *see* Fed. R. Civ. P. 11(c)(2) (allowing fees for "prevailing party").

We urge you to prevail upon your clients to end the Rule 11 threats now. Our profession condemns attempts "to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11, Advisory Comm. Notes to 1993 Amend.; *see also* D.C. Rules of Prof. Conduct 8.4(g). As for how to proceed, we already expected to amend the complaint after Defendants responded as the rules permit, Fed. R. Civ. P. 15(a)(1)(B),



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

given recent Supreme Court decisions and new facts. If you withdraw your improper Rule 11 motion, and all Defendants consent, we could file the amended complaint before Defendants respond. That would postpone Defendants' response deadline and afford you more time to put your improper Rule 11 arguments into a Rule 12 motion where they belong.

I.

A.

Rule 11 "should not be employed … to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11, Advisory Comm. Notes to 1993 Amend. "As many courts previously have admonished, 'a Rule 11 motion is not a proper substitute for a dispositive motion.'" *Colella v. Androus*, 2024 WL 1239697, at *7 (D.D.C. Mar. 22, 2024) (Contreras, J.) (collecting cases).

But your motion does just that. It is a mistitled Rule 12 challenge to the sufficiency of the complaint's factual allegations and legal theories. Sanctions motions are not the place for airing your First Amendment defenses or arguing that the complaint "fails to state a claim upon which relief may be granted against Defendants DISH and Ergen." Mot. 19-25. The motion previews where you "disagree on the strength of specific" allegations, "the inferences to be drawn from" such allegations, and "the application of the law to various facts"—all arguments that instead belong in your forthcoming motion to dismiss. *Colella*, 2024 WL 1239697, at *7. You cannot "convert a disagreement over the factual allegations and legal arguments in a plaintiff's complaint into a sanctions dispute." *Betz v. Glob. Telesourcing, LLC*, 2021 WL 5865384, at *4 (D.D.C. Dec. 10, 2021) (cleaned up).

Your extraordinary request for dismissal of the complaint as a sanction confirms that what you call a Rule 11 motion is merely a motion to dismiss. There is no basis for seeking dismissal under Rule 11. The full quote from

2

1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

the sole case you cite, Mot. 28, explains that "[d]ismissal is a legitimate sanction under Rule 11 *for serious misconduct when lesser sanctions would be ineffective or are unavailable.*" *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) (emphasis added) (citations omitted). Dismissal under Rule 11 "is reserved for the rare case involving extreme misbehavior by the offending party such as fraud, contempt, and willful bad faith." 5A Wright & Miller, *Federal Practice & Procedure* §1336.3 (4th ed.), Westlaw (database updated June 2024). Your motion asserts no such thing—just "fail[ure] to state a claim upon which relief may be granted," Mot. 21.

## B.

Your use of a Rule 11 motion for Rule 12 arguments itself implicates Rule 11. A Rule 11 motion "is not a weapon for intimidating or browbeating opposing counsel to refrain from filing a pleading that a lawyer disagrees with." *Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 538 (S.D. Ala. 2007). Courts have long denounced attempts to leverage Rule 11 as a "tactic of intimidation and harassment" or a "'hardball' litigation technique[]." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987). Attorneys who do so "invite retribution from courts which are far from enchanted with such abusive conduct." *Id.* Rule 11's mandate that lawyers "think twice before filing … applies with equal force when the filing includes a Rule 11 claim." *Brooks v. Rosebar* (*In re Rosebar*), 2014 WL 7403573, at *2 (Bankr. D.D.C. Dec. 29, 2014). In this Court, an attorney's "cavalier approach to sanctions motions could result in him being sanctioned himself." *Jordan*, 273 F. Supp. 3d at 246; *see Rosebar*, 2014 WL 7403573, at *3-4; *see also Simu v. Carvalho* (*In re Carvalho*), 598 B.R. 356, 364 n.7 (D.D.C. 2019) (cautioning counsel "that a frivolous Rule 11 sanction motion may itself be a violation of Rule 11").

