# EXHIBIT C

**Case No. 1:24-cv-1204-RC**



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

September 20, 2024

DISH Network Corp. & Charles Ergen
c/o Elyse D. Echtman
Steptoe LLP
1114 Avenue of the Americas
New York, NY 10036

**Re:  Rule 11 Motion for Sanctions,**
      *SGCI Holdings III LLC et al. v. FCC et al.*, **No. 1:24-cv-1204-RC (D.D.C.)**

Dear Ms. Echtman:

We have considered your second proffered Rule 11 motion, served August 30, which continues to describe this lawsuit as "a rich man's manifestation of a temper tantrum" and our client as "an entitled entrepreneur." Mot. 1, 35. Your motion characterizes the allegations in the amended complaint as "absurd," "outrageous," "outlandish," "scurrilous," and "wildly irresponsible." Mot. 2, 15, 17, 25. Ad hominem attacks and overwrought rhetoric cannot save your improper motion.

This marks your second attempt to intimidate and harass our client and our firm with Rule 11 threats. The timing and repetitious nature of your motions leave little room to doubt their improper purpose. You served your first motion the night before the July 4 holiday. Our July 26 response explained why your Rule 11 threats were procedurally improper, baseless, and fell short of your duty of candor. You served your second motion the night of August 30, the Friday of Labor Day weekend. This second motion shows little consideration for what we said in response to your first motion; it reasserts the same arguments, largely verbatim. We address those arguments—



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

again—and ask that you allow the parties to litigate this case in the normal course without the Rule 11 threats.

Our profession condemns attempts "to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11, Advisory Comm. Notes to 1993 Amend.; *see also* D.C. Rules of Prof. Conduct 8.4(g). This second motion, worse than the first, ignores settled law that Rule 11 is no substitute for a motion to dismiss. If you proceed with filing, we will ask for our fees and costs incurred in defending against your "cavalier approach to sanctions motions," together with all other appropriate sanctions and relief. *Jordan v. U.S. Dep't of Lab.*, 273 F. Supp. 3d 214, 246 (D.D.C. 2017) (Contreras, J.); *see* Fed. R. Civ. P. 11(c)(2) (allowing fees for "prevailing party").

I.

A.

As we already explained in July, Rule 11 "should not be employed … to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11, Advisory Comm. Notes to 1993 Amend. "As many courts previously have admonished, 'a Rule 11 motion is not a proper substitute for a dispositive motion.'" *Colella v. Androus*, 2024 WL 1239697, at *7 (D.D.C. Mar. 22, 2024) (Contreras, J.) (collecting cases); *accord Silverman v. Town of Riverhead*, 2008 WL 11449317, at *6 (E.D.N.Y. Sept. 11, 2008) (collecting authorities).

Your Rule 11 motion does just that. It is a mistitled Rule 12 challenge to the sufficiency of the amended complaint's factual allegations and legal theories. A Rule 11 motion is not the place for airing your First Amendment defenses or arguing that the amended complaint "fails to state a claim upon which relief may be granted against Defendants DISH and Ergen." Mot. 32-35. It is not the place for "disagree[ing] on the strength of specific"



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

allegations, "the inferences to be drawn from" such allegations, or "the application of the law to various facts." *Colella*, 2024 WL 1239697, at \*7. You cannot "convert a disagreement over the factual allegations and legal arguments in a plaintiff's complaint into a sanctions dispute." *Betz v. Glob. Telesourcing, LLC*, 2021 WL 5865384, at \*4 (D.D.C. Dec. 10, 2021) (cleaned up).

Your extraordinary request for dismissal of the amended complaint as a sanction confirms the impropriety of your motion. *See* Mot. 38. As we already explained in July, there is no basis for seeking dismissal under Rule 11. The full quote from the sole case you cite states that "[d]ismissal is a legitimate sanction under Rule 11 *for serious misconduct when lesser sanctions would be ineffective or are unavailable*." *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) (emphasis added) (citations omitted). Yet this second motion still only includes the partial quote, as if to mislead the Court to believe dismissal is a "legitimate sanction" for the Rule 11 violations you assert. It is not. Dismissal under Rule 11 "is reserved for the rare case involving extreme misbehavior by the offending party such as fraud, contempt, and willful bad faith." 5A Wright & Miller, *Federal Practice & Procedure* §1336.3 (4th ed.), Westlaw (database updated June 2024). Your motion asserts no such thing—still just that the amended complaint's allegations are not "plausible" and "fail[] to state a claim upon which relief may be granted." Mot. 32-33; *see Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463, 466 (S.D. Fla. 2020) (denying sanctions motion "pursuing …[dismissal] under the guise of a Rule 11 motion" and noting arguments that allegations are "implausible" are "properly addressed on a motion to dismiss").

Your pending Rule 12 motion to dismiss confirms the point. *See* MTD (Dkt. 55). It reiterates nearly every argument in your Rule 11 motion, most of which are copied verbatim. *Compare* Mot. 15-23, 25-27, 28-32, 32-35, *with* MTD 14-21, 30-33, 25-29, 33-36, *respectively*. That is where your mistitled Rule 11 arguments belong. *See Almeida*, 335 F.R.D. at 466 (denying Rule 11 motion where "a motion to dismiss ha[d] been filed that sets forth th[e] same contentions under Rule 12, where they belong"). Your renewed Rule 11 motion



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

is merely "another attempt to dispute the legal arguments … as to why" Plaintiffs' amended "[c]omplaint should be dismissed." *Ahuruonye v. U.S. Dep't of Interior*, 312 F. Supp. 3d 1, 26 (D.D.C. 2018) (denying sanctions motion).

B.

Your continued use of Rule 11 for Rule 12 arguments itself implicates Rule 11. By "us[ing] a Rule 11 motion to legally attack the substance of [Plaintiffs'] entire complaint" and "asking for a dismissal on the merits of [Plaintiffs'] complaint through a Rule 11 motion," you are "unreasonably multipl[ying] the proceedings in this case." *Bell v. Nat'l Credit Servs. Inc.*, 2020 WL 8832899, at *7 (W.D. Wash. Oct. 14, 2020) (describing such motion as "ill advised and reckless"). You "should know that Rule 11 is not the vehicle to obtain a judgment on the merits." *Id.* Indeed, "no reasonable attorney" would "misconstrue[] a Rule 11 Motion with … a motion to dismiss." *Goldwater Bank, N.A. v. Elizarov*, 2023 WL 4295255, at *4 (C.D. Cal. May 9, 2023). Yet you still do.

As our prior response explained, a Rule 11 motion "is not a weapon for intimidating or browbeating opposing counsel to refrain from filing a pleading that a lawyer disagrees with." *Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 538 (S.D. Ala. 2007). Courts have long denounced attempts to leverage Rule 11 as a "tactic of intimidation and harassment" or a "'hardball' litigation technique[]." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987). Attorneys who do so "invite retribution from courts which are far from enchanted with such abusive conduct." *Id.* Rule 11's mandate that lawyers "think twice before filing … applies with equal force when the filing includes a Rule 11 claim." *Brooks v. Rosebar* (*In re Rosebar*), 2014 WL 7403573, at *2 (Bankr. D.D.C. Dec. 29, 2014); *see* Fed. R. Civ. P. 11, Advisory Comm. Notes to 1993 Amend. (noting a Rule 11 motion "is itself subject to the requirements of the rule and can lead to sanctions"). In this Court, an attorney's "cavalier approach to sanctions motions could result in him being sanctioned



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

himself." *Jordan*, 273 F. Supp. 3d at 246; *see Rosebar*, 2014 WL 7403573, at *3-4; *see also Simu v. Carvalho* (*In re Carvalho*), 598 B.R. 356, 364 n.7 (D.D.C. 2019) (cautioning counsel "that a frivolous Rule 11 sanction motion may itself be a violation of Rule 11"); *Ahuruonye*, 312 F. Supp. 3d at 26 n.22 (same).

Nor is a Rule 11 motion a "combative tool[]" to be used "in hopes of securing a strategic advantage." *Bartronics*, 245 F.R.D. at 538. But here, your motion is seemingly timed to increase the chances that the Court dismisses DISH and Mr. Ergen in response to your pending motion to dismiss, or to intimidate Plaintiffs to do so first. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992) (instructing district court not to "tolerate turning the Rule 11 motion into a method of intimidation" where defendants invoked Rule 11 "in their very first filing"); *see also* Fed. R. Civ. P. 11(b)(1) (forbidding motions "presented for any improper purpose, such as to harass"). You have again ignored that claims about the Rule 11 bases for pleadings "are ordinarily determined at the *end* of litigation." *Betz*, 2021 WL 5865384, at *5 (emphasis added); *see, e.g.*, *Colella*, 2024 WL 1239697, at *7 (denying Rule 11 motion challenging "legal and factual sufficiency of the counterclaim" with leave to renew "at a later point in time"); *accord* Fed. R. Civ. P. 11, Advisory Comm. Notes to 1983 Amend.; *Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 23 (1st Cir. 1999); 5A Wright & Miller §1337.1. Before then, "the court lacks a sufficient evidentiary basis from which to take the serious step of imposing sanctions." *Quick v. EduCap, Inc.*, 2019 WL 95566, at *2 (D.D.C. Jan. 3, 2019); *see Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003) (reversing sanctions based on complaint and emphasizing that "[at] the pleading stage … ordinarily there is little or no evidence before the court at all, and such facts as are alleged, must be interpreted in [plaintiff's] favor"). If your intent were something other than to obtain a strategic advantage or to intimidate, then you would await resolution of your pending Rule 12 motion to dismiss to consider whether you are justified in raising the Rule 11 specter if that motion were granted. 5A Wright & Miller §1336.3. *But cf. Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77, 99 (D.D.C. 2011) (declining to



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

"award sanctions under Rule 11 simply because" the complaint "fails to state a claim for relief"), *mot. for summary affirmance granted*, 2012 WL 3068449 (D.C. Cir. July 26, 2012). Instead, you made the puzzling decision "to hurl Rule 11 accusations" from the moment this case began. *Bartonics*, 245 F.R.D. at 538.

## II.

Your motion does not establish any Rule 11 violation. Rule 11's "central purpose" is "to deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), where "a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim," *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 126 (D.D.C. 2013). Counsel must "conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). In assessing the reasonableness of that inquiry, courts consider "time pressures, complexity, feasibility of additional investigation, accessibility of information, knowledge, reliance on others, notice, and available resources." *Doe I v. Exxon Mobil Corp.*, 2021 WL 1910892, at *3 (D.D.C. May 12, 2021); *accord* Fed. R. Civ. P. 11, Advisory Comm. Notes to 1983 Amend.

Here, Plaintiffs have served a 140-page amended complaint after substantial investigation. The amended complaint details an unprecedented and well-publicized series of events at the FCC that drew criticism from current and former FCC commissioners,[1] former FCC officials,[2] members of Congress,[3] civil rights leaders and organizations,[4] and industry leaders,[5] among

[1] *See* Am. Compl. ¶¶231, 252, 307 (Commissioners Carr and Simington); *id.* ¶232 (former Commissioners Michael O'Rielly, Harold Furchtgott-Roth, and Mark Fowler).

[2] *See* Am. Compl. ¶155 (former deputy chief of FCC Broadcast Bureau Frank Washington); *id.* ¶238 (former deputy chief of FCC Media Bureau Adonis Hoffman).

[3] *See* Am. Compl. ¶¶246, 258, 269 (Sen. Ted Cruz and Rep. Kathy McMorris Rodgers).

[4] *See* Am. Compl. ¶235 (president of New York NAACP Hazel Dukes); *id.* ¶236 (Reverend Al Sharpton).

[5] *See* Am. Compl. ¶233 (National Association of Broadcasters).



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

others.[6] Counsel conducted a lengthy independent investigation of those extraordinary events and applicable law. As you acknowledge, our firm is led by former Supreme Court clerks, and it was our firm that litigated and prevailed in *Students for Fair Admissions v. President and Fellows of Harvard College*, 600 U.S. 181 (2023), as well as other notable civil rights cases, *see, e.g.*, *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765 (11th Cir. 2024).

### A.

The amended complaint's factual allegations about DISH and Mr. Ergen are not "utterly lacking in evidentiary support." *Contra* Mot. 27. Rule 11 requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The amended complaint satisfies this standard.

As we already explained in July, the amended complaint is not based on "speculation." *Contra* Mot. 25. The amended complaint describes well-publicized and unprecedented events at the FCC, derailing an $8 billion merger. Your motion does not dispute that your clients were involved. *See* Am. Compl. ¶¶204, 208, 249, 297, 306. It does not dispute the amended complaint's added allegations that Mr. Ergen met personally with Chairwoman Rosenworcel at critical times—right when the license-transfer application was publicly filed and right before the FCC issued its pocket-veto. *See id.* ¶¶127, 137, 211. Instead, your motion asks everyone to believe that Mr. Ergen was meeting the Chairwoman about something else despite the all-too-coincidental timing, ignores more than 100 pages of other allegations (*infra* pp.8-11), and otherwise asks for inferences drawn in Defendants' favor. *Contra Tahfs*, 316 F.3d at 594. That is not even the stuff of a motion to dismiss,

---

[6] *See* Am. Compl. ¶237 (senior advisor to Democratic National Committee Cedric Richmond); *id.* ¶¶153, 239 (president of Hispanic Leadership Fund Mario Lopez); *id.* ¶154 (leaders of Korean American associations).



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

let alone sanctions threats. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024) (acknowledging "discovery in this case might show … that certain actions should be understood differently in light of newly disclosed evidence" but at the motion-to-dismiss stage, "the Court must assume the well-pleaded factual allegations in the complaint are true" and reversing Second Circuit for failing to consider defendant's letters and press release "against the backdrop of other allegations in the complaint"); *Doe v. Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d 176, 216 (D.D.C. 2022). Plaintiffs' detailed amended complaint reflects counsel's more-than-"reasonable" inquiry into those facts "under the circumstances," Fed. R. Civ. P. 11(b), including meticulous review of publicly available documents and accounts from those involved in the relevant administrative proceedings. Now it is for a trier of fact to decide whether that involvement was lawful.

As we already explained, while your motion faults Plaintiffs for not including even more allegations, courts have long recognized that many facts required to plead a conspiracy "by their nature would be inaccessible to Plaintiff." *Mandelkorn v. Patrick*, 359 F. Supp. 692, 696 (D.D.C. 1973). Because "conspiracies are by their very nature secretive operations," they often are "proven by circumstantial, rather than direct, evidence." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 34 (D.D.C. 2008) ("[D]irect allegations of conspiracy are not always possible given the secret nature of conspiracies. Nor are direct allegations necessary."). Indeed, "in most civil conspiracy cases" courts must "infer an agreement from indirect evidence." *Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983); *accord Freeman v. Giuliani*, 2022 WL 16551323, at *10-11 (D.D.C. Oct. 31, 2022). Your renewed motion ignores this established precedent.

Here, the amended complaint details circumstantial evidence that warrants an inference of conspiracy. *See, e.g.*, *Halberstam*, 705 F.2d at 486 (explaining that "[t]he circumstances of the wrongdoing generally dictate what evidence is relevant or available in deciding whether an agreement exists,"



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

including "the relationship between the parties' acts, the time and place of their execution, and the duration of the joint activity"); *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488 n.12 (D.C. Cir. 1984) (defendants' acting "in contradiction of their own economic interests" and "motivation to enter into a conspiracy"). Your motion would require the Court to ignore that evidence. Tellingly, your motion scarcely acknowledges the most obvious explanation for the FCC's unprecedented derailment: Byron Allen, his public statements that he was still "in the fight" for TEGNA, his private attempt to get a piece of TEGNA, and his history exploiting racial differences for commercial gain. *See* Am. Compl. ¶¶17-19, 22, 60-62, 128, 133, 172, 254, 264, 271-89. Your motion downplays that lobbyist David Goodfriend represented both DISH and Mr. Allen during the relevant time, Mot. 26; *see* Am. Compl. ¶¶24-25, 38, 138, 158-60, and it ignores allegations about Mr. Goodfriend's involvement throughout the FCC proceedings, *see* Am. Compl. ¶¶129, 137, 162-67, 171, 174, 187, 192, 202-03, 208, 248, 268, 290-98. It ignores that the second of Mr. Ergen's meetings with Chairwoman Rosenworcel was all-too-coincidentally the Monday after a Friday event hosted by Mr. Allen for prominent Democratic politicians as the clock for FCC approval wound down. *Id.* ¶¶127, 137, 210-11. It ignores that Mr. Allen's acquisitions never faced objections like those levied here. Am. Compl. ¶¶98, 113-15, 277. It ignores that DISH, Mr. Ergen, and Mr. Allen shared a desire to kill the deal. *Id.* ¶¶138, 271, 278, 304. It ignores that objections conflicted with straw objectors' own professed interests like diversity in ownership, protecting jobs, and consumer pricing. *Id.* ¶¶136, 138-39, 141-42, 147-48. It ignores that DISH continued objecting even *after* it got everything it could have wanted from Standard General, which waived contractual clauses and alleviated any pricing concerns. *Id.* ¶¶195-97, 204, 207-08, 249, 303. What your motion calls a "false narrative," Mot. 1, was one lambasted in real time by members of Congress, former FCC commissioners, and media outlets, Am. Compl. ¶¶179 & n.10, 210 & n.137, 232 & n.145, 246, 258, 269, 276 & n.200.



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

Your motion argues that "[t]here are no genuine allegations that Defendants DISH or Ergen harbored any race-based animus against Plaintiffs," and that "Plaintiffs were responsible for injecting race as an issue in the FCC proceedings." Mot. 7, 16. These again are motion-to-dismiss arguments. As a matter of law, your motion ignores that "openly racial motives" held by members of a conspiracy can be "imputed" to coconspirators. *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000); *cf. Lagayan v. Odeh*, 199 F. Supp. 3d 21, 31-32 (D.D.C. 2016) (recognizing that statements can "be imputed" to coconspirator defendants "for the purpose of establishing *their* racial animus"). As a matter of fact, your motion ignores the amended complaint's allegations about coconspirators' race-based rhetoric and past acts. *See* Am. Compl. ¶¶147-55, 174, 278-79, 288, 353; *see also id.* ¶¶17-19, 282-287. Upon entering the alleged conspiracy, DISH and Mr. Ergen became liable for acts of coconspirators in furtherance of the conspiracy. *See, e.g., United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 2007 WL 915237, at *2 (D.D.C. Mar. 27, 2007). That includes publicly filed documents with race-laden and xenophobic rhetoric—for example, an inexplicable reference to "increased tensions in the Taiwan Strait" as a reason to keep Mr. Kim and his company out of local news. Am. Compl. ¶¶19, 147-51, 174. Your motion does not even address these issues. And your invocation of *Students for Fair Admissions*, 600 U.S. 181, shows your failure to read the amended complaint for what it says. *See* Mot. 8, 20. Mr. Kim did not "inject[]" race into the proceedings, *contra* Mot. 7; longstanding FCC policy makes race a relevant public-interest criterion, Am. Compl. ¶¶104-07. Nor was Mr. Kim asking for "racial preferences at the FCC." Mot. 20. He was asking not to have his race used *against* him with pernicious stereotypes—like presumptuous statements that he was not "barred by his race" in becoming a successful businessman or that his acquiring TEGNA would "not promote ownership diversity as it is understood by the public interest and civil rights community, and by commission policy." Am. Compl. ¶147.



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

As we already explained, the amended complaint does not "distort," "twist[]," or "mischaracterize[]" cited public filings. *Contra* Mot. 18-21, 25-26. The public record speaks for itself. Prominent voices, including president of the New York NAACP Hazel Dukes, Rev. Al Sharpton, and former chair of the Congressional Black Caucus Cedric Richmond, among others, understood the FCC filings to target Mr. Kim for his Asian race. *See* Am. Compl. ¶¶152-55, 235-39. And while your motion insists that references to foreign ownership were innocent statements about offshore funding sources, that dubious assertion will not even satisfy Rule 12, let alone Rule 11. As the amended complaint alleges, Cayman Islands and British Virgin Islands funding sources are common for major acquisitions given their obvious tax advantages. *Id.* ¶¶71, 74, 76-77, 148; *see also id.* ¶77 (showing FCC has said itself that expanded access to capital is important for its stated diversity goals). So where were the race-laden and xenophobic objections for past acquisitions with these common funding sources? Objections to past deals nowhere refer to "shadowy foreign investors" or raise concerns about "non-citizens … influenc[ing] domestic elections." *Id.* ¶¶110, 149-51. Such different treatment of similarly situated applicants further evidences discriminatory intent. *See, e.g., Pintro v. Rosenworcel*, 554 F. Supp. 3d 14, 24 (D.D.C. 2021); *Mapp v. District of Columbia*, 993 F. Supp. 2d 22, 25 (D.D.C. 2013).

Finally, as we already explained in July, that some of Plaintiffs' conspiracy allegations are made "on information and belief" does not violate Rule 11. *Contra* Mot. 21-22, 26. Rules 8 and 11 plainly contemplate that pleadings based on information and belief are permissible. 2 *Moore's Federal Practice – Civil* §8.04[4], LexisNexis (database updated June 2024). Allegations based on "information and belief" are permissible where "the necessary information lies within the defendant's control" and the allegations are "accompanied by a statement of the facts upon which the allegations are based." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994). Thus, "making allegations based on information and belief is not necessarily fatal to a plaintiff's claims, particularly where … 'the belief is based on factual



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

information that makes the inference of culpability plausible.'" *Kvech v. Holder*, 2011 WL 4369452, at *3 n.7 (D.D.C. Sept. 19, 2011). Conspiracy claims are no exception. *See, e.g.*, *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 957 (8th Cir. 2023); *Soo Park v. Thompson*, 851 F.3d 910, 916 n.3 (9th Cir. 2017). Once again, you ignore this caselaw.

B.

There is no basis for asserting that the claims against DISH and Mr. Ergen are legally frivolous. *Contra* Mot. 27. We already explained why Plaintiffs' claims are amply "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Your second motion at least acknowledges caselaw omitted from your first, but it still does not come close to establishing a violation of Rule 11(b)(2).

1.

Your scattershot First Amendment assertions cite "no 'existing law'" that "squarely foreclose[s] Plaintiffs' claims." *Quick*, 2019 WL 95566, at *2. Your renewed motion maintains that Defendants' "speech" and "advocacy" concerned "a matter of public interest" and therefore "cannot serve as a basis for any statutory or tort liability." Mot. 27-28. But the amended complaint alleges DISH and Mr. Ergen's *acts* violated federal and state law. *E.g.*, 42 U.S.C. §§1985(3), 1986. As for other Defendants' acts, even if taking the form of public or private speech, "the Supreme Court has clearly held that the First Amendment does *not* protect the very act of discriminating on the basis of race." *Fearless Fund*, 103 F.4th at 777. "[T]he Constitution places no value on discrimination, and while invidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment it has never been accorded affirmative constitutional protections." *Runyon v. McCrary*, 427 U.S. 160, 176 (1976) (cleaned up). The First Amendment does not immunize *conduct* that violates laws prohibiting race



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

discrimination or constitutes common-law torts. *See, e.g.*, *Fearless Fund*, 103 F.4th at 777-79; *Jews for Jesus, Inc. v. Jewish Cmty. Rels. Council of N.Y., Inc.*, 968 F.2d 286, 295-96 (2d Cir. 1992) (rejecting First Amendment defense to §1985(3) and tortious interference claims because the statute is "plainly aimed at conduct, *i.e.*, discrimination, not speech" and the tort "is directed against conduct, not speech"); *see also, e.g.*, *Spence v. Daily News*, 2001 WL 121938, at *3 (S.D.N.Y. Feb. 13, 2001) ("The First Amendment does not, therefore, prevent courts from enforcing statutes, such as Section 1981, that prohibit discrimination."); *A.H.D.C. v. City of Fresno*, 2000 WL 35810722, at *4 (E.D. Cal. Aug. 31, 2000) ("Unlawfully discriminatory conduct carried out by speech activities is not immunized by the First Amendment.").

Your renewed motion also invokes the *Noerr-Pennington* antitrust doctrine, suggesting it so clearly shields DISH and Mr. Ergen from liability that the amended complaint violates Rule 11. Mot. 28-30. It does not, as we already explained. Your motion asserts that the doctrine's "reach extend[s] beyond antitrust" to "civil rights claims," collecting decisions of district courts and other circuit courts. *Id.* But no decision *in this Circuit* or others forecloses Plaintiffs from arguing that *Noerr-Pennington* does not apply here.

*Noerr-Pennington* is a "doctrine of antitrust law" that immunizes defendants "from antitrust liability." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555-56 (2014). And Plaintiffs here assert no antitrust claims. As our prior response observed, the D.C. Circuit "ha[s] never applied" it "to bar liability for common law torts." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1137 n.8 (D.C. Cir. 2015). The D.C. Circuit says the doctrine "rests ultimately upon a recognition that *the antitrust laws*, 'tailored as they are for the business world, are not at all appropriate for application in the political arena.'" *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 817 (D.C. Cir. 2001) (emphasis added). Likewise, the Supreme Court describes *Noerr-Pennington* as a "doctrine of antitrust immunity," *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.* (*PRE*), 508 U.S. 49, 51 (1993), that "protect[s] from antitrust liability," *Allied Tube & Conduit Corp. v. Indian*



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

*Head, Inc.*, 486 U.S. 492, 499 (1988). Accordingly, it is "unclear whether *Noerr-Pennington* has any relevance" to this case. *Jefferson-11th St., LLC v. District of Columbia*, 2020 WL 3035038, at \*7 (D.D.C. June 5, 2020); *see also Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 109 n.34 (D.D.C. 2010) ("applicability in this jurisdiction with regards to common law torts remains ambiguous"). That lack of "preclusive authority" alone precludes Rule 11 sanctions. *Burns v. George Basilikas Tr.*, 599 F.3d 673, 677 (D.C. Cir. 2010); *see also, e.g., Kim v. Kimm*, 884 F.3d 98, 106-07 (2d Cir. 2018) (affirming denial of Rule 11 motion given lack of "binding precedent in this Circuit").

Unlike your first motion, your second motion at least acknowledges the doctrine's well-settled "sham" exception. *Noerr-Pennington* does not "cover activity that was not genuinely intended to influence governmental action." *Allied Tube*, 486 U.S. at 507 n.10. In other words, "while genuine petitioning is immune" from liability, "sham petitioning is not." *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 525-26 (2002). So when objections are "a mere sham to cover an attempt to interfere directly with the business relationships of a competitor," *Noerr-Pennington* does not apply. *PRE*, 508 U.S. at 51 (cleaned up). The "classic example" of the sham exception "is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)).

Your assertion that the amended complaint is frivolous cannot be reconciled with the sham exception, even assuming *Noerr-Pennington* applies. The amended complaint alleges that objectors' filings were "objectively baseless" and used the FCC "*process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 60-61 (cleaned up); *see, e.g.,* Am. Compl. ¶¶173, 278, 321-23, 378. For instance, objectors insisted on obtaining information about "alternative transactions considered" by TE-GNA—*i.e.,* Mr. Allen's failed bid—even though federal law *prohibits* the FCC's consideration of other buyers. Am. Compl. ¶¶130, 168-73. And

14



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

objectors complained about retransmission fees, *id*. ¶135, even though the FCC rebuked such objections to past deals because "the Commission is not the appropriate forum for addressing private contractual matters," *id.* ¶111 (quoting *In re Terrier Media Buyer, Inc.*, 34 FCC Rcd. 10554, 10566 (2019)); *see also id.* ¶¶98 & n.24, 114, 143 & n.75. DISH specifically continued to publicly oppose the transaction even after getting everything it could have wanted from Standard General through Standard General's binding commitments. *Id.* ¶¶195-97, 204, 207-08, 249, 303. In short, Defendants opposed Plaintiffs' application every step of the way, disregarding the limits of the FCC's review, as part of their impermissible "strategy of delay." *United States v. AT&T*, 524 F. Supp. 1336, 1364 (D.D.C. 1981); *see also Primetime 24 Joint Venture v. NBC, Inc.*, 219 F.3d 92, 101 (2d Cir. 2000) (holding plaintiff pleaded sham exception where it alleged that defendants in a "coordinated scheme" filed "simultaneous and voluminous challenges" against plaintiff "without regard to whether the challenges had merit"). The First Amendment is no shield when Defendants impermissibly sought to "bar their competitors from meaningful access to adjudicatory tribunals and so to usurp that decisionmaking process." *Cal. Motor*, 404 U.S. at 512. That the objectors knew their objections were meritless under binding FCC precedent further evidences their impermissible motives. *FTC v. AbbVie Inc.*, 976 F.3d 327, 369-70 (3d Cir. 2020).

Your motion is also mistaken about the Hearing Designation Order, the fleeting D.C. Circuit proceeding, and the notion that these events insulate your clients from liability. *Contra* Mot. 30. Just the opposite—the HDO exemplifies that the sham exception applies. It did not decide Standard General's license-transfer applications; it was a pocket-veto. *See* Am. Compl. ¶¶225, 227, 308, 391. And, omitted from your motion, the D.C. Circuit stayed out because there was *no* final "resolution by the full Commission." *Id.* ¶245; Order, *SGCI Holdings III LLC v. FCC*, No. 23-1083 (D.C. Cir. Apr. 3, 2023) (per curiam) (quoting *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (per curiam)). The HDO was the culmination of Defendants' delay-delay-



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

delay strategy and in no way insulates Defendants from the application of *Noerr-Pennington*'s sham exception. *See Israel v. Baxter Labs., Inc.*, 466 F.2d 272, 274, 279-80 (D.C. Cir. 1972). Nor did the D.C. Circuit ever "reject[] Plaintiffs' assertion that the HDO was a sham." *Contra* Mot. 30. That issue was not before the D.C. Circuit. *See, e.g.*, Mot. Exs. 14-15.

2.

As the preceding discussion illustrates, your motion consists entirely of Rule 12 arguments that are not appropriate for a Rule 11 motion for sanctions. Because all your Rule 11 arguments are duplicated in your pending motion to dismiss, Plaintiffs will address any remaining arguments in their opposition to that motion.

As we already explained in July, Rule 11 is not a vehicle for intimidating or harassing an adversary in the hopes of getting a better result on a motion to dismiss. And even if the Court were to dismiss some claims, despite the lengthy amended complaint and all the inferences owed to Plaintiffs, that alone would not warrant sanctions. *See, e.g.*, *Cheeks*, 807 F. Supp. 2d at 99; *Nat'l Cas. Ins. Co. v. Solomon*, 502 F. Supp. 3d 401, 410-11 (D.D.C. 2020) (Contreras, J.) (granting dispositive motions but denying sanctions where plaintiff's position was not "so devoid of reason as to be deemed frivolous").

C.

Your renewed motion maintains without any basis that counsel filed the amended complaint only to harass. Mot. 35-36. For all the foregoing reasons, it was not filed for that purpose. Counsel had a good-faith basis in investigating and then filing this lawsuit regarding the unprecedented series of events at the FCC—events that drew substantial public attention, *supra* pp.6-7 & nn.1-6. The failure of the TEGNA acquisition cost Mr. Kim roughly $200 million in transaction costs plus an $85 million hit in his ownership stake in TEGNA. Am. Compl. ¶¶13-14. As for TEGNA's many shareholders,

16



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

they lost approximately *$1.2 billion* when Defendants' plan to kill the deal culminated in the FCC's unheard-of HDO. *Id.* ¶13. It blinks reality to assert that there was not a good-faith basis for filing the amended complaint. Plaintiffs' amended complaint is "well grounded in fact," "warranted by existing law," and thus "cannot, as a matter of law, constitute harassment for purposes of rule 11." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 538 (5th Cir. 1990) (collecting cases); *see Gonzalez Ramos v. ADR Vantage, Inc.*, 2021 WL 4462411, at *2 (D.D.C. Sept. 29, 2021) ("The fact that Plaintiff's Complaint raised nonfrivolous claims is strong evidence that it was not filed for improper purposes."); *see also Chandler v. Berlin*, 2020 WL 5593905, at *3 (D.D.C. Sept. 18, 2020) (observing that "prevailing in an action is no basis to impute improper motives for the filing of a complaint" and holding plaintiff's contentions "were a far cry from frivolous" given parties "vigorously debated" issues and plaintiff "advanced colorable (though ultimately unsuccessful) arguments").

\*        \*        \*

Your Rule 11 motion is meritless and itself implicates Rule 11 as an improper attempt to intimidate and harass at the infancy of this case. Should you file it, we will ask for fees, costs, and any other appropriate sanctions and relief for defending against it. You should withdraw your motion and let the parties litigate your dismissal arguments presented in your pending motion to dismiss, rather than in this harassing Rule 11 posture.



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

Sincerely,

/s/ Tyler R. Green

Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 S. Main St., 5th Fl.
Salt Lake City UT 84101
tyler@consovoymccarthy.com

Jeffrey M. Harris
Taylor A.R. Meehan
Frank H. Chang
Daniel M. Vitagliano
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
jeff@consovoymccarthy.com
taylor@consovoymccarthy.com
frank@consovoymccarthy.com
dvitagliano@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com