## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SGCI HOLDINGS III LLC AND SOOHYUNG KIM,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>FEDERAL COMMUNICATIONS COMMISSION, et al.,<br><br>　　　　　　　Defendants. | Case No. 24-1204-RC |

## REPLY IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS BY DEFENDANTS DISH NETWORK CORPORATION AND CHARLES ERGEN

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.    ARGUMENT ................................................................................................ 2

    A.    DISH and Ergen's Rule 11 Motion is Procedurally Proper and May be Granted Now.................................................................................................. 2

    B.    Plaintiffs' Factually Baseless and Legally Frivolous Claims Violate Rule 11 ....... 6

        1.    The Key "Fact" Allegations in the Amended Complaint Have No Evidentiary Basis ................................................................................ 6

            a.    The FCC Record Belies Plaintiffs' "Racial Animus" Claims ....... 8

            b.    Plaintiffs Lack any Evidence of a Race-Based Conspiracy.......... 10

        2.    Plaintiffs' Claims Are Barred by Existing Law ........................................ 11

            a.    Binding Supreme Court First Amendment Precedent Forecloses Plaintiffs' Claims ................................................................... 11

            b.    Plaintiffs Otherwise Cannot Plead the Requisite Elements of Their Causes of Action Against DISH and Ergen ................................. 14

                (1) Civil Rights Counts (Counts III and IV) ..................... 14

                (2) Tortious Interference Counts (Counts V, VI).............. 15

                (3) Civil Conspiracy Count (Count VII) ........................... 15

        3.    Plaintiffs' Amended Complaint was Filed for an Improper Purpose ....... 16

    C.    This Rule 11 Motion is Meritorious and Does Not Warrant Sanctions................ 16

III.    CONCLUSION..................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l*,
711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................13

*Ahuruonye v. United States Dep't of Interior*,
312 F. Supp. 3d 1 (D.D.C. 2018) ...........................................................................5

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) .............................................................................................13

*Almeida v. Bennet Auto Supply, Inc.*,
335 F.R.D. 463 (S.D. Fla. 2020) .........................................................................3, 5

*Andrx Pharms., Inc. v. Biovail Corp. Int'l*,
256 F.3d 799 (D.C. Cir. 2001) .............................................................................13

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ...........................................................................13

*Betz v. Glob. Telesourcing, LLC*,
No. 21-CV-1320 (BAH), 2021 WL 5865384 (D.D.C. Dec. 10, 2021) ...................4

*Bozgoz v. James*,
No. CV 19-0239 (ABJ), 2020 WL 4732085 (D.D.C. Aug. 14, 2020) ...................15

*Carman v. Treat*,
7 F.3d 1379 (8th Cir. 1993) ...................................................................................4

*Cobell v. Norton*,
211 F.R.D. 7 (D.D.C. 2002) .................................................................................3, 6

*Colella v. Androus*,
No. CV 20-813 (RC), 2024 WL 1239697 (D.D.C. Mar. 22, 2024) ....................4, 5

*Colliton v. Cravath, Swaine & Moore LLP*,
No. 08 CIV 0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), *aff'd*,
356 F. App'x 535 (2d Cir. 2009) ............................................................................4

*Davis v. World Sav. Bank*,
FSB, 806 F. Supp. 2d 159 (D.D.C. 2011) ...............................................................6

*\*E. Sav. Bank, FSB v. Papageorge*,
31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) ...............14

*Graves v. United States*,
   961 F. Supp. 314 (D.D.C. 1997) ...................................................................................14

*Hilton Hotels Corp. v. Banov*,
   899 F.2d 40 (D.C. Cir. 1990) .......................................................................................4

*Hourani v. Mirtchev*,
   796 F.3d 1 (D.C. Cir. 2015) .........................................................................................6

*\*Intelsat USA Sales LLC v. Juch-Tech, Inc.*,
   No. 10-cv-2095, 2014 WL 12787643 (D.D.C. Oct. 15, 2014) ...........................7, 10

*Jefferson-11th St., LLC v. District of Columbia*,
   2020 WL 3035038 (D.D.C. June 5, 2020) ..................................................................13

*Kreuzer v. Am. Acad. of Periodontology*,
   735 F.2d 1479 (D.C. Cir. 1984) ..................................................................................10

*Luv N' Care, Ltd. v. Shiboleth LLP*,
   No. 16-CV-3179 (AJN), 2017 WL 3671039 (S.D.N.Y. Aug. 8, 2017)........................5

*\*Marina Mgt Svces, Inc. v. Vessel My Girls*,
   202 F.3d 315 (D.C. Cir. 2000) .....................................................................................4

*Mars Steel Corp. v. Cont'l Bank N.A.*,
   880 F.2d 928 (7th Cir. 1989) ........................................................................................3

*Mellow v. Sacramento Cnty.*,
   365 F. App'x 57 (9th Cir. 2010) ...................................................................................4

*\*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ..............................................................................................11, 12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) .....................................................................................................13

*Quick v. EduCap, Inc.*,
   No. 17-CV-01242 (APM), 2019 WL 95566 (D.D.C. Jan. 3, 2019) ..............................5

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   587 F. Supp. 2d 27 (D.D.C. 2008) ..............................................................................11

*Saltany v. Reagan*,
   886 F.2d 438 (D.C. Cir. 1989) .....................................................................................11

*In re: SCGI Holdings III LLC, et al.*,
   No. 23-1084 (D.C. Cir. April 21, 2023).......................................................................14

*Smith v. Trump*,
　　No. 21-CV-02265 (APM), 2023 WL 417952 (D.D.C. Jan. 26, 2023), *aff'd*,
　　No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023) ...................................................15

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*,
　　600 U.S. 181 (2023) ......................................................................................................................8

*Tahfs v. Proctor*,
　　316 F.3d 584 (6th Cir. 2003) .......................................................................................................5

**Statutes and Rules**

Fed R. Civ. P. 11 ..................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................................................5

## I.    PRELIMINARY STATEMENT

DISH and Ergen seek sanctions against Plaintiffs, because the Amended Complaint plainly violates Rule 11.[1]  It advances a false narrative that the FCC's decision to hold a hearing on SGCI's application to acquire TEGNA broadcast stations might only have been the product of a vast racist conspiracy against Mr. Kim.  The claims lack any reasonable basis in fact or law. Plaintiffs plainly seek retribution against Defendants for exercising their First Amendment rights to petition the government on matters of public interest.

In response, Plaintiffs go on the offense.  They claim that DISH and Ergen are trying to bully them into dropping their lawsuit, and ask that the Court sanction DISH and Ergen for having the temerity to challenge the propriety of the Amended Complaint at the outset of the case.  DISH and Ergen made their motion at the appropriate time, which is promptly after the offending pleading was filed, and based on an ample public record.  There is no good reason to delay this Rule 11 Motion.

Far from serving as an intimidation tactic, the Rule 11 Motion serves the proper purpose of putting Plaintiffs on fair notice of DISH's and Ergen's intent to seek sanctions.  To the extent that Plaintiffs elect to plow ahead, they do so with the understanding that they may be held responsible for defense costs, among other Rule 11 sanctions.

Plaintiffs otherwise defend their pleading by incessantly repeating the allegations that lack any basis in fact.  They assert that the sheer volume of the Amended Complaint, at 140 pages, evidences a diligent pre-filing investigation of the claims.  That bulk is no substitute for substance.  The Amended Complaint contains page after page of rank conjecture, speculation, and distortion of the FCC record, which fail Rule 11 standards.

---

[1] Capitalized and defined terms have the same meaning as in the Statement of Points and Authorities in Support of the Motion for Rule 11 Sanctions ("Rule 11 Motion").

In defense of the legal underpinnings for their claims, Plaintiffs disingenuously argue that their allegations attacking purported "race-based and xenophobic rhetoric" within advocacy filings at the FCC (*see, e.g.*, Opp'n at 5, 21) are not directed at *speech* protected by the First Amendment. They claim that the Amended Complaint somehow takes issue with actions and conduct that is distinct from speech. A fair reading of the Amended Complaint shows that this case is centered on speech.

Finally, the record shows that Plaintiffs are gunning for DISH and Ergen precisely because DISH exercised its First Amendment rights to advocate against Plaintiffs at the FCC. The Amended Complaint was improperly filed for harassment purposes, to exact retribution on DISH and Ergen, in violation of Rule 11(b)(1).

Rule 11 sanctions are in order, in the form of dismissal of the Amended Complaint and an award of attorneys' fees and costs, in order to serve the interests of deterrence. The sanctions imposed in this case, which was brought by an individual with a net worth in the hundreds of millions of dollars, must be substantial in order to have a deterrent effect.

## II.    ARGUMENT

### A.    DISH and Ergen's Rule 11 Motion is Procedurally Proper and May be Granted Now

DISH and Ergen demonstrated in their Rule 11 Motion that the Amended Complaint in this action violates each prong of Rule 11(b). The factual allegations lack evidentiary support, in violation of Rule 11(b)(3); the legal contentions are unwarranted, in violation of Rule 11(b)(2); and the action was filed to harass the Defendants, in violation of Rule 11(b)(1).

Plaintiffs argue that DISH and Ergen have requested sanctions too soon. They ask that this Court delay the Rule 11 Motion—either until after motions to dismiss are decided or after the close of discovery. Plaintiffs cite no controlling authority that would preclude an early

sanctions motion targeted to the initial pleading.  Notwithstanding that Plaintiffs might want to avoid a Rule 11 determination, the information presently available to the Court, including from the publicly available FCC record, allows for a Rule 11 decision now.  Indeed, the interests of judicial economy favor the Court's consideration of the Rule 11 arguments at the same time that it considers the pending motions to dismiss.  It would be inefficient and impractical for DISH and Ergen to file their Rule 11 Motion *after* the Court has dismissed the Amended Complaint with prejudice pursuant to Rule 12(b), and the case has been closed.  Plaintiffs' own authority cautions that a Rule 11 motion may be untimely if first filed after judgment is entered.  *See Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463, 467 (S.D. Fla. 2020) (denying motion with leave to renew with relation back to the original filing).

The purpose of Rule 11 is to "protect the court from frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002).  A Rule 11 motion should "[o]rdinarily . . . be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely."  Fed. R. Civ. P. 11, advisory comm.'s note to 1993 amend.  Bringing a Rule 11 motion early in the case is entirely consistent with Rule 11's goals of expeditious resolution of litigation and conservation of the Court's and the parties' resources.  As the Seventh Circuit has noted,

> Rule 11 creates duties to one's adversary and to the legal system, just as tort law creates duties to one's client. The duty to one's adversary is to avoid needless legal costs and delay. The duty to the legal system (that is, to litigants in other cases) is to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of other cases or, by leaving judges less time to resolve each case, increases the rate of error. Rule 11 allows judges to husband their scarce energy for the claims of litigants with serious disputes needing resolution.

*Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989).  Plaintiffs' insistence that the Court and the parties continue to incur time and expense litigating a frivolous matter is

entirely inconsistent with the Rule.

Where, as here, a complaint fails to state a claim and also violates Rule 11, it may be appropriate to file both motions and seek dismissal of the complaint as a sanction. *See Mellow v. Sacramento Cnty.*, 365 F. App'x 57, 58 (9th Cir. 2010) ("The district court did not abuse its discretion by dismissing the action pursuant to Federal Rule of Civil Procedure 11 because the record supports the conclusion that Plaintiffs filed the action for purposes of harassment."); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *15 (S.D.N.Y. Sept. 24, 2008) ("Although the Court has already decided to dismiss the Amended Complaint for failure to state a claim, this sanction under Rule 11 serves as an alternative ground for dismissal."), *aff'd*, 356 F. App'x 535 (2d Cir. 2009); *see also Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993) (district court did not abuse discretion by dismissing action with prejudice as a Rule 11 sanction for filing early motion for injunctive relief that was not well grounded in fact).[2]

The cases that Plaintiffs cite to advocate for delay are not on point. In those cases, the court lacked a sufficient record to make findings about the veracity of the pleadings. *See Betz v. Glob. Telesourcing, LLC*, No. 21-CV-1320 (BAH), 2021 WL 5865384, at *4 (D.D.C. Dec. 10, 2021) (deferring decision on appropriateness of Rule 11 sanctions for lack of evidentiary support to end of litigation); *Colella v. Androus*, No. CV 20-813 (RC), 2024 WL 1239697, at *7 (D.D.C.

---

[2] In the Rule 11 Motion, DISH and Ergen cited *Marina Mgt Svcs, Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000), to support their request for a dismissal as a sanction. Plaintiffs take issue with the use of a truncated quote from that opinion. The full quote—"[d]ismissal is a legitimate sanction under Rule 11 for serious misconduct when lesser sanctions would be ineffective or are unavailable"—fully supports a dismissal sanction here. While dismissal is a severe sanction, it is warranted in this case. *See* Rule 11 Mot. at 36-38; *see also Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 46 (D.C. Cir. 1990) (district court has broad authority to tailor Rule 11 sanctions to the circumstances of the case).

Mar. 22, 2024) (denying Rule 11 motion "for now" where disagreement "on the strength of specific evidence, the inferences to be drawn from information produced or revealed during discovery, and the application of the law to various facts" was more appropriate for a summary judgment motion); *Almeida.*, 335 F.R.D. at 466 (denying Rule 11 motion without prejudice as premature and noting that sanctions may be appropriate if the court grants any forthcoming dispositive motions).[3]  These cases suggest that courts should consider evidence gleaned from discovery before awarding Rule 11 sanctions when the relevant facts are not available to the court.  In this case, the FCC record provides ample basis for this Court to find that Plaintiffs' purported fact allegations are unfounded.  Here, the FCC record shows that the Amended Complaint "is so lacking in factual and legal support that it should never have been brought in the first place."  *Colella*, 2024 WL 1239697, at *7

Moreover, none of the cases Plaintiffs cite involve claims unwarranted under existing law, like Plaintiffs' claims here.  *See Quick v. EduCap, Inc.*, No. 17-CV-01242 (APM), 2019 WL 95566, at *2 (D.D.C. Jan. 3, 2019) (dismissal under Fed. R. Civ. P. 12(b)(6) was not sufficient to support Rule 11 sanctions because the dismissal ruling was not based on binding precedent); *Tahfs v. Proctor*, 316 F.3d 584, 595 (6th Cir. 2003) (attorneys' fees not awarded where "essential deficiency" of complaint alleging conspiracy was that it lacked sufficient factual detail and specificity).

---

[3] Another case that Plaintiffs rely upon is completely inapposite.  *See* Opp'n at 12 (citing *Ahuruonye v. United States Dep't of Interior*, 312 F. Supp. 3d 1, 26 (D.D.C. 2018)).  In *Ahuruonye*, the plaintiff sought sanctions based on arguments and statements in the defendants' motion to dismiss.  312 F. Supp. 3d at 25-26.  The court denied the plaintiff's Rule 11 motion because the plaintiff failed to comply with the procedural safeguards of Rule 11(c)(2) and because the defendants' dismissal arguments prevailed.  *Id.* at 26; *cf Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16-CV-3179 (AJN), 2017 WL 3671039, at *14 (S.D.N.Y. Aug. 8, 2017) (Rule 11 motion denied because it employed the same arguments advanced in motion to dismiss that the court had previously rejected when ruling on the motion to dismiss).

This Court may exercise its discretion to impose monetary and other sanctions now. *Cobell*, 211 F.R.D. at 10.  The sanctions should suffice to deter repetition of the sanctionable conduct or comparable conduct by others similarly situated.  Fed. R. Civ. P. 11(c)(4).  For that full deterrent effect, the monetary sanctions imposed here should include all attorneys' fees and costs for both the Rule 11 Motion and the overall defense of the frivolous claims.

Plaintiffs do not dispute that monetary sanctions arising from a complaint that violates Rule 11 may include all defense costs incurred in the action.  *See* Rule 11 Mot. at 37.  They also do not contest that Plaintiffs have abundant financial resources.  *Id.*  And, they must acknowledge that Plaintiffs' counsel, Consovoy McCarthy, is a highly sophisticated law firm that is home to numerous Supreme Court clerks and participates in a Free Speech Clinic at the Antonin Scalia Law School.  *Id.* at 36-37.  Under these circumstances, only severe and comprehensive sanctions will have any deterrent effect.  DISH and Ergen respectfully submit that this Court should award all defense costs and dismiss the Amended Complaint.

## B.  Plaintiffs' Factually Baseless and Legally Frivolous Claims Violate Rule 11

Plaintiffs' Opposition provides no basis for this Court to deny sanctions.  The allegations in the Amended Complaint are both factually baseless and legally frivolous.

### 1.  The Key "Fact" Allegations in the Amended Complaint Have No Evidentiary Basis

Plaintiffs agree that an "objective standard of reasonableness" determines "whether there has been a violation" of Rule 11(b).  *Hourani v. Mirtchev*, 796 F.3d 1, 17 (D.C. Cir. 2015); *see also* Opp'n at 14.  At the same time, Plaintiffs ask that this Court permit them to draw *unreasonable* inferences from the FCC record.  Opp'n at 16-17.  Plaintiffs do not have license to distort the FCC record, which speaks for itself.  *See Davis v. World Sav. Bank*, FSB, 806 F. Supp. 2d 159, 172 (D.D.C. 2011) (Where the allegations of the complaint "conflict with any

exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail.") (internal quotation and citation omitted).  The Amended Complaint's factual allegations are objectively unreasonable, and without evidentiary basis, in violation of Rule 11(b)(3).

Plaintiffs' counsel cannot avoid sanctions by representing that they conducted a pre-filing investigation, and by pointing to the sheer length of the Amended Complaint.  *See* Opp'n at 14-15.  The pre-filing inquiry requirement mandates reliance on evidence.  *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, No. 10-cv-2095, 2014 WL 12787643, at *3 (D.D.C. Oct. 15, 2014).  Plaintiffs present no creditable evidence to support their allegations of a vast racist conspiracy.

Moreover, Plaintiffs' willfulness is demonstrated by their persistence in relying upon unfounded allegations, and their refusal to accept the existence of facts contrary to their narrative.  For example, Plaintiffs claim that DISH continued to raise concerns about increased retransmission fees, even after SGCI supposedly had "eliminated" its concerns by executing a waiver.  *See* Opp'n at 38.  It is abundantly clear from the relevant FCC filings that DISH attached to its motion papers that DISH primarily took issue with Cox's intent to raise fees and Cox's attempts to negotiate rates for stations that it did not own.  *See* Exs. 8-10; *see also* Rule 11 Mot. at 9-11, 17.  Nonetheless, Plaintiffs continue to materially misrepresent the record.

In addition, Plaintiffs insist that the transaction was a straightforward rule-compliant deal that would enhance local news and create jobs.  Opp'n at 2.  They steadfastly refuse to acknowledge that, according to the FCC, Plaintiffs' own internal documents show that Plaintiffs intended to slash jobs and artificially raise retransmission consent rates.  Rule 11 Mot. at 12-14.  The FCC's D.C. Circuit filing states that Plaintiffs "ignore[] much of the relevant evidence in the record that has been developed so far, including Applicants' own internal documents that they

nowhere acknowledge or address.  That evidence reveals 'a good deal of smoke' supporting the Media Bureau's decision to conduct a full hearing."  Rule 11 Mot. at 14.

### a.    The FCC Record Belies Plaintiffs' "Racial Animus" Claims

Plaintiffs' Amended Complaint hinges on the far-fetched assertion that the FCC's Hearing Designation Order ("HDO") was motivated by "racial animus," instead of genuine concerns about the proposed transaction's impact on localism and retransmission consent fees, as well as potential collusion between new TEGNA and Cox.  Plaintiffs argue that racial animus is the only possible explanation for the FCC's issuance of an HDO.  The extensive FCC record shows no racial animus.

Plaintiffs make clear that they expected that Mr. Kim's race would provide a fast-track to approval, based on FCC policies promoting racial diversity.  Opp'n at 23-24.  According to Plaintiffs, any failure to credit Mr. Kim's minority status as a significant benefit qualifies as racial discrimination.  *Id.* at 7; Am. Compl. ¶ 228 (the FCC's HDO should have acknowledged "the historic increase in minority ownership that the deal offered.").  That contention is frivolous in and of itself.  *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) (prohibiting racial preferences in college admissions decisions).  Plaintiffs' counsel, who represented the Students for Fair Admissions at the Supreme Court, know full-well that the absence of a racial preference does not equate to race discrimination.

The Amended Complaint distorts the FCC record to assert that it contains "race-laden rhetoric" (Opp'n at 5) and "race-based and xenophobic rhetoric" (*id.* at 21), where no such rhetoric exists.  Plaintiffs selectively mix and match partial quotes from disparate sections of FCC filings to manufacture racial attacks where there are none.  In their Opposition, they repeat their oft-stated grievances that:

- "Objectors said Plaintiffs' acquisition of TEGNA 'will do nothing to create a more . . . diverse . . . media' and raised concerns about 'shadowy foreign investors.'" Opp'n at 22.

  o In truth, Petitioners pushed back on Plaintiffs' assertion that they "should automatically support a transaction so long as a woman or a person of color is at the helm." Ex. 6 at 06. "The identity of the executives leading these companies should not and does not insulate a transaction of this scope from a thorough and searching review by federal regulators. *Id.* at 08. Petitioners added that, "The proposed transactions will do nothing to create a more accurate, diverse or independent media." *Id.* They elaborated: "the Commission's public interest goals are not focused on promoting one kind of owner over another. Rather, it is promoting antagonistic and competing viewpoints in a vibrant marketplace of ideas." *Id.* at 07.

  o Neither Mr. Kim nor his company was referred to as a "shadowy foreign investor." All references to foreign investors were cabined to sections of the filings addressing anonymous "large hedge funds headquartered in the Cayman Islands and British Virgin Islands." *See* Ex. 6 at 022; *see also.* Am. Compl. ¶¶ 148, 151 (taking issue with Petitioners' accurate description of funding sources in the Cayman and British Virgin Islands as "foreign" and "offshore," and asserting that these financing sources should be immune from inquiry because they are "ubiquitous for multi-billion-dollar transactions").

- The FCC public filings include "an inexplicable reference to 'increased tensions in the Taiwan Strait' as a reason to keep Mr. Kim out of local news." Opp'n at 21.

  o Contrary to Plaintiffs' assertion, no public filing advocated that Mr. Kim be kept out of local news. Petitioners expressed no qualms about Mr. Kim's involvement in local news. Their concerns centered on anonymous foreign investment. *See* Ex. 6 at 026 ("it is scant assurance that, on paper, according to the Applicants, voting control will be held by Mr. Kim.")

  o The quote about tensions in the Taiwan Strait is both incomplete and taken out of context. The filings actually say: "we are living in unusual times when it comes to foreign investment issues. Since the announcement of the proposed transaction in this proceeding, Russia invaded Ukraine and China increased tensions in the Taiwan Strait. The Commission should not assume that CFIUS [The Committee on Foreign Investment in the United States] alone is responsible for the implications of anonymous foreign investment." *See* Ex. 7 at 02-03. War games in the Taiwan Strait remain a genuine geo-political concern today (*see* https://www.reuters.com/world/asia-pacific/china-starts-new-round-war-

games-near-taiwan-2024-10-13/), as does the war in Ukraine.

Plaintiffs contend that they should be given the benefit of the doubt in their skewed "interpretation" of these public filings at the pleading stage. Opp'n at 22-23. No matter how many public figures may have echoed Plaintiffs' talking points (*see* Opp'n at 22), the FCC docket objectively says what it says. It does not contain any race-based attacks on Mr. Kim. He is not described as a foreigner. He is not anonymous. An argument that Mr. Kim's race is not a sufficient basis to approve a transaction *is not* a race-based attack. Similarly, an argument that the FCC should inquire into anonymous foreign funding sources, in light of geo-political unrest, is not a race-based attack.

These claims of racial animus lack "any evidentiary basis," and violate Rule 11(b)(3). *See Intelsat*, 2014 WL 12787643, at *6.

### b. Plaintiffs Lack any Evidence of a Race-Based Conspiracy

Plaintiffs acknowledge that DISH and Ergen had no anti-Asian motivation. Their objections to the transaction were purely economic. *See, e.g.*, Am Compl. ¶¶ 138-39, 304, 319. Plaintiffs improperly attempt to use threadbare and conclusory conspiracy allegations to hold DISH and Ergen responsible for the imagined racial animus of others.

Mere association and parallel behavior is not enough for a conspiracy claim. As explained in one of the D.C. Circuit cases that Plaintiffs cite, "[t]he mere showing of frequent relations between alleged co-conspirators, [] is insufficient to infer an illegal agreement." *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488 (D.C. Cir. 1984) (refusing to "infer a conspiracy to violate the antitrust laws based on a showing of regular contact between two independent professional associations on general matters of mutual interest and concern"). Plaintiffs continue to argue that they provide sufficient support for a conspiracy claim in their

general allegations that (i) Defendants shared a legitimate mutual dislike of the transaction;

(ii) Defendants Goodfriend, Allen and Ergen know each other and have worked together; and

(iii) Ergen had meetings with Chairwoman Rosenworcel.  Opp'n at 19-20.

"[T]he type of factual details that would allow this Court to infer that it was plausible that

an actual agreement existed" include "who initiated the discussions . . ., what they proposed, the

object of the alleged conspiracy, the fact that an agreement was reached among all [] defendants,

and where and when the agreement was reached . . . ."  *In re Rail Freight Fuel Surcharge*

*Antitrust Litig.*, 587 F. Supp. 2d 27, 34 (D.D.C. 2008).  Plaintiffs' Amended Complaint contains

no such details, such that the far-fetched conspiracy allegations violate Rule 11.

### 2.    Plaintiffs' Claims Are Barred by Existing Law

A filing that advances "frivolous legal contentions" with no reasonable prospect of

success violates Rule 11(b)(2).  *Saltany v. Reagan*, 886 F.2d 438 (D.C. Cir. 1989).  Because

Plaintiffs' legal contentions have no reasonable prospect of success, sanctions are warranted.

### a.    Binding Supreme Court First Amendment Precedent Forecloses Plaintiffs' Claims

Plaintiffs argue that DISH and Ergen cite "no binding precedent that would foreclose

relief for Plaintiffs' claims – indeed, not one decision of the Supreme Court or D.C. Circuit

addressing any of Plaintiffs' causes of action."  Opp'n at 27.  That is wrong.  DISH and Ergen

rely upon binding Supreme Court precedent that forecloses *all* of Plaintiffs' legal theories,

holding that the First Amendment of the U.S. Constitution acts as a complete bar to Plaintiffs'

claims.

The Supreme Court held in *NAACP v. Claiborne Hardware Co.*, that "expression on

public issues" rests "on the highest rung of the hierarchy of First Amendment values."  458 U.S.

886, 913 (1982).  According to the Supreme Court, the First Amendment prohibits the

government from awarding compensation for the consequences of non-violent speech on matters of public interest. *Id.* at 916-18. The advocacy of DISH and others before the FCC on a matter of public interest – specifically, Plaintiffs' FCC application – is Constitutionally protected speech. Rule 11 Mot at 27-32. Because the Amended Complaint's legal theories are foreclosed by this Supreme Court precedent, the Amended Complaint violates Rule 11(b)(2). *See id.* at 27-28.

Plaintiffs do not dispute that the First Amendment protects speech on matters of public interest. Instead, they make an absurd argument that their causes of action do not involve speech; they claim that "DISH's and Mr. Ergen's *acts* and *conduct*—not speech—violated federal and state law." Opp'n at 33 (emphasis in original). The acts and conduct that Plaintiffs challenge are *acts of speech* in advocacy at the FCC. Plaintiffs' Opposition and Amended Complaint repeatedly cite purported "race-laden rhetoric" in FCC filings as the basis for their claims. All of Plaintiffs' civil rights and tort claims take issue with advocacy on a matter of public interest before the FCC. For these reasons, the First Amendment bars all causes of action pleaded in the Amended Complaint.

Plaintiffs also argue that the *Noerr-Pennington* doctrine—which holds that individuals who petition the government for redress of grievances are immune from liability for that activity—does not foreclose their claims against DISH and Ergen. Plaintiffs seek to cabin the First Amendment protection of the right to petition the government to the antitrust context. Opp'n at 35. But, they provide no legitimate rationale for limiting the doctrine to antitrust. District courts in this Circuit have held that the right to petition the government immunizes defendants from non-antitrust claims. Rule 11 Mot. at 28-29. Numerous Circuit Courts agree. *See id.* at 29-30. None of the Circuit-level cases that Plaintiffs cite hold otherwise. Rather, they

are either antitrust cases (*e.g.*, *Octane*, *Andrx Pharms.*, *Allied Tube*)[4] or they take no position on the doctrine's application to other types of claims (*e.g.*, *Graham*, *Jefferson-11th*, *Acosta*).[5]

Plaintiffs contend that, even if *Noerr-Pennington* applies to their claims, they may invoke a "sham" exception, because Noerr-Pennington does not "cover activity that was not genuinely intended to influence governmental action." Opp'n at 36-37. The sham exception has no application here. Plaintiffs concede that DISH and Ergen had valid concerns about increased retransmission consent fees. *See, e.g.*, Am Compl. ¶¶ 83, 138. It cannot be a "sham" to raise genuine concerns with a government agency.

Plaintiffs support their "sham" argument with an assertion that DISH interposed objections at the FCC after they had fully satisfied its concerns through waivers. Opp'n at 20, 38. In this making this assertion, Plaintiffs persist in mischaracterizing DISH's filings, and omitting that DISH primarily took issue with the fact that Cox, another party to the deal, refused to waive its rights to raise fees and had attempted to negotiate rates for stations that it did not own. *See* Rule 11 Mot., Exs. 8-10. DISH also questioned whether the waivers were "bulletproof." *Id.*

Plaintiffs argue that the FCC's HDO and the subsequent D.C. Circuit dismissal of Plaintiffs' challenge to the HDO do not "absolve[]" DISH and Ergen, because they were not final decisions on the merits. Opp'n at 39-40. A final decision on the merits is not required to neutralize the sham exception; it will suffice to show that a party's positions were not objectively

---

[4] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014); *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799 (D.C. Cir. 2001); *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988).

[5] *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015); *Jefferson-11th St., LLC v. District of Columbia*, 2020 WL 3035038 (D.D.C. June 5, 2020); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81 (D.D.C. 2010).

baseless.  *See, e.g.*, *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 20 (D.D.C. 2014) (suit was not "objectively baseless" where it survived motion to dismiss), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015).

Plaintiffs further contend that the D.C. Circuit did not reject Plaintiffs' assertion that the HDO was a sham.  Opp'n at 40.  In fact, the D.C. Circuit did precisely that.  Plaintiffs argued to the D.C. Circuit that the HDO was "unlawful and futile."  Rule 11 Mot. at 14, Ex. 14.  The D.C. Circuit squarely rejected that argument, finding that Plaintiffs have not "shown that [the FCC] has a 'crystal clear' duty to rule on their application without resort to a hearing."  *In re: SCGI Holdings III LLC, et al.*, No. 23-1084 (D.C. Cir. April 21, 2023) (ECF No. 55-12).

Because the First Amendment immunizes DISH and Ergen from Plaintiffs' claims, those claims have no basis in law and violate Rule 11(b)(2).

> **b.    Plaintiffs Otherwise Cannot Plead the Requisite Elements of Their Causes of Action Against DISH and Ergen**

The Amended Complaint violates Rule 11(b)(2) for the additional reason that Plaintiffs cannot plead the requisite elements of their causes of action against DISH and Ergen.

> **(1)    Civil Rights Counts (Counts III and IV)**

Plaintiffs' Section 1985(3) claim requires that Plaintiffs plead and prove (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws; (3) motivated by some class-based, invidiously discriminatory animus; and (4) causing damage. *Graves v. United States*, 961 F. Supp. 314, 319 (D.D.C. 1997).  As set forth above, Plaintiffs make threadbare and conclusory conspiracy claims, without a modicum of evidentiary support. Plaintiffs argue that their allegations of conspiracy are "more than just conclusory," (Opp'n at 29), but provide no examples of any non-conclusory allegation against DISH or Ergen that would support a conspiracy claim.  *See* Opp'n at 28.

Plaintiffs' arguments in support of their Section 1986 claim are an even further stretch. Plaintiffs suggest that it is "plausible" that DISH and Ergen "had some power to at least 'aid in preventing' the alleged conspiracy" because of some isolated meetings with other defendants during the general time period that the application was pending. Opp'n at 29-30. That is not the standard for liability. *See Smith v. Trump*, No. 21-CV-02265 (APM), 2023 WL 417952, at *7 (D.D.C. Jan. 26, 2023) ("[T]o hold a private individual responsible under § 1986, the person must be someone with actual authority to compel others to act or refrain from acting."), *aff'd*, No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023). Plaintiffs' own allegations have DISH and Ergen on the outskirts of the purported conspiracy, and without any authority or influence to prevent it.

Additionally, because the Amended Complaint does not allege a Section 1985 conspiracy, Plaintiffs' Section 1986 claim also must fail. *Bozgoz v. James*, No. CV 19-0239 (ABJ), 2020 WL 4732085, at *13 (D.D.C. Aug. 14, 2020) ("a colorable claim under § 1985 is a prerequisite to a claim under § 1986") (internal quotation and citation omitted).

### (2)    Tortious Interference Counts (Counts V, VI)

Plaintiffs concede, as they must, that no contract was breached and no one in a business relationship with Plaintiffs was induced to end that relationship. Plaintiffs' transaction terminated after their financing commitments expired. Am. Compl. ¶ 261. DISH and Ergen had no role or influence in that financing, and did not interfere with Plaintiffs' funding.

### (3)    Civil Conspiracy Count (Count VII)

Plaintiffs rely on their arguments in support of their Section 1985 claim to support their claim for civil conspiracy. Opp'n at 33. The civil conspiracy claim fails for the same reasons as the Section 1985 claim.

### 3.    Plaintiffs' Amended Complaint was Filed for an Improper Purpose

Plaintiffs' Opposition and Amended Complaint make clear that Plaintiffs blame DISH and Ergen, among others, for their failure to secure the necessary FCC approvals for their transaction within the limited window of time they negotiated.  Indeed, the Opposition repeatedly manifests Plaintiffs' anger and frustration at the lost opportunity.  Opp'n at 2, 16, 28, 41.  Rather than accept that the FCC had legitimate concerns about the transaction, Plaintiffs filed this retaliatory lawsuit to harass those that Mr. Kim holds responsible.  Rule 11 Mot. at 35-36.  That the Amended Complaint is both legally and factually frivolous evidences that it was filed for an improper purpose.  *See id.*

### C.    This Rule 11 Motion is Meritorious and Does Not Warrant Sanctions

Plaintiffs close their Opposition with a demand for sanctions against DISH.  No such sanctions are warranted.  This Rule 11 Motion was served and filed in a timely manner to put Plaintiffs on notice that DISH and Ergen intend to exercise their Rule 11 rights, and should not be burdened with the expense associated with a frivolous lawsuit.  It was not filed for intimidation purposes.  DISH and Ergen had no expectation of intimidating Plaintiffs.  Instead, consistent with the purpose of Rule 11, they hoped that Plaintiffs' counsel might objectively assess the factual and legal assertions in the Amended Complaint and agree that it should be withdrawn.  Notwithstanding those hopes, Plaintiffs' lengthy full-throated response shows that they intend to proceed full steam ahead, regardless of the objective deficiencies in their case.

Moreover, there is nothing "cavalier" about the sanctions motion.  It is thorough and well-supported.  To the extent that it dove-tails with pending motions to dismiss, it creates no additional work and does not multiply the proceedings in this case.  The Court may consider the Rule 11 Motion at the same time that it considers the other pending motions.  *See* Section II.A, *supra*.

### III.    CONCLUSION

For all of the foregoing reasons, Defendants DISH and Ergen respectfully request that this Court grant their Rule 11 Motion, impose sanctions on Plaintiffs, pursuant to Rule 11(c), for Plaintiffs' violations of Rule 11(b)(1), (2) and (3), and deny Plaintiffs' request for sanctions.

Dated:  October 16, 2024

Respectfully submitted,

STEPTOE LLP

By:  *s/ Elyse D. Echtman*
Elyse D. Echtman
D.D.C. Bar No. NY0583
1114 Avenue of the Americas
New York, New York 10036
(212) 378-7551
eechtman@steptoe.com

*Counsel for Defendants DISH Network Corporation and Charles Ergen*

17

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I caused a true and accurate copy of the foregoing Reply in Support of

Motion for Rule 11 Sanctions by Defendants DISH Network Corporation and Charles Ergen to

be filed today, October 16, 2024, through the Court's CM/ECF system, which will send notice to

all parties of record.

/s/ Elyse D. Echtman
One of the Attorneys for
Defendants DISH Network
Corporation and Charles
Ergen