UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SGCI HOLDINGS III LLC, et al.,

        Plaintiffs,

    v.

FEDERAL COMMUNICATIONS
COMMISSION, et al.,

        Defendants.

Civil Action No. 24-1204 (RC)

**FEDERAL DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Federal Communications Commission ("FCC" or "Commission"), Jessica Rosenworcel, in her official capacity as the Commission's Chairwoman, and Holly Saurer, in her official capacity as Chief of the Commission's Media Bureau (collectively, the "Federal Defendants"), by and through undersigned counsel, reply as follows to Plaintiffs' opposition to the Federal Defendants' motion to dismiss the claims asserted against them in the Amended Complaint.

**BACKGROUND**

The Federal Defendants have set forth in their motion to dismiss a comprehensive discussion of the relevant background based on the allegations in the Amended Complaint and administrative fillings that it incorporates by reference. Mot. (ECF No. 47-1) at 5-9. As Plaintiffs have attempted to re-write their pleading in their opposition, the Federal Defendants briefly emphasize the following.

Plaintiffs assert four claims against the Federal Defendants related to the unconsummated Standard General-TEGNA merger deal (counts I, III, IV and VIII). They allege that the

Commission's Media Bureau "killed the deal" by its referral in February 2023 of the license transfer applications to a hearing before an administrative law judge.  Am. Compl. (ECF No. 36) ¶ 11.  Although Plaintiffs allege that various prior routine acts by the Media Bureau had caused some delay in the review process—such as extending the initial public comment period and issuing requests to Standard General for production of documents (*id.* ¶¶ 131-32)—they allege that "[e]verything came to a head" in February 2023 after TEGNA had extended the deal another three months to May 22, 2023.  *Id.* ¶¶ 214, 218.  After that extension, Plaintiffs allege that Chairwoman Rosenworcel and Media Bureau Chief Saurer determined that the "only way left to kill the deal would be to run out the clock on Standard General's merger agreement" by issuing a Hearing Designation Order.  *Id.* ¶¶ 214-222.  Plaintiffs allege that the Order "had no basis in law," "was a move that the Media Bureau had never previously deployed for a transaction like Standard General's," "sounded the death knell for the Standard General-TEGNA transaction" by "ensur[ing] the deal would not close in time" and "worked" by killing the deal.  *Id.* ¶¶ 11, 225, 229.  The Amended Complaint thus asserts that the merger deal remained viable in February 2023 and that the alleged cause of its failure was the issuance of the Hearing Designation Order, not any action that preceded it.

In count I, Plaintiffs allege that the Federal Defendants' conduct amounted to race discrimination against Standard General and its principal, Mr. Kim, in violation of the Equal Protection Clause and seek "injunctive and declaratory relief" to prevent future discrimination against Mr. Kim by the Federal Defendants.  *Id.* ¶¶ 324-335.  In counts III and IV, Plaintiffs assert claims of a conspiracy "to thwart the Standard General/TEGNA deal" among Chairwoman Rosenworcel, Media Bureau Chief Saurer, and the private party Defendants under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986, seeking the "'recovery of damages'" under those statutes,

including a multi-million dollar breakup fee. *Id.* ¶¶ 352-363. In count VIII, Plaintiffs allege that the Federal Defendants violated 47 U.S.C. § 310(d) by their alleged "consideration of Mr. Allen as a potential alternative buyer" through the Media Bureau's request for documents of "Mr. Allen's failed bid" and seek "declaratory" and "injunctive relief" to prevent the Federal Defendants from considering "whether an alternative license transferee would be better than Mr. Kim" in connection with unspecified future deals that Mr. Kim might pursue. *Id.* ¶¶ 398-99. In all these counts, Chairwoman Rosenworcel and Media Bureau Chief Saurer are sued solely in their official capacities. *Id.* ¶¶ 31-32.

"'It is well settled . . . that a plaintiff may not amend his complaint through an opposition brief.'" *Prewitt v. McDonough*, 633 F. Supp. 3d 195, 208 (D.D.C. 2022) (quoting *Sai v. Transp. Sec. Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018)). Accordingly, Plaintiffs must defend the Federal Defendants' motion to dismiss based on the claims as pled against them not as re-imagined in Plaintiffs' opposition. Plaintiffs' attempt to avoid dismissal of the claims against the Federal Defendants fail for this reason and others as discussed below.

## ARGUMENT

## I.    The Court Lacks Jurisdiction Over Counts I, III, IV, and VIII As Pled Against The <u>Federal Defendants.</u>

### A.    Counts III and IV Should Be Dismissed.

Plaintiffs concede that they cannot assert any claim for monetary damages against the Federal Defendants and, despite expressly seeking such damages in counts III and IV, now disavow any intention to do so, claiming that they only seek "non-monetary relief" against the Federal Defendants. Opp'n (ECF No. 66) at 28. This concession is presumably intended to avoid dismissal of counts III and IV, which Plaintiffs try to recharacterize as a claim for prospective relief rather than for monetary damages as actually pled in those counts. *Id.* at 25-27.

The allegations in their pleading, however, do not support Plaintiffs' re-imagining of these conspiracy-based claims. Unlike counts I and VIII, Plaintiffs make no reference in counts III and IV to seeking declaratory or injunctive relief but only to the recovery of damages—the $136 million break-up fee, "wasted" legal and advisory fees, and "billions of dollars" of "lost" benefits "that would have accrued had" the transaction been completed. *Compare* Am. Compl. (ECF No. 36) ¶¶ 335, 399 *with id.* ¶¶ 356, 363. Moreover, to the extent the Prayer for Relief references a declaration or injunction, it is in reference to the equal protection claim in count I and violation of section 310(d) claim in count VIII asserted against all Federal Defendants, not the section 1985 and 1986 claims asserted against Rosenworcel, Saurer and the private party Defendants. *Id.* at 139-140 (Prayer for Relief "A" to "D"). A request for declaratory or injunctive relief with respect to counts III and IV is not pled in the Amended Complaint.

But even if that were not alone dispositive, Plaintiffs fail to cite any authority that declaratory or injunctive relief is available against federal employees in their official capacity under sections 1985(3) and 1986. Plaintiffs' cited authority is from outside this jurisdiction and does not involve federal government defendants. Opp'n (ECF No. 66) at 27; *see also McAlister v. Alaska*, No. 23-0029, 2023 U.S. Dist. LEXIS 85067, at *21-22 (D. Alaska May 16, 2023) (citing cases outside the federal context recognizing injunctive relief as an available remedy).

The case authority within this jurisdiction holds that section 1985(3) and 1986 claims against the federal government and its officers acting in an official capacity, as alleged here, are barred by sovereign immunity. *See, e.g., Jean-Baptiste v. Dep't of Just.*, Civ. A. No. 23-0432 (RC), 2024 U.S. Dist. LEXIS 51959, at *11012 (D.D.C. Mar. 25, 2024). To the extent that case authority arises in the context of claims for monetary damages under those statutes, that does not imply the availability of injunctive relief as an alternative remedy as Plaintiffs wrongly suggest.

To the contrary, the unconditional language in those decisions—that "'[s]overeign immunity . . . bars §§ 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity'" (*id*. at *12)—is consistent with an interpretation of the statute as providing only for a monetary remedy. *See* 28 U.S.C. § 1985(3) (permitting "an action for the recovery of damages by such injury or deprivation, against any one or more of the conspirators"); *Cuban v. Kapoor Bros., Inc*., 653 F. Supp. 1025, 1033 (E.D.N.Y. 1986) ("the statutory remedy" under section 1985 "is limited to the recovery of damages"). Plaintiffs fail to cite any case authority in this jurisdiction holding to the contrary.

Plaintiffs also have failed to plead facts that would support standing for declaratory or injunctive relief under sections 1985(3) and 1986 even were that relief available against the federal government under those statutes. Standing is "'not dispensed in gross.'" *Davis v. FEC*, 554 U.S. 724, 734 (2008). "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press and 'for each form of relief' that is sought." *Id.*

A plaintiff has standing to seek prospective relief such as an injunction or declaratory judgment only if the plaintiff has sufficiently alleged the substantially likelihood of future harm based on a repeat of the alleged unlawful conduct that was alleged to have occurred previously. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 109 (1983) ("That Lyons may have been illegally choked by the police on October 6, 1976 . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part . . . . If Lyons has made no showing that he is realistically threatened by a repetition of his experience of October 1976, then he has not met the requirements for seeking an injunction in a federal court[.]").

Although Plaintiffs allege that they fear "future discrimination" and a violation of 47 U.S.C. § 310(d) by the Commission's Media Bureau in connection with unspecified future matters that they may have before the Commission (*id*. ¶¶ 334, 399), those conclusory allegations—which are themselves deficient as addressed in section I.B below—relate to the alleged unlawful conduct in counts I and VIII not the conspiracy-based claims alleged in counts III and IV.  Because standing is not dispensed in gross, Plaintiffs cannot meet their burden by alleging the potential for future harm generally (Opp'n (ECF No. 66) at 29); for each claim at issue, Plaintiff must allege future harm connected to the specific alleged unlawful conduct underlying that claim to have standing to seek prospective relief for the claim.  *Animal Legal Def. Fund v. Vilsack*, 111 F. 4th 1219, 1228-31 (D.C. Cir. 2024) (separately addressing whether imminent future harm had been pled with respect to each of plaintiff's claims by analyzing whether the specific alleged unlawful conduct underlying each claim was substantially likely to cause plaintiff future injury).

As regards to counts III and IV, Plaintiffs have failed to allege any potential for repetition of the conduct underlying their section 1985(3) and 1986 claims that could confer standing for prospective relief under those statutes.  A conspiracy is an essential element of such claims, *Thompson v. Trump*, 590 F. Supp. 3d 46, 94-95 (D.D.C. 2022), and Plaintiffs fail to allege in counts III and IV that any alleged conspiracy against them remains ongoing.  Indeed, because Plaintiffs allege that the purpose of the alleged conspiracy was to "thwart the Standard General-TEGNA deal," their pleading could not plausibly be read to imply a conspiracy existing beyond the termination of that deal to which prospective relief could be directed.  Am. Compl. (ECF No. 36) ¶¶ 353, 359.

Plaintiffs also have not alleged that a conspiracy against them involving agency officials and outside parties is likely to recur in the future.  Agency officials "'do not conspire when they

speak to one another and work together in their official capacities'" for purposes of sections 1985(3) and 1986. *Wilson v. Wolf*, No. 20-0100 (ABJ), 2021 U.S. Dist. LEXIS 11701, at *19-20 (D.D.C. Jan. 22, 2021). Thus, it is insufficient for Plaintiffs to allege the potential for future harm resulting from anticipated actions of agency officials, or the Commission generally, to establish standing for prospective relief under counts III and IV. Plaintiffs instead must allege that they are substantially likely to experience future harm as a result of an unlawful conspiracy. Yet, neither the Amended Complaint, nor the declaration accompanying Plaintiffs' opposition, allege that Plaintiffs face the threat of any alleged future conspiracy involving the Federal Defendants and an outside party. *See Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991) ("In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries.")

Accordingly, Plaintiffs would lack standing to claim non-monetary relief for the alleged statutory violations in counts III and IV even had they attempted to seek that relief for those counts in the Amended Complaint. And, because Plaintiffs now disavow any claim for the monetary damages in those counts—which would be barred by sovereign immunity in any event as Plaintiffs concede—those counts should be dismissed.

### B.    Counts I and VIII Should Be Dismissed For Lack Of Standing.

Plaintiffs disavow any claim for monetary damages in counts I and VIII (Opp'n (ECF No. 66) at 29), which is a concession both that any such claim would be barred by sovereign immunity and that Plaintiff lacks standing for any claim seeking redress for alleged past injuries. Although Plaintiffs make a perfunctory attempt to establish standing for the prospective relief sought in counts I and VIII, the bare allegations in the Amended Complaint fail to meet their burden as established in the Federal Defendants' motion. Mot. (ECF No. 47-1) at 13-21.

1.     Count I Should Be Dismissed For Lack Of Standing

Plaintiffs have failed to establish with sufficient particularity and concreteness that they face "certainly impending" future injury based on a recurrence of the alleged equal protection violation alleged in count I.  *See Lyons,* 461 U.S. at 105, 109; *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021); *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 109 (1998).  Their attempt to assert "imminent future harm" based on an alleged recurrence of such a violation is unavailing.

To the extent Plaintiffs rely on their intent to renew their licenses in the future, they concede that their existing licenses are not set to expire until 2029 at the earliest.  Opp'n (ECF No. 66) at 31. Plaintiffs assert that the lack of temporal proximity is not fatal to their standing, but rather that the probability of future harm sufficiently conveys standing.  *Id.* However, Plaintiffs' fail to plead "that the challenged action (or inaction) has 'substantially increased' the plaintiff's 'risk of harm' and that he or she faces a 'substantial probability of harm with that increased [risk] taken into account.'" *Pub. Citizen, Inc. v. Trump*, 361 F. Supp. 3d 60, 73 (D.D.C. 2019).  Unlike in *Public Citizen*, there is no specific order, rule, or policy from which some future effect could be predicted. In contrast, Plaintiffs' claims are based on the alleged conduct of specific officials at the Commission who Plaintiffs allege (albeit implausibly) acted with discriminatory intent to thwart the Standard General-TEGNA deal.  Am. Compl. (ECF No. 36) ¶¶ 11, 217.  The five-year timeline before renewal, coupled with the change in agency leadership attendant to a new administration,[1] makes the probability of harm when the licenses come up for renewal based on a repeat of the alleged conduct at issue too speculative to support standing.  *United Transp. Union v. Interstate*

---

[1]     Chairwoman Rosenworcel announced that she plans to depart the Commission on January 20, 2025.  *See* https://www.fcc.gov/document/chairwoman-jessica-rosenworcel-announces-departure-fcc (last visited Dec. 1, 2024).

*Commerce Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]")

Based on the Declaration of Soohyung Kim (ECF No. 66-1), a document not attached to the Amended Complaint, Plaintiffs also cite to a recent deal involving a Standard General affiliate in which the affiliate purchased a company's assets "except its 11 radio and 10 television stations" allegedly because purchasing the stations would have required a license-transfer approval by the Commission.  Opp'n (ECF No. 66) at 30 (citing Kim Decl. ¶¶ 6, 8-9).  Although the deal as structured did not require approval by the Commission, Standard General allegedly "has the option to acquire the stations, and the [seller] also has the option to require Standard General to purchase the stations." *Id*.  Plaintiffs cite this option as their basis for claiming the potential for "imminent future harm," contending that they would exercise the option "[i]f not for the fact that the license transfers would require FCC approval." *Id*. at 30; Kim Decl. (ECF No. 66-1) ¶ 13. That is insufficient to meet their burden for several reasons.

First, Plaintiffs are not facing the prospect of alleged imminent future harm because neither party to the agreement is required to exercise the purchase option, let alone under any immediate or probable timeframe.  The option period under the agreement is seven years and thus there is nothing to indicate any expectation of immediate action by either party.  Agreement (ECF No. 66-2) at 2 ¶ 3.  By citing this option as the basis for claiming standing for prospective relief, Plaintiffs are thus speculating about the potential for alleged "unlawful treatment" (Kim Decl. (ECF No. 66-1) ¶ 13) at some unspecified point in the future and at a time when the Commission will be under new leadership (*supra* n. 1).  That is insufficient to meet their burden. *Chaplaincy of Full Gospel*

*Churches v. Navy*, 697 F.3d 1171, 1176 (D.C. Cir. 2012) ("vague predictions of future discriminatory conduct are insufficient to demonstrate the imminent threat of future injury necessary to support standing to seek injunctive relief"); *Mideast Sys. & China Civil Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1178 (D.C. Cir. 1986) ("[T]he mere possibility that causation is present is not enough; the presence of an independent variable between either the harm and the relief or the harm and the conduct makes causation sufficiently tenuous that standing should be denied.").

Second, to the extent Plaintiffs are contending that they have been harmed by their decision to defer in their recent agreement the purchase of the radio and television stations until some unspecified future date (Opp'n at 33), that is self-imposed harm that is insufficient to confer standing. *Animal Legal Def. Fund*, 111 F.4th at 1227-28. Moreover, any alleged harm attributable to that past decision has already been incurred (Option Agm't (ECF No. 66-2) at 1 (stating that the deal was "made and entered into as of May 17, 2024")) and therefore cannot support standing for prospective relief. And Plaintiff has not identified any other transactions that are expected to be before the Commission in the near future that could support their claim of standing for prospective relief under count I.

2.    Count VIII Should Be Dismissed For Lack Of Standing.

Plaintiffs lack standing to assert a claim under count VIII for the same reason. Indeed, Plaintiffs do not even attempt to suggest the potential for future harm related to an alleged violation of 47 U.S.C. § 310(d) in connection with the transaction described in the Kim Declaration or future license renewals. As discussed above, Plaintiffs' arguments with respect to that transaction and future license renewals are limited to their alleged fear of future unequal treatment that forms the basis for count I of the Amended Complaint, not the alleged ultra vires conduct—allegedly considering alternative buyers as part of the approval process of the Standard General-TEGNA

deal in violation of section 310(d)—underlying count VIII.  Plaintiffs do not allege that there were alternative potential buyers with respect to the subsequent transaction described in the Kim Declaration or that the process of license renewal would even implicate section 310(d). Consequently, Plaintiffs have not alleged any basis for standing for prospective relief for count VIII.

Plaintiffs, moreover, have not even plausibly alleged that they suffered past harm caused by the alleged statutory violation to have a basis to claim that similar harm could be expected to repeat in the future from another such violation.  The only alleged harm identified in the Amended Complaint is the harm allegedly caused by the Media Bureau when it issued the Hearing Designation Order in February 2023, which Plaintiffs allege had the effect of delaying the approval process beyond the May 2023 deadline, thereby "kill[ing]" the merger deal.  Am. Compl. (ECF No. 36) ¶ 11.  But the September 2022 request seeking information about alternative bidders that Plaintiffs cite as their basis for asserting a section 310(d) violation preceded the Hearing Designation Order by several months, and that request is not plausibly alleged to have formed a basis for that Order.  Plaintiffs thus have failed to identify any concrete harm attributable to the alleged statutory violation.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").

Plaintiffs acknowledge that the merger deal remained viable in February 2023 when TEGNA extended the deadline by three months to May 2023 (Am. Compl. (ECF No. 36) ¶ 21), and do not dispute that the Hearing Designation Order made no reference to consideration of any alternative bidder.  The Amended Complaint alleges that the September 2022 document request "prolonged the license-transfer review until the Standard General's merger agreement expired"

(*id.* ¶ 397) and the "possibility of an alternative buyer for TEGNA—Mr. Allen—infected the agency's entire treatment of Standard General's license-transfer application." *Id.* ¶ 395. But those are conclusory allegations that the Court need not accept, *Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023), particularly in the face of Plaintiffs' specific allegation that the merger remained viable as of February 2023 prior to the Hearing Designation Order and their concession that the issues identified in the Hearing Designation Order were unrelated to the September 2022 document request regarding "alternative transactions" on which Plaintiffs base count VIII. Plaintiffs thus lack standing to assert the claim in count VIII because that claim amounts to nothing more than an alleged statutory violation divorced from any concrete harm, whether past or future. *Spokeo*, 578 U.S. at 341.

### C.    Plaintiffs Have Failed to Exhaust Administrative Remedies And Their Claims In Any Event Are Subject To The Exclusive Jurisdiction Of The D.C. Circuit.

Plaintiffs argue that their claims are not subject to the exclusive jurisdiction of the D.C. Circuit under the Hobbs Act, 28 U.S.C. § 2342(1), or the administrative exhaustion requirement of 47 U.S.C. § 155(c)(7), because they are challenging the "whole course of [the] unprecedented, unlawful, and discriminatory FCC proceedings" regarding the Standard General-TEGNA transaction, not any specific order issued during that review process, such as the February 2023 Hearing Designation Order or the administrative judge's June 2023 order terminating the hearing proceeding as moot. Opp'n (ECF No. 66) at 38-44. This argument fails for several reasons.

First, despite Plaintiffs' attempt to re-imagine their pleading, the crux of their complaint is the agency's consideration of their specific license transfer applications and the alleged unequal treatment they claim to have experienced in that process that they claim caused a $8.1 billion deal to fail. The Amended Complaint asserts that the cause of the deal's failure was the Hearing Designation Order issued in February 2023, which Plaintiffs contend was issued without any basis

in law and for the purpose of "kill[ing]" the transaction.  Am. Compl. (ECF No. 36) ¶¶ 11, 225.

In the administrative hearing proceedings that followed from that order, Plaintiffs argued that "the

applications were unlawfully designated for a hearing" and that they "remain[ed] prepared to

vindicate [their] rights as necessary, including through participation in the hearing and attendant

discovery process."  Status Report, https://www.fcc.gov/ecfs/document/10524565816599/1 (last

visited Dec. 5, 2024).

      Plaintiffs' attempt to characterize their claim as a challenge to the entire course of the

agency review process is not only unsupported by Plaintiffs' own statements in the administrative

record and their pleading but by the well-settled principle that agency action is not ripe for review

until it "'imposes an obligation, denies a right or fixes some legal relationship, usually at the

consummation of an administrative process.'"  *Meredith v. Fed. Mine Safety and Health Review

Comm'n*, 177 F.3d 1042, 1047 (D.C. Cir. 1999); *see also Chicago & Southern Air Lines v.

Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948).

      Plaintiffs implicitly acknowledge as much by citing 5 U.S.C. § 702 as their basis for

claiming a waiver of sovereign immunity in this action.  Opp'n (ECF No. 66) at 26.  That section

provides that "[a] person suffering legal wrong because of agency action, or adversely affected or

aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review

thereof."  5 U.S.C. § 702.  "An 'agency action' is an agency's determination of rights and

obligations . . . by way of a 'rule, order, license, sanction, relief, or the equivalent or denial thereof,

or failure to act[.]'"  *Am. Forest Res. Council v. United States*, 77 F.4th 787, 804 (D.C. Cir. 2023).

Plaintiffs cannot rely on section 702 to claim a waiver of sovereign immunity while at the same

time characterizing their claims as a challenge to the entire course of the agency review process.

*See id*. at 805 (citing cases rejecting the argument that a plaintiff can challenge an overall agency process as opposed to identifiable agency action).

Instead, Plaintiffs must identify "agency action" that adversely impacted them and then exhaust administrative remedies by appealing to the full Commission to obtain a final order that would then be reviewable, albeit in the D.C. Circuit, not this Court.  In short, Plaintiffs' claims here are subject to the clear mandate in 47 C.F.R. § 1.115 that "[a]ny person aggrieved by any action taken pursuant to delegated authority may file an application requesting review of that action by the Commission" and in 47 U.S.C. § 155(c)(7), which provides that when a party objects to action taken on delegated authority, it must file an application for review by the full Commission as "a condition precedent to judicial review."  47 U.S.C. § 155(c)(7).  Plaintiffs cannot circumvent these provisions by characterizing their claims regarding a discrete license-transfer application as a collateral attack on an agency "process."  To the extent they claim not to challenge any "FCC order" related to that process (Opp'n (ECF No. 66) at 40) then they have no reviewable claim.

The case law cited by Plaintiffs is not to the contrary.  Plaintiffs rely principally on two cases, *McNary v. Haitian Refugee Center, Inc*., 498 U.S. 479 (1991), and *Mace v. Skinner*, 34 F.3d 854 (9th Cir. 1994), but neither is applicable here.  *McNary* was a class action challenging the manner in which the Immigration and Naturalization Service implemented the Special Agricultural Worker program, not a challenge to the denial of a specific application under that program.  The Court held that the district court had jurisdiction because the applicable statute only precluded review of individual application denials not a challenge to the unconstitutional practices and policies used by the agency in processing all such applications.  *McNary,* 498 U.S. at 492.  *Mace* likewise did not involve a challenge "on the merits of [an] individual situation" but involved "a broad challenge to allegedly unconstitutional [agency] practices."  *Mace*, 34 F.3d at 859.

Here, in contrast, Plaintiffs challenge is to the alleged unequal treatment they received with respect to a specific license transfer application, not to the practices and policies by which the Commission reviews all such applications.  Plaintiffs stated before the administrative law judge that "the applications were unlawfully designated for a hearing" and that they "remain[ed] prepared to vindicate [their] rights as necessary, including through participation in the hearing and attendant discovery process."  When the administrative law judge rejected that position in the June 2023 order terminating the hearing proceedings, nothing prevented Plaintiffs from continuing to pursue their claims through the applicable administrative process by applying for review by the full Commission of the Hearing Designation Order and the administrative judge's June 2023 order, obtaining a final order from the Commission, and challenging that order in the D.C. Circuit.  Plaintiffs' arguments to the contrary are largely straw men that seek to deflect from the issue.

Plaintiffs assert that the Hearing Designation Order was not a final order subject to judicial review, but that does not absolve them from the requirement to exhaust administrative remedies by seeking review by the full Commission.  The non-final nature of the Hearing Designation Order did not preclude them from completing the administrative process to obtain a final order.

Their position before the administrative law judge and in this litigation also undermines any suggestion by Plaintiffs that it would have been futile to exhaust administrative remedies after the merger deal terminated.  Opp'n (ECF No. 66) at 42.  As already established, Plaintiffs asserted before the administrative law judge that their claims remained live even after termination of the merger deal.  In this litigation, moreover, Plaintiffs disavow any monetary remedy from the Federal Defendants for past injury and claim to seek only prospective relief to prevent "imminent future harm."  *Id.* at 25, 29, 41.  Because Plaintiffs insist that their claims against the Federal Defendants are solely forward-looking, they cannot claim that further administrative exhaustion would have

been futile after the merger agreement terminated. Plaintiffs wrongly assert that the Federal

Defendants are taking a position that would deny them meaningful judicial review of their claims.

*Id*. at 42. A judicial forum is available to Plaintiffs—the D.C. Circuit—subject to their satisfying

the statutorily-required administrative exhaustion as "a condition precedent to judicial review." 47

U.S.C. § 155(c)(7).

## II. Count VIII Does Not Fall Within Non-Statutory Jurisdiction Under The *Leedom Exception* And Also Fails to State A Claim.

In count VIII, Plaintiffs contend that the Media Bureau exceeded its authority under 47

U.S.C. § 310(d) by allegedly failing to limit their "review of Standard General's license-transfer

application to Standard General, not other possible buyers," which Plaintiffs allege amount to ultra

vires agency action. Am. Compl. (ECF No. 36) ¶¶ 389, 394. This claim does not fall within the

three-part test for the narrow exception in *Leedom v. Kyne*, 358 U.S. 184 (1958), for several

reasons.

First, as established in the Federal Defendants' motion, the statutory preclusion of district

court review is express, not implied (ECF No. 47-1 at 27), and Plaintiffs do not contend otherwise.

They instead advance a circular argument that their failure to comply with administrative

exhaustion requirements, and the absence of a final order from the Commission that resulted from

that failure, somehow removes this case from the purview of the Hobbs Act. Opp'n (ECF No. 66)

at 113. But the exhaustion requirement of 47 U.S.C. § 155(d)(7) operates in conjunction with the

exclusive jurisdiction provision of 28 U.S.C. § 2342(1) to establish a statutory bar to district court

jurisdiction that a plaintiff cannot circumvent by ignoring the exhaustion component of the

statutory scheme. Otherwise, the narrow *Leedom* exception would become the norm rather than

what it is—a "'Hail Mary pass.'" *Changji Esquel Textile Co. v. Raimondo*, 40 F. 4th 716, 722

(D.C. Cir. 2022).

Second, as established above, Plaintiffs had an alternative available procedure for review of any claim that the Media Bureau violated section 310(d) in connection with its review of their license-transfer application—namely, completing the administrative exhaustion process to obtain a final order by the Commission and then seeking review in the D.C. Circuit. Plaintiffs' argument that they were denied meaningful review because the "the ship had sailed on the deal" before their objections could be heard by the Commission (Opp'n (ECF No. 66) at 114-15) is inconsistent with their position in this litigation—asserted in an attempt (albeit unsuccessful) to avoid dismissal for lack of standing—that they are not seeking to redress past injury but seeking only prospective relief (*id.* at 28-29). Plaintiffs thus have failed to establish that an alternative procedure for review to advance their claims was unavailable to them.

Third, Plaintiffs have failed to plausibly plead that the Media Bureau acted contrary to a "specific prohibition" in section 310(d) that was "clear and mandatory." This pleading deficiency also requires dismissal of count VIII under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. Mot. (ECF No. 47-1) at 28 n.6.

Setting their conclusory allegations aside, Plaintiffs have specifically pled only that the Media Bureau submitted an information request in September 2022 for information about alternative transactions. Am. Compl. (ECF No. 36) ¶¶ 168, 395. As established in the Federal Defendants' motion, and as not disputed by Plaintiffs, nothing in section 310(d) prohibits such an information request. Mot. (ECF No. 47-1) at 28. Plaintiffs instead assert that the mere fact that such a request was made gives rise to an inference that the Media Bureau made the request "to *consider* Mr. Allen as a potential alternative buyer" as opposed to seeking information that might be relevant to its public interest analysis of the Standard General-TEGNA transaction that was before it. Opp'n (ECF No. 66) at 115. But the *Leedom* exception does not deal in alleged

inferences—to satisfy the third element, the agency must "plainly act[] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Changji*, 40 F. 4th at 722. Because section 310(d) does not prohibit the Media Bureau from submitting an information request regarding alternative transactions, Plaintiffs have failed to plead that the agency "plainly" acted contrary to a specific statutory prohibition and thus cannot avail themselves of the *Leedom* exception to avoid dismissal of count VIII.

Separately, Plaintiffs have failed to state a claim under Rule 12(b)(6) because the inference they advance "stops short of the line between possibility and plausibility" and thus is insufficient to plead that the statute was violated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have not pled that there can be no legitimate basis for the Media Bureau to request information on alternative transactions in assessing the public interest of the transaction before it. And, contrary to Plaintiffs' assertion, it is not the Federal Defendants obligation on a motion to dismiss to "proffer" a reason for that request. Instead, it is Plaintiffs' obligation to plead facts that could raise a plausible inference that no legitimate basis for such a request exists. Although Plaintiffs include in count VIII a quote from their own filing in the administrative process that such a request was "'unprecedented for a broadcast transaction,'" that conclusory allegation provides no basis for the Court to infer that there was no legitimate basis for that request. Am. Compl. (ECF No. 36) ¶ 396. Accordingly, count VIII should be dismissed for this additional reason.

## III. Plaintiffs Have Failed To Plausibly Plead That The Federal Defendants Acted With Discriminatory Animus Or Conspired Against Plaintiffs.

Plaintiffs allege that the Federal Defendants intentionally discriminated against them by issuing the Hearing Designation Order and did so by conspiring with private entities that submitted objections to the deal as part of the license transfer approval process. But, as demonstrated in Federal Defendants' motion, *see* Mot. (ECF No. 47-1) at 28-38, Plaintiffs' claims of discrimination

against the Federal Defendants rest entirely on speculation and implausible inferences. As a result, those claims (counts I, III and IV) should also be dismissed under Rule 12(b)(6) for failure to state a claim. Defendants refer the Court to the detailed discussion of this issue in their motion and briefly address Plaintiffs' limited arguments in opposition below.

### A.    Plaintiffs Failed to Plead Discrimination Attributable to the Federal Defendants.

Plaintiffs assert that the Federal Defendants "do not dispute that Plaintiffs have alleged discriminatory impact, nor could they." Opp'n (ECF No. 66) at 58. But in their Amended Complaint, Plaintiffs do not assert that any policy or procedure of the Commission resulted in a "discriminatory impact" and, indeed, the phrase "discriminatory impact" nowhere appears in the pleading. To the extent the Federal Defendants' motion did not address the issue of discriminatory impact, it is because it has not been pled.

In their Opposition, Plaintiffs attempt to divert attention from their failure to plead racial discrimination attributable to the Federal Defendants by pointing to the Commission's policy to promote diversity generally in media ownership. *Id*. at 54-56. But nothing in that general policy supports Plaintiffs' claim that the Commission's "license-transfer review" in this case "was 'in fact, motivated by discriminatory intent and has a racially discriminatory impact." *Id*. at 57. Unlike *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 218 (2023), on which Plaintiffs rely (Opp'n (ECF No. 66) at 53, 54-55) and which challenged broad policies of considering race in college entrance applications, Plaintiffs here challenge the consideration of a single discrete transaction involving the transfer of broadcast licenses.

Plaintiffs point to statements by "[o]bjectors" to the transaction, Opp'n (ECF No. 66) at 56, but do not allege that such statements were made or endorsed by the Federal Defendants. Plaintiffs also contend that because the Commission allegedly "views Mr. Allen as a favored

owner," it used "Mr. Kim's race as a negative." *Id.* That simply does not follow; allegations that one party has been favored in other transactions (even if true), do not demonstrate that a different party, in a different transaction, has been discriminated against. And Plaintiffs fail to allege any other facts to suggest the Federal Defendants used Mr. Kim's race against him in the agency's analysis of the license transfer applications at issue in this case. Unadorned speculation is not sufficient to show an equal protection violation. *Bois v. Marsh*, 801 F.2d 462, 466 n.5 (D.C. Cir. 1986) (noting, in the equal protection context, "vague allegations . . . are insufficient to state a claim.").

Plaintiffs further argue that they have sufficiently pled a plausible inference of discrimination under the factors laid out in *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 (1977). *See* Opp'n (ECF No. 66) at 57-64. Those factors include: (1) "a clear pattern unexplainable on grounds other than race"; (2) the decision's "historical background," including any "official action taken for invidious purposes," "the specific sequence of events leading up to the challenged decision," and any procedural or substantive departures in reaching the decision; (3) and the legislative history, including any "contemporary statements by members of the decisionmaking body, minutes of the meetings, or reports." *Village of Arlington Heights*, 429 U.S. at 268. The Amended Complaint fails to plead allegations that plausibly support an inference of racial discrimination under those factors. First, as explained in the Federal Defendants' motion ((ECF No. 47-1) at 28-38), Plaintiffs have not pled "a clear pattern unexplainable on grounds other than race." On the contrary, the allegations in the Amended Complaint are entirely consistent with the conclusion that the administrative process involved, not racial discrimination, but consideration of public interest factors submitted by interested parties, including Plaintiffs. *See, e.g.*, Am. Compl. (ECF No. 36) ¶¶ 123–25, 175-181, 210, 272, 314.

Second, the Amended Complaint fails to plead any "historical background," including any "official action taken for invidious purposes," "the specific sequence of events leading up to the challenged decision" that show an inference of racial discrimination. The fact that other transactions were approved, but this one was referred to a hearing, *see* Opp'n (ECF No. 66) at 59, does not raise an inference that the referral was racially motivated. Nor can the statements and actions of others during the proceeding, *id*. at 60, be imputed to the Federal Defendants.

Third, the Amended Complaint is devoid of any "contemporary statements by members of the decisionmaking body, minutes of the meetings, or reports" that evidence a discriminatory animus. *Arlington Heights,* 429 U.S. at 268. The stated reasons for referral in the Hearing Designation Order—the only relevant statements of the decisionmakers—focus on the significant public interest concerns raised by the transaction. They are entirely devoid of statements having anything to do with considerations of race or which could support a claim of racial animus—as Plaintiffs appear to concede. Opp'n (ECF No. 66) at 60. Plaintiffs again try to impute statements made by third parties to the Federal Defendants, *id*., but those statements do not suggest that the Federal Defendants were responsive to racial considerations. In sum, even viewing all the allegations in the Amended Complaint in a favorable light, Plaintiffs "simply failed to carry their burden of proving that discriminatory purpose was a motivating factor." *Vill. of Arlington Heights*, 429 U.S. at 270.

Next Plaintiffs argue that they were treated differently from "similarly situated license transfer applicants in the four most recent major broadcast television transactions." Opp'n (ECF No. 66), at 65. But as the Federal Defendants have explained, Mot. (ECF No. 47-1) at 33-34, in doing so they are comparing distinctly dissimilar transactions. The four transactions to which Plaintiffs point are each smaller and less complex than the $8.1 billion transaction Plaintiffs

submitted for approval, and two were reviewed under prior Commission leadership. Am. Compl. (ECF No. 36) ¶ 9 (listing deals valued at $2.65 billion, $3.1 billion, $2.8 billion, and $925 million); Mot. (ECF No. 47-1) at 34.  As a result of these differences, the transactions identified in the Amended Complaint are not sufficiently similar to raise a plausible inference of disparate treatment.  *See Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996); *see also Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (explaining that the allegedly comparable situations must be "nearly identical"); *Ekwem v. Fenty*, 666 F. Supp. 2d 71, 78-79 (D.D.C. 2009) (conclusory allegations insufficient).  And to the extent Plaintiffs seek to bolster their contentions by relying in their opposition on subsequent transactions not set forth in the Amended Complaint, Opp'n (ECF No. 66) at 19-22, "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 34 (D.D.C. 2015).

**B.    Plaintiffs Failed to State a Claim for the Conspiracy-Based Claims.**

In counts III and IV of their Amended Complaint, Plaintiffs allege that the Federal Defendants engaged in a race-based conspiracy to deprive Plaintiffs of the equal protection of the laws and their privileges and immunities.  Am. Compl. (ECF No. 36) ¶¶ 353, 359.  But Plaintiffs have failed to set forth facts that could plausibly support any agreement between officials at the Commission and any of the private party Defendants to engage in racial discrimination.

Plaintiffs allege that "Defendants expressly or tacitly entered into an agreement to work together to thwart the Standard General-TEGNA deal," but they do not plead specific facts to raise a plausible inference that the Federal Defendants conspired with any private party Defendant.  *Id.* ¶ 353.  The paragraphs of the Amended Complaint they cite to support the existence of a conspiracy do no more than complain that Mr. Kim was treated differently than other applicants, *id.* ¶ 311,

and otherwise set forth conclusory allegations of discrimination, *id.* ¶¶ 312-313, 353, 359—they do not allege any facts that could plausibly support the existence of any agreement involving the Federal Defendants with the private party Defendants to discriminate against Plaintiffs. And to the extent Plaintiffs contend that Commission officials conspired among themselves, that is insufficient to state a claim. *Wilson,* 2021 U.S. Dist. LEXIS 11701, at *19-20.

An agency's conduct and oversight of an administrative proceeding is not a "conspiracy" with parties who make submissions in that proceeding in accordance with agency procedures. Nor do allegations referring to a handful of meetings or communications involving either Chairwoman Rosenworcel or Media Chief Saurer and one or more private party Defendants at various points in the Commission's review process raise an inference of a conspiracy, much less one based on racial animus. The private party Defendants had an interest in the review process, they and exercised their right to file objections in accordance with agency procedures. In that context, there was nothing unusual about asking for, and obtaining, meetings with the Federal Defendants to follow up on the concerns expressed in their written filings. See *McAlister*, 2023 U.S. Dist. LEXIS 85067, at *20 ("Vague allegations of meetings and discussions are not enough."). Moreover, the private defendants are interested in other matters before the Commission, so the mere occurrence of a meeting does not give rise to a plausible inference of a conspiracy when there are many other explanations for the communications. *Iqbal*, 556 U.S. at 679 (allegations that "do not permit the court to infer more than the mere possibility of misconduct" are insufficient).

\*    \*    \*

- 23 -

## CONCLUSION

For the foregoing reasons, and those set forth in the Federal Defendants' motion, counts I and VIII should be dismissed in their entirety, counts III and IV should be dismissed against the Federal Defendants, and the Federal Defendants should be dismissed as parties to this action.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    */s/ Jeremy S. Simon*
     JEREMY S. SIMON, D.C. Bar #447956
     Assistant United States Attorney
     601 D. Street, N.W.
     Washington, D.C. 20530
     (202) 252-2528
     Jeremy.Simon@usdoj.gov

*Attorneys for the United States of America*