And yet here, the timing of your motion can only be understood as an attempt to intimidate Plaintiffs into withdrawing claims against DISH and Mr. Ergen. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992) (instructing district court not to "tolerate turning the Rule 11 motion into a

3



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

method of intimidation" where defendants invoked it "in their very first filing"); Fed. R. Civ. P. 11(b)(1) (forbidding motions "presented for any improper purpose, such as to harass"). Your proffered motion comes at the infancy of this case, despite clear authority that claims about the Rule 11 bases for pleadings "are ordinarily determined at the end of litigation." *Betz*, 2021 WL 5865384, at *5; *see, e.g.*, *Colella*, 2024 WL 1239697, at *7 (denying Rule 11 motion challenging "legal and factual sufficiency of the counterclaim" with leave to renew "at a later point in time"); *accord* Fed. R. Civ. P. 11, Advisory Comm. Notes to 1983 Amend.; *Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 23 (1st Cir. 1999); 5A Wright & Miller §1337.1. Before then, "the court lacks a sufficient evidentiary basis from which to take the serious step of imposing sanctions." *Quick v. EduCap, Inc.*, 2019 WL 95566, at *2 (D.D.C. Jan. 3, 2019). If your intent is something other than to intimidate, then the proper course is to make a motion under Rule 12(b)(6) and consider whether you are justified in raising the Rule 11 specter if that motion were granted. 5A Wright & Miller §1336.3. *But cf. Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77, 99 (D.D.C. 2011) (declining to "award sanctions under Rule 11 simply because" the complaint "fails to state a claim for relief").

## II.

Your proffered motion does not establish any Rule 11 violation. Rule 11's "central purpose" is "to deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), where "a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim," *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 126 (D.D.C. 2013). Counsel must "conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). In assessing the reasonableness of that inquiry, courts consider "time pressures, complexity, feasibility of additional investigation, accessibility of information, knowledge, reliance on others, notice, and available resources." *Doe I v. Exxon Mobil Corp.*, 2021 WL 1910892, at *3 (D.D.C. May 12, 2021); *accord* Fed. R. Civ. P. 11, Advisory Comm. Notes to 1983 Amend.



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

Here, Plaintiffs have served a 120-page complaint after substantial investigation. The complaint details an unprecedented and well-publicized series of events at the FCC that drew criticism from current and former FCC commissioners,[1] former FCC officials,[2] members of Congress,[3] civil rights leaders and organizations,[4] and industry leaders.[5] Counsel conducted a lengthy independent investigation of those extraordinary events and applicable law. As you acknowledge, our firm is led by former Supreme Court clerks (though your motion miscounted how many). And it was our firm that litigated and prevailed in *Students for Fair Admissions v. President and Fellows of Harvard College*, 600 U.S. 181 (2023), and other notable civil rights suits, *see, e.g., Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765 (11th Cir. 2024).

## A.

The complaint's factual allegations about DISH and Mr. Ergen are not "utterly lacking in evidentiary support." *Contra* Mot. 18. Rule 11 requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The complaint satisfies this standard.

---

[1] *See* Compl. ¶¶207, 226 (Commissioners Carr and Simington); *id.* ¶208 (former FCC Commissioners Michael O'Rielly, Harold Furchtgott-Roth, and Mark Fowler); *see also* Michael O'Rielly, *FCC Shows Horrific Treatment of Standard General-Tegna Deal*, Next|TV (Apr. 5, 2023), https://perma.cc/Q8JH-PAZD.

[2] *See* Adonis Hoffman, Opinion, *Another liberal diversity lie: FCC Democrats won't give these minorities a fair hearing*, Fox News (Apr. 24, 2023), https://perma.cc/7XS4-BTS3; Frank Washington, *If the FCC Is Serious About Expanding Minority Media Ownership, It Would Approve Standard General's Acquisition of TEGNA*, DC Journal (Oct. 12, 2022), https://perma.cc/LJ7Y-YN79.

[3] *See* Compl. ¶¶220, 232, 243 (Sen. Ted Cruz and Rep. Kathy McMorris Rodgers).

[4] *See* Compl. ¶¶221-22 (New York NAACP President Hazel Dukes and Reverend Al Sharpton); *see also* AAJC, National Action Network, National Urban League, & UnidosUS Call on FCC to Vote on Standard General – TEGNA, EIN Presswire (Apr. 26, 2023), https://perma.cc/PGY6-Q2Y8.

[5] *See* Compl. ¶209 (National Association of Broadcasters).



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

Plaintiffs' complaint is based not on "speculation," *contra* Mot. 17, but on facts, evidence, and plausible inferences. You do not dispute that your clients were involved in the unprecedented killing of Standard General's acquisition of TEGNA. And sources confirmed that DISH and Mr. Ergen were involved. *See* Compl. ¶¶182, 186, 223, 269, 276. Plaintiffs' detailed complaint reflects counsel's more-than "reasonable" inquiry into those facts "under the circumstances," Fed. R. Civ. P. 11(b), including meticulous review of publicly available documents and accounts from those involved in the relevant administrative proceedings. Now it is for a trier of fact to decide whether that involvement was lawful.

And while your motion faults Plaintiffs for not including even more allegations, courts have long recognized that many facts required to plead a conspiracy "by their nature would be inaccessible to Plaintiff." *Mandelkorn v. Patrick*, 359 F. Supp. 692, 696 (D.D.C. 1973). Because "conspiracies are by their very nature secretive operations," they often are "proven by circumstantial, rather than direct, evidence." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 34 (D.D.C. 2008) ("[D]irect allegations of conspiracy are not always possible given the secret nature of conspiracies. Nor are direct allegations necessary.").

Here, the complaint spends several pages detailing circumstantial evidence that warrants an inference of conspiracy. *See, e.g., Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983) (explaining that "[t]he circumstances of the wrongdoing generally dictate what evidence is relevant or available in deciding whether an agreement exists," including "the relationship between the parties' acts, the time and place of their execution, and the duration of the joint activity"); *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488 n.12 (D.C. Cir. 1984) (defendants' acting "in contradiction of their own economic interests" and "motivation to enter into a conspiracy"). Your proffered motion ignores those allegations. It ignores that DISH, Mr. Ergen, and Mr. Allen shared a desire to kill the deal. Compl. ¶¶130, 245, 252, 275. It



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

ignores that they shared a longtime lobbyist in Mr. Goodfriend. *Id.* ¶¶24-25, 38, 130, 147-48. It ignores that DISH continued objecting even *after* Standard General gave DISH everything it could have wanted, waiving contractual clauses and alleviating any pricing concerns. *Id.* ¶¶178-79, 182, 185-86. Meanwhile, Mr. Allen's acquisitions never faced any such objections. *Id.* ¶¶95, 110-12. And while your motion seems intended to mislead the Court to believe that DISH and Mr. Goodfriend had no connection during the relevant time, Mot. 15, lobbying disclosures from that time say otherwise, *see, e.g.*, Emmer Consulting, Inc. on behalf of DISH Network LLC, Q4 2022 Lobbying Report (Jan. 24, 2023), https://perma.cc/TF2U-Y3SQ.

Your motion argues that "[t]here are no allegations that Defendants DISH or Ergen harbored any race-based animus against Plaintiffs." Mot. 12. This argument ignores allegations about co-conspirators' race-based rhetoric and past acts. *See* Compl. ¶¶138-42, 159, 252-53, 261, 324; *see also id.* ¶¶17-19, 255-260. And it ignores that "openly racial motives" held by members of a conspiracy are "imputed" to coconspirators. *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000). Upon entering the alleged conspiracy, DISH and Mr. Ergen became liable for acts of coconspirators in furtherance of the conspiracy. *See, e.g.*, *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 2007 WL 915237, at *2 (D.D.C. Mar. 27, 2007). That includes publicly filed documents with race-laden and xenophobic rhetoric—for example, an inexplicable reference to "increased tensions in the Taiwan Strait" as a reason to keep Mr. Kim and his company out of local news. Compl. ¶¶138-42, 159.

The complaint does not "distort," "twist[]," or "mischaracterize[]" those public filings. *Contra* Mot. 12-13, 18. The public record speaks for itself. Prominent voices understood them to target Mr. Kim for his Asian race. *See* Compl. ¶¶211-13; *see also* Mario H. Lopez, Opinion, *The FCC's unprecedented attempt to block diversity in media ownership*, Hill (Mar. 16, 2023), https://perma.cc/72JR-6YLM; Frank Washington, *If the FCC Is Serious About Expanding Minority Media Ownership, It Would Approve Standard General's Acquisition of TEGNA*, DC Journal (Oct. 12, 2022), https://perma.cc/LJ7Y-YN79;



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

Comment of the Korean American Association of Greater New York, *In re Tegna Inc.*, MB No. 22-162 (Mar. 21, 2023), https://perma.cc/P4GW-R6B4. And while your motion insists that references to foreign ownership were innocent statements about offshore funding sources, that assertion is (at most) an issue for the trier of fact and not a basis for a Rule 11 motion. As the complaint alleges, Cayman Islands and British Virgin Islands funding sources are common for major acquisitions. Compl. ¶¶74, 139. So where were the race-laden and xenophobic objections for past acquisitions with such funding sources? Objections to past deals nowhere refer to "shadowy foreign investors" or raise concerns about "non-citizens … influenc[ing] domestic elections." *Id.* ¶¶107, 140-42. Such different treatment of similarly situated applicants further evidences discriminatory intent. *See, e.g.*, *Pintro v. Rosenworcel*, 554 F. Supp. 3d 14, 24 (D.D.C. 2021); *Mapp v. District of Columbia*, 993 F. Supp. 2d 22, 25 (D.D.C. 2013).

Finally, that some of Plaintiffs' conspiracy allegations are made "on information and belief" does not violate Rule 11. *Contra* Mot. 12-15. The Rules plainly contemplate that pleadings based on information and belief are permissible. 2 *Moore's Federal Practice – Civil* §8.04[4], LexisNexis (database updated June 2024). Allegations based on "information and belief" are permissible where "the necessary information lies within the defendant's control" and the allegations are "accompanied by a statement of the facts upon which the allegations are based." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994). Thus, "making allegations based on information and belief is not necessarily fatal to a plaintiff's claims, particularly where … 'the belief is based on factual information that makes the inference of culpability plausible.'" *Kvech v. Holder*, 2011 WL 4369452, at *3 n.7 (D.D.C. Sept. 19, 2011). Conspiracy claims are no exception. *See, e.g.*, *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 957 (8th Cir. 2023); *Soo Park v. Thompson*, 851 F.3d 910, 916 n.3 (9th Cir. 2017).



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

## B.

You do not have a basis for asserting that the claims against DISH and Mr. Ergen are legally frivolous. *Contra* Mot. 19. Your insistence that Plaintiffs' claims are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), flouts your duty of candor.

## 1.

Your scattershot First Amendment assertions cite no "existing law" that "squarely foreclose[s] Plaintiffs' claims." *Quick*, 2019 WL 95566, at *2. While your motion argues that the objectors' "advocacy" is "immunized from liability" because it concerned "a matter of public interest," Mot. 21, the First Amendment does not immunize acts that violate laws prohibiting race discrimination. "[T]he Supreme Court has clearly held that the First Amendment does *not* protect the very act of discriminating on the basis of race." *Fearless Fund*, 103 F.4th at 777. "[T]he Constitution places no value on discrimination, and while invidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment it has never been accorded affirmative constitutional protections." *Runyon v. McCrary*, 427 U.S. 160, 176 (1976) (cleaned up).

Your motion also invokes the *Noerr-Pennington* antitrust doctrine, suggesting it shields DISH and Mr. Ergen from liability. Mot. 20. Your motion asserts that the doctrine's reach "extends beyond antitrust." *Id.* But even cursory legal research would have revealed why any plaintiff would argue that *Noerr-Pennington* does not extend to this case.

Plaintiffs assert no antitrust claims. Yet *Noerr-Pennington* is a "doctrine of antitrust law" that immunizes defendants "from antitrust liability." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555-56 (2014). And contrary to your motion's assertion that the doctrine extends beyond



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

antitrust, the D.C. Circuit "ha[s] never applied" it "to bar liability for common law torts." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1137 n.8 (D.C. Cir. 2015). The D.C. Circuit says the doctrine "rests ultimately upon a recognition that *the antitrust laws,* 'tailored as they are for the business world, are not at all appropriate for application in the political arena.'" *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 817 (D.C. Cir. 2001) (emphasis added). Likewise, the Supreme Court describes it as a "doctrine of antitrust immunity," *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.* (*PRE*), 508 U.S. 49, 51 (1993), that "protect[s] from antitrust liability," *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988). Your motion falls short of your duty of candor, declaring *Noerr-Pennington*'s application to be certain in this case when it is anything but. *E.g., Jefferson-11th St., LLC v. District of Columbia*, 2020 WL 3035038, at *7 (D.D.C. June 5, 2020) ("unclear whether *Noerr-Pennington* has any relevance" to tortious interference claim); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 110 n.34 (D.D.C. 2010) ("applicability in this jurisdiction with regards to common law torts remains ambiguous").

Worse, your motion fails even to mention the doctrine's well-settled "sham" exception. Again, the most cursory research would have revealed that *Noerr-Pennington* does not "cover activity that was not genuinely intended to influence governmental action." *Allied Tube*, 486 U.S. at 507 n.10. In other words, "while genuine petitioning is immune" from liability, "sham petitioning is not." *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 525-26 (2002). So when objections are "a mere sham to cover an attempt to interfere directly with the business relationships of a competitor," *Noerr-Pennington* does not apply. *PRE*, 508 U.S. at 51 (cleaned up). The "classic example" of the sham exception "is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)).



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

Your assertion that the complaint is frivolous cannot be reconciled with the sham exception, even assuming *Noerr-Pennington* applied here. The complaint alleges that objectors' filings were "objectively baseless" and used the FCC "*process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 60-61 (cleaned up); *see, e.g.,* Compl. ¶¶158, 252, 292-94, 349. For instance, objectors insisted on obtaining information about "alternative transactions considered" by TEGNA—*i.e.,* Mr. Allen's failed bid—even though federal law *prohibits* the FCC's consideration of other buyers. Compl. ¶¶153-58. And objectors complained about retransmission fees, *id*. ¶127, even though the FCC rebuked such objections to past deals because "the Commission is not the appropriate forum for addressing private contractual matters," *id*. ¶108 (quoting *In re Terrier Media Buyer, Inc.,* 34 FCC Rcd. 10554, 10566 (2019)); *see also id.* ¶¶111, 135 & n.61. DISH specifically continued to publicly oppose the transaction even after getting everything it could have wanted through Standard General's binding commitments. *Id.* ¶¶179, 182, 185-86. In short, Defendants opposed Plaintiffs' application every step of the way, disregarding the limits of the FCC's review, as part of their impermissible "strategy of delay." *United States v. AT&T*, 524 F. Supp. 1336, 1364 (D.D.C. 1981); *see also Primetime 24 Joint Venture v. NBC, Inc.,* 219 F.3d 92, 101 (2d Cir. 2000) (holding plaintiff pleaded sham exception where it alleged that defendants in a "coordinated scheme" filed "simultaneous and voluminous challenges" against plaintiff "without regard to whether the challenges had merit"). The First Amendment is no shield when Defendants impermissibly sought to "bar their competitors from meaningful access to adjudicatory tribunals and so to usurp that decisionmaking process." *Cal. Motor*, 404 U.S. at 512. That the objectors knew their objections were meritless under binding FCC precedent further evidences their impermissible motives. *FTC v. AbbVie Inc.*, 976 F.3d 327, 369-70 (3d Cir. 2020). And your motion's failure to address *Noerr-Pennington*'s limits raises serious questions about your duty of candor toward the Court.



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

2.

As the preceding discussion illustrates, your motion raises Rule 12 arguments that are not appropriate for a Rule 11 motion for sanctions. Rule 11 is not a vehicle for intimidating or harassing an adversary in the hopes of getting a better result on a motion to dismiss. And even if the Court were to dismiss some claims, despite the lengthy complaint and all the inferences owed to Plaintiffs, that alone would not warrant sanctions. *See, e.g., Cheeks*, 807 F. Supp. 2d at 99, *mot. for summary affirmance granted*, 2012 WL 3068449 (D.C. Cir. July 26, 2012); *Nat'l Cas. Ins. Co. v. Solomon*, 502 F. Supp. 3d 401, 410-11 (D.D.C. 2020) (Contreras, J.) (granting dispositive motions but denying sanctions where plaintiff's position was not "so devoid of reason as to be deemed frivolous").

C.

Your motion asserts without any basis that counsel filed the complaint only to harass. Mot. 25-26. For all the foregoing reasons, it was not filed for that purpose. Counsel had a good-faith basis in investigating and then filing a complaint regarding the unprecedented series of events at the FCC— events that drew substantial public attention, *supra* p.5 & nn.1-5. The failure of the TEGNA acquisition cost Mr. Kim roughly $200 million in transaction costs plus an $85 million hit in his ownership stake in TEGNA. Compl. ¶¶13-14. As for TEGNA's many shareholders, they lost approximately *$1.2 billion* when Defendants' plan to kill the deal culminated in the FCC's unheard-of Hearing Designation Order. *Id.* ¶13. It blinks reality to assert that there was not a good-faith basis for filing this complaint. Plaintiffs' complaint is "well grounded in fact," "warranted by existing law," and thus "cannot, as a matter of law, constitute harassment for purposes of rule 11." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 538 (5th Cir. 1990) (collecting cases); *see Gonzalez Ramos v. ADR Vantage, Inc.*, 2021 WL 4462411, at *2 (D.D.C. Sept. 29, 2021) ("The fact that Plaintiff's Complaint raised nonfrivolous claims is strong evidence that it was not filed for improper purposes."); *see also*



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

*Chandler v. Berlin*, 2020 WL 5593905, at *3 (D.D.C. Sept. 18, 2020) (observing that "prevailing in an action is no basis to impute improper motives for the filing of a complaint" and holding plaintiff's contentions "were a far cry from frivolous" given parties "vigorously debated" issues and plaintiff "advanced colorable (though ultimately unsuccessful) arguments").

\*       \*       \*

Your Rule 11 motion is meritless and itself implicates Rule 11. Should you file it, we will ask for fees, costs, and any other appropriate sanctions and relief for defending against it. You should withdraw your motion and let the parties litigate your dismissal arguments in the normal course, rather than in this harassing Rule 11 posture. We reiterate that if you withdraw your motion, and all Defendants consent, we could amend our complaint before Defendants respond. That will postpone motion-to-dismiss briefing and afford you more time to present your arguments properly in a Rule 12 motion.



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

Sincerely,

/s/ *Tyler R. Green*
Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 S. Main St., 5th Fl.
Salt Lake City UT 84101
tyler@consovoymccarthy.com

Jeffrey M. Harris
Taylor A.R. Meehan
Frank H. Chang
Daniel M. Vitagliano
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
jeff@consovoymccarthy.com
taylor@consovoymccarthy.com
frank@consovoymccarthy.com
dvitagliano@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

14