# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SGCI HOLDINGS III LLC AND SOOHYUNG KIM,<br><br>                 Plaintiffs,<br><br>       v.<br><br>FEDERAL COMMUNICATIONS COMMISSION, et al.,<br><br>                 Defendants. | Case No. 24-1204-RC |

**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS DISH NETWORK CORPORATION AND CHARLES ERGEN**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   ARGUMENT ........................................................................................................... 2

    A.    This Court Lacks Subject Matter Jurisdiction ................................. 2

    B.    Plaintiffs' Claims are Barred by Issue Preclusion ................................. 6

    C.    Plaintiffs' Claims are Barred by the First Amendment. ....................................... 10

    D.    Plaintiffs Otherwise Fail to Plead Plausible Claims Against DISH and Ergen. ... 14

        1.    Civil Rights Counts.......................................................................... 15

        2.    Tortious Interference Counts. .................................................................. 17

        3.    Civil Conspiracy Count.......................................................................... 18

    E.    This Court Should Deny Leave to Amend.............................................................. 18

III.  CONCLUSION...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta Orellana v. CropLife Int'l,*
    711 F. Supp. 2d 81 (D.D.C. 2010) ..........................................................13

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
    486 U.S. 492 (1988) ..............................................................................13

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC,*
    103 F.4th 765 (11th Cir. 2024) ..............................................................11

*Andrx Pharms., Inc. v. Biovail Corp. Int'l,*
    256 F.3d 799 (D.C. Cir. 2001) ..............................................................13

*\*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................14, 15

*Astoria Fed. Sav. & Loan Assn. v. Solimino,*
    501 U.S. 104 (1991) ................................................................................7

*Banneker Ventures, LLC v. Graham,*
    798 F.3d 1119 (D.C. Cir. 2015) ............................................................13

*Barr v. Sec. & Exch. Comm'n,*
    114 F.4th 441 (5th Cir. 2024) .................................................................5

*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263 (1993)...............................................................................16

*Carr v. Brown,*
    395 A.2d 79 (D.C. 1978) .......................................................................18

*CE Design, Ltd. v. Prism Bus. Media, Inc.,*
    606 F.3d 443 (7th Cir. 2010) ..................................................................5

*City of Tacoma v. Taxpayers of Tacoma,*
    357 U.S. 320 (1958)................................................................................4

*Coastal States Mktg., Inc. v. Hunt,*
    694 F.2d 358 (5th Cir. 1983) ................................................................13

*Cromwell v. County of Sac,*
    94 U.S. 351 (1876)..................................................................................7

*In re Ctr. For Biological Diversity*,
    53 F.4th 665 (D.C. Cir. 2022) ...................................................................................9

*\*E. Sav. Bank, FSB v. Papageorge*,
    31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) ...............14

*Free Enter. Fund v. Public Co. Accounting Oversight Bd. ("PCAOB")*,
    561 U.S. 477 (2010) ..................................................................................................4

*General Elec. Co. v. Jackson*,
    610 F.3d 110 (D.C. Cir. 2010) ..................................................................................4

*James Madison Ltd. by Hecht v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) ................................................................................18

*Jefferson County School Dist. No R-1 v. Moody's Investor's Svcs. Inc.*,
    175 F.3d 848 (10th Cir. 1999) ................................................................................11

*Jefferson-11th St., LLC v. District of Columbia*,
    2020 WL 3035038 (D.D.C. June 5, 2020) ..............................................................13

*Jews for Jesus, Inc. v. Jewish Cmty. Rel. Council of N.Y., Inc.*,
    968 F.2d 286 (2d Cir. 1992) ..............................................................................11, 12

*Kreuzer v. Am. Acad. of Periodontology*,
    735 F.2d 1479 (D.C. Cir. 1984) ..............................................................................15

*Mace v. Skinner*,
    34 F.3d 854 (9th Cir. 1994) ......................................................................................4

*McNary v. Haitian Refugee Ctr, Inc.*,
    498 U.S. 479 (1991) ..................................................................................................4

*Merritt v. Shuttle*,
    245 F.3d 182 (2d Cir. 2001) ......................................................................................4

*\*N.A.A.C.P. v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ......................................................................................10, 11, 12

*Nanko Shipping, Guinea v. Alcoa, Inc.*,
    330 F. Supp. 3d 439 (D.D.C. 2018) ..................................................................16, 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ................................................................................................13

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
    588 U.S. 1 (2019) ......................................................................................................5

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ...................................................................................................13

*R.A.V. v City of St. Paul*,
   505 U.S. 377 (1992) .................................................................................................12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   587 F. Supp. 2d 27 (D.D.C. 2008) ..........................................................................15

*Rollins v. Wackenhut Servs., Inc.*,
   703 F.3d 122 (D.C. Cir. 2012) ................................................................................18

*Smith v. Trump*,
   No. 21-CV-02265 (APM), 2023 WL 417952 (D.D.C. Jan. 26, 2023), *aff'd*,
   No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023) ...................................17

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*,
   2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) .........................................................12

*Telecomms. Resch. and Action Ctr. ("TRAC") v. FCC*,
   750 F.2d 70 (D.C. Cir. 1984) .............................................................................5, 6, 9

*True Health Chiropractic Inc. v. McKesson Corp.*,
   2020 WL 7664484 (N.D. Cal. Dec. 24, 2020) ..........................................................5

*U.S. v. Any and All Radio Station Transmission Equip.*,
   204 F.3d 658 (6th Cir. 2000) ....................................................................................4

*United Broth. of Carpenters v. Scott*,
   463 U.S. 825 (1983) .................................................................................................16

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................................................12

*Williams v. Chugach Alaska Corp.*,
   210 F. Supp. 3d 25 (D.D.C. 2016) ..........................................................................18

*Wisconsin v. Mitchell*,
   508 U.S. 476 (1993) .................................................................................................11

*Wyly v. Weiss*,
   697 F.3d 131 (2d Cir. 2012) ......................................................................................8

**Statutes**

42 U.S.C. § 1985 ............................................................................................15, 16, 17

42 U.S.C. § 1986 .......................................................................................................17

**Other Authorities**

U.S. Constitution, First Amendment.......................................................................... *passim*

Local Civil Rule 7(i) .............................................................................................2, 18

Fed. R. Civ. P. 15(a) ..................................................................................................18

## I.    PRELIMINARY STATEMENT

In opposition to Defendants' motions to dismiss, Plaintiffs submit a Consolidated
Memorandum of Points and Authorities (Doc. 66, hereinafter the "Omnibus Opp.") containing
one hundred and forty pages full of obfuscation and misdirection.[1]  Plaintiffs persist in
attempting to advance claims premised on the existence of an alleged vast racist conspiracy,
notwithstanding that their Amended Complaint concedes that each Defendant's dislike for their
proposed transaction was firmly rooted in non-discriminatory motives.  For DISH and Ergen,
Plaintiffs concede that Standard General intended to use the transaction to raise the prices for
their distribution of the TEGNA television stations.  Plaintiffs plead no vestige of racial animus
by DISH and Ergen and provide no reasonable basis on which racial animus might be inferred.
Plaintiffs' opposition papers do nothing more than confirm that this Court should dismiss DISH
and Ergen from this case with prejudice, and without leave to replead.

First, this Court lacks subject matter jurisdiction over this action, which directly
challenges a Hearing Designation Order ("HDO") issued by the FCC's Media Bureau.  The D.C.
Circuit Court of Appeals has exclusive jurisdiction over challenges to FCC orders.  The HDO is
presumptively valid, and this Court may not entertain a collateral attack on that administrative
agency order.  Second, the claims are barred by issue preclusion.  In ruling on Standard
General's mandamus petition, the D.C. Circuit soundly rejected Plaintiffs' assertions that the
FCC improperly delayed in issuing a decision on the license-transfer application and that HDO
was unlawful and futile.  Third, the First Amendment protects speech on matters of public
interest, as well as petitioning activity, which immunizes DISH and Ergen from liability on

---

[1] Capitalized and defined terms have the same meaning as in the Statement of Points and
Authorities in Support of Defendants DISH Network Corporation and Charles Ergen's Motion to
Dismiss Plaintiffs' Amended Complaint (Doc. 55, hereinafter "DISH MTD").

Plaintiffs' claims.  Fourth, Plaintiffs fail to plead plausible claims for relief against DISH and Ergen.

Finally, this Court should deny Plaintiffs' request for leave to replead.  Plaintiffs have not proffered a proposed second amended complaint, which is required under this Court's Local Civil Rule 7(i), and do not articulate how they might possibly cure the myriad deficiencies in their existing pleadings.  Leave to replead would be futile.

## II.    ARGUMENT

### A.    This Court Lacks Subject Matter Jurisdiction

Plaintiffs do not dispute that, pursuant to the Hobbs Act, the D.C. Circuit Court of Appeals has exclusive jurisdiction over challenges to FCC orders.  Omnibus Opp. at 38.  They also do not dispute that they are foreclosed from launching a collateral attack on an agency order. *Id.* at 41.  In a vain effort to circumvent these rules, Plaintiffs argue (1) their claims do not attack or seek to invalidate matters decided in the HDO; (2) the HDO is not a final order subject to the Hobbs Act; and (3) application of the Hobbs Act would foreclose meaningful judicial review. *Id.* at 38-44.  None of these arguments holds water.  This Court lacks subject matter jurisdiction over Plaintiffs' Amended Complaint, which requires that the case be dismissed.  *See* DISH MTD at 22-24; *see also* Doc. 56-1 at 22-29 (Allen Defendants' Memorandum in Support of Their Motion to Dismiss the Amended Complaint); Doc. 49-1 at 24-26 (Defendant Common Cause's Statement of Points and Authorities).

*Plaintiffs directly attack and seek to invalidate the HDO*.  Plaintiffs assert that their claims are not centered on the HDO and do not challenge or seek to invalidate the HDO *per se*. Omnibus Opp. at 24-25, 38-39.  Instead, they contend that the claims are about "the entire course" of the FCC proceedings.  *Id.*.  They claim to bring a broad challenge to the Defendants' unlawful actions "over the whole course of the FCC proceedings." *Id.* at 42.  These assertions

are firmly belied by the pleadings in the Amended Complaint, which characterize the HDO as

unlawful, frivolous, and a "sham."  *See* Doc. 36 (hereinafter the "Am. Comp.") ¶¶ 225 ("The

HDO had no basis in law and made no sense.  There was no issue of fact to be tried."); 226

("The HDO also violated FCC rules, which prohibit the Media Bureau from taking any action

that conflicts with prior rulings of the full Commission."); 317 ("The Media Bureau's reasoning

in the HDO was entirely pretextual and a sham . . .  The straw objectors' objections were

objectively baseless under binding FCC precedent and lacked sufficient evidentiary support, and

the HDO's reasoning impermissibly conflicted with prior rulings of the FCC...")

 Plaintiffs furthermore describe the HDO as the watershed event that allegedly violated

Plaintiffs' rights and caused their damages, acting as the "death knell" for the merger deal.  They

allege, *inter alia*, that (i) "Chairwoman Rosenworcel had her staffer kill the deal with a pocket

veto without ever putting it before the other Senate-confirmed FCC commissioners" (Am. Comp.

¶ 4); (ii) "[t]hat 'Hearing Designation Order' (or 'HDO') was a pocket veto" that "killed the

deal" (*id.*, ¶ 11); (iii) the FCC "killed the deal by pocket veto with the HDO" (*id.*, ¶ 22); and

(iv) "[t]he HDO sounded the death knell for the Standard General-TEGNA transaction" (*id.*,

¶ 229).  In their brief, Plaintiffs repeat and reaffirm their assertion that the HDO was "the final

pretext" for an "unlawful unraveling of the … merger."  Omnibus Opp. at 39.

 Plaintiffs' damages claims flow from termination of the merger transaction that they

claim the HDO "killed."  As damages, Plaintiffs seek the $136 million break-up fee they paid

TEGNA, billions of dollars of benefits that they claim would have accrued had they completed

the transaction, and tens of millions of dollars in legal and advisory fees expended on the

transaction.  *See, e.g.*, Am. Comp. ¶¶ 350, 356, 363, 373, 381, 387.

These pleadings demonstrate that Plaintiffs' claims are "inextricably intertwined" with their attacks on this specific HDO, which is subject to the exclusive jurisdiction of the Court of Appeals. *See Merritt v. Shuttle*, 245 F.3d 182, 187 (2d Cir. 2001) (statutes that vest judicial review of administrative orders exclusively in the courts of appeals also preclude district courts from hearing claims that are "inextricably intertwined" with the review of an administrative order). All objections to the FCC's HDO must be made in the Court of Appeals or not at all. *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 339 (1958).

The cases Plaintiffs cite in support of their arguments for jurisdiction in this Court are wholly inapposite. Plaintiffs primarily rely on cases involving challenges to the constitutionality of overarching agency procedures and rules that do not undermine the merits of specific administrative determinations. *See, e.g.*, *McNary v. Haitian Refugee Ctr, Inc.*, 498 U.S. 479 (1991) (challenging INS procedures as a whole, attacking the manner in which the entire program was implemented, and not any specific deportation order); *General Elec. Co. v. Jackson*, 610 F.3d 110, 126 (D.C. Cir. 2010) (due process challenge to CERCLA's unilateral administrative order regime, which would not invalidate any specific order); *Free Enter. Fund v. Public Co. Accounting Oversight Bd. ("PCAOB")*, 561 U.S. 477, 490 (2010) (challenge to the constitutionality of the PCAOB); *Mace v. Skinner*, 34 F.3d 854 (9th Cir. 1994) (constitutional challenge that was not based on the merits of any particular pilot's revocation order). Plaintiffs also cite an FCC enforcement case involving a defendant's constitutional challenge to an FCC regulation. *See U.S. v. Any and All Radio Station Transmission Equip.*, 204 F.3d 658, 667 (6th Cir. 2000) (holding that the defendant in a district court enforcement action brought by the FCC may invoke a defense that the FCC regulation at issue is unconstitutional). And, Plaintiffs cite a case addressing whether the federal courts must interpret statutes in accordance with FCC

4

statutory interpretation orders. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 8-9 (2019) (FCC order interpreting provisions within the Telephone Consumer Protection Act).

Here, in contrast to those cases, Plaintiffs assail a specific HDO. Notably, they do not challenge the way that the FCC generally handles license-transfer applications. They seek to have this one HDO adjudicated a "sham," unlawful, and nonsensical.

For purposes of this action, this Court must presume the validity of the HDO. *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010) (district courts must presume agency actions are "valid"); *Barr v. Sec. & Exch. Comm'n*, 114 F.4th 441, 447 (5th Cir. 2024) ("Agency decisions are presumptively valid. . .") (internal quotation and citation omitted); *True Health Chiropractic Inc. v. McKesson Corp.*, 2020 WL 7664484, *6 (N.D. Cal. Dec. 24, 2020) (district courts must treat FCC orders as "authoritative" and may not "question the[ir] validity"). Plaintiffs do not disagree with this authority. Instead, they try to skirt it by claiming that they are not attacking the validity of the HDO *per se*, because they are not seeking to overturn it. Omnibus Opp. at 39. But they nevertheless repeatedly impugn the HDO. This Court may not entertain any of Plaintiffs' assertions that the HDO was (i) pretextual; (ii) a pocket veto; (iii) unlawful; (iv) frivolous; and (v) a sham (*see* Am. Comp. ¶¶ 22, 225, 226, 317), which defeats Plaintiffs' claims.

*Exclusive Jurisdiction Lies in the Court of Appeals.* Plaintiffs argue that the Hobbs Act does not apply because the HDO is not a final FCC order. Omnibus Opp. at 39-40. But, finality is not a rigid requirement. Finality is applied in a flexible and pragmatic way. *See Telecomms. Resch. and Action Ctr. ("TRAC") v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) (the D.C. Circuit had exclusive jurisdiction over a claim of unreasonable delay by the FCC even though the claim did

not involve a "final" action). Here, the lack of a final FCC order lies at the Plaintiffs' feet. It is a result of their failure to exhaust administrative remedies. *See* Doc. 47-1 at 24 (Memorandum in Support of Federal Defendants' Motion to Dismiss Amended Complaint) ("FCC MTD"). Under the pragmatic approach set forth in *TRAC*, the HDO should be treated as final for purposes of Plaintiffs' litigation.

*The FCC's Alleged Misconduct Does Not Evade Review.* Alternatively, Plaintiffs argue that this Court should hear their claims, even if the Hobbs Act applies, because the FCC's alleged misconduct otherwise would evade review. Omnibus Opp. at 42-43. They assert that the FCC's "pocket veto" HDO was designed to foreclose judicial review of their misconduct claims. *Id*. This assertion is factually wrong. As the Federal Defendants show, Plaintiffs had a course to finality in the administrative process that they failed to pursue. FCC MTD at 23-25.

Plaintiffs' claims against DISH and Ergen should be dismissed for lack of subject matter jurisdiction. Plaintiffs' direct challenge to the HDO may not be heard in this Court. The D.C. Circuit Court of Appeals has exclusive jurisdiction over Plaintiffs' claims, which challenge an FCC order. Plaintiffs are foreclosed from launching a collateral attack on the HDO here.

### B.    Plaintiffs' Claims are Barred by Issue Preclusion

All of the claims in Plaintiffs' Amended Complaint hinge on their assertions that the FCC issued a frivolous and pretextual HDO and wrongfully ran out the clock on their merger transaction. Plaintiffs already lost on those contentions at the D.C. Circuit and may not relitigate the same issues in this Court. Issue preclusion bars Plaintiffs' claims. *See* DISH MTD at 24-25.

In ruling on Standard General's mandamus proceeding, the D.C. Circuit flatly rejected Plaintiffs' arguments that the FCC unreasonably delayed in acting on the license-transfer application and that the HDO was a "sham." The D.C. Circuit held that Plaintiffs "have not demonstrated that respondent has unreasonably delayed in acting on their applications . . . Nor

have they shown that respondent has a 'crystal clear' duty to rule on their applications without resort to a hearing."  Doc. 55-12 (DISH MTD Ex. 12).[2]

The determination of a question directly involved in one action is conclusive of that same question in a second action.  *Cromwell v. County of Sac,* 94 U.S. 351, 354 (1876).  The D.C. Circuit's order resolving these issues forecloses Plaintiffs' claims in this action.  "[A] losing litigant deserves no rematch after a defeat fairly suffered ..."  *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 107 (1991).

The D.C. Circuit's mandamus order bars Plaintiffs from relitigating the questions of whether the HDO was legally warranted or whether the FCC unreasonably delayed its consideration of their application.  In terms of unreasonable delay, Plaintiffs allege in the Amended Complaint that: (i) the "amount of time was unprecedented for this type of transaction" (Am. Comp. ¶ 10); (ii) "the application languished in the FCC's dragged-out sham process until Standard General's merger agreement expired" (*id.*, ¶ 12); (iii) "the Standard General-TEGNA transaction unraveled at the FCC on an unprecedented timeline" (*id.*, ¶ 119); and (iv) "Defendants pursued a strategy . . . to impose inordinate delay" (*id.*, ¶ 323).  As set forth above, all of Plaintiffs' alleged damages flow from their claims of unreasonable delay at the FCC, and a "wrongful" HDO, which they say ran out the clock on the merger deal.  *See* Am. Comp. ¶¶ 350, 356, 363, 373, 381, 387.  All of these contentions are barred by issue preclusion.

*This Action Raises Identical Issues Decided by the D.C. Circuit.*  In order to avoid issue preclusion, Plaintiffs assert that there is no identity of issues between the mandamus petition and this case, because Plaintiffs assert different legal theories in this action.  Omnibus Opp. at 51.

---

[2] Plaintiffs concede, as they must, that the D.C. Circuit denied mandamus on these grounds. Omnibus Opp. at 46.

For purposes of issue preclusion, the legal *theories* do not need to be the same.  So long as identical (or near-identical) issues are subsumed within the legal theories, issue preclusion applies.  *See, e.g.*, *Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012) (determination of adequacy of attorneys' representation of class members in connection with a court's class action fee award precluded class members' subsequent malpractice action).  The issues resolved on the mandamus petition are identical to issues critical to Plaintiffs' claims in this action: (i) whether there was unreasonable delay at the FCC; and (ii) whether the HDO was an unlawful "sham."  Plaintiffs lost on both issues, which defeats their claims.  They may not relitigate the FCC's timeline nor the HDO's purported lack of merit.

  1.  *Plaintiffs Asserted in their Mandamus Petition that the FCC Unreasonably Delayed Decision on their Application*.  In terms of delay, the mandamus petition asserted that the FCC "has chosen a path of unlawful inaction."  Doc. 55-13 at 5 (DISH MTD Ex. 13).  Standard General argued that "the Commission has chosen to kill the deal through calculated inaction on a procedural maneuver."  *Id.* at 19.  And, "the Commission has defaulted on its duty to adjudicate the applications."  *Id.* at 21.  The petition stated that the FCC's "delay in acting is unreasonable and egregious."  *Id.* at 31.  Standard General claimed agency impropriety in connection with the HDO, which would "kill the transaction through delay."  *Id.* at 38.

  2.  *Plaintiffs Asserted in their Mandamus Petition that the HDO was Unlawful*.  In the mandamus petition, Standard General argued that the HDO is "unlawful several times over."  *Id.* at 3.  It asserted that "the issues set for hearing lie outside the agency's statutory authority" and "no material factual disputes on those issues exist that a hearing could resolve."  *Id.* at 4.  Standard General expressly advanced its "pocket veto" theory in seeking mandamus relief from the D.C. Circuit, stating:  "federal law does not permit a pocket veto."  *Id.*  It called the HDO

"indefensible." *Id.* at 18.  The petition asserted that "the Commission lacks *statutory* authority to block a transaction on either of the grounds the hearing is slated to assess." *Id.* at 27 (emphasis in original).

The D.C. Circuit rejected each and every one of these contentions in its mandamus ruling.  Doc. 55-12 (DISH MTD Ex. 12).  The D.C. Circuit found no unreasonable delay. *Id.* The D.C. Circuit also rejected Plaintiffs' assertion that the HDO was frivolous, unlawful or a sham, finding that the FCC did not have a "crystal clear duty" to rule on the license-transfer application without resort to a hearing. *Id.*  Plaintiffs may not relitigate any of these issues in this case.

*The Same Legal Standard Applied in the D.C. Circuit.*  Plaintiffs seek to avoid issue preclusion by asserting that the mandamus petition was decided under a different legal standard. Omnibus Opp. at 52.  But, they utterly fail to articulate how the standards for deciding the issues of "unreasonable delay" and the HDO's legal merits might possibly differ.  In order to obtain a writ of mandamus, Plaintiffs were required to demonstrate "unreasonable agency delay." *TRAC*, 750 F.2d at 80.  They lost on that issue.  Doc. 55-12.  Plaintiffs also were required to demonstrate that the FCC violated a clear legal duty. *In re Ctr. For Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022).  They lost on that issue as well, with the D.C. Circuit rejecting the assertion that the HDO was unlawful.  Doc. 55-12.  The relevant legal standards are exactly the same.

*The Mandamus Ruling Forecloses Plaintiffs' Claims.*  Plaintiffs finally argue that, even if the mandamus ruling could have preclusive effect, DISH and Ergen have not shown that it forecloses their claims.  They assert that the question of whether the Communications Act allowed the FCC's delay or the HDO is not an element of any of their causes of action.  Omnibus Opp. at 52-53.  That is wrong.  As set forth above, Plaintiffs' causation and damages theories

hinge on their assertions of unreasonable delay and that the HDO was an unlawful "sham." *See supra* at 3-5. Plaintiffs contend that unreasonable delay at the FCC, and a "sham" HDO, wrongfully "killed" their transaction, causing them billions of dollars in damages. Am. Comp. ¶¶ 10, 119, 323, 350, 356, 363, 373, 381, 387. If those contentions are excised from this litigation, all of Plaintiffs' claims against DISH and Ergen necessarily fail.

## C.    Plaintiffs' Claims are Barred by the First Amendment.

DISH and Ergen demonstrated that the First Amendment bars Plaintiffs' claims against them. DISH MTD at 25-29. The First Amendment immunizes Defendants from liability for speaking on a matter of public concern, as well as for petitioning the government. Plaintiffs' attempts to argue that this action does not implicate protected speech lack any merit. The First Amendment requires dismissal of the Amended Complaint.

*Speech on a Matter of Public Interest is Immune From Liability.* Pursuant to binding Supreme Court precedent, speech on matters of public interest rests "on the highest rung of hierarchy of First Amendment values" such that the government "may not award compensation for the consequences of non-violent, protected activity." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913, 918 (1982). This rule bars Plaintiffs' claims against DISH and Ergen, because those claims take issue with advocacy at the FCC on the question of whether Plaintiffs' license-transfer application was in the public interest. *See, e.g.*, Omnibus Opp. at 4 ("The Communications Act tasked the FCC with determining whether transferring ownership served 'the *public interest*, convenience, and necessity.'") (emphasis added). Speech concerning Standard General's license-transfer applications, whether contained in FCC filings or communicated during *ex parte* meetings, may not be the subject of a damages claim.

In response, Plaintiffs assert that they seek redress for conduct, not speech. Omnibus Opp. at 118-119 (arguing that the civil rights laws are aimed at conduct, not speech). However,

Plaintiffs fail to identify any specific conduct distinct from protected speech.  Indeed, they concede that the alleged conduct at issue consists of organizing for the purpose of speaking out on a matter of public interest, *i.e.* assembling a coalition of objectors to make statements in FCC filings.  *Id.* at 120.  Otherwise, they vaguely contend that the conduct at issue consists of "the whole course of conduct" during the proceedings at the FCC.  *Id.*

Pursuant to *Claiborne*, the non-FCC Defendants' speech on a matter of public concern cannot serve as the basis for liability.  *Accord Jefferson County School Dist. No R-1 v. Moody's Investor's Svcs. Inc.*, 175 F.3d 848, 857-58 (10th Cir. 1999) (Moody's statements on a matter of public concern may not serve as the basis for tortious interference liability).  In *Jefferson County*, the Tenth Circuit firmly rejected a plaintiff's argument that its claims were "directed at Moody's conduct rather than at its speech."  *Id.* at 857.  A plaintiff may not establish a tort claim by proving merely that a particular motive accompanied protected speech.  *Id.* at 858 (citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 51-53 (1988)).  That is precisely what Plaintiffs attempt to do here, and it requires that the claims be dismissed.

The cases that Plaintiffs cite do not hold otherwise.  For example, in *Wisconsin v. Mitchell*, 508 U.S. 476 (1993), the defendant committed aggravated battery and theft.  He received an enhanced sentence for the racist motivation behind the wrongful conduct.  The Supreme Court held that the enhanced sentence for a bias-inspired crime did not violate the perpetrator's First Amendment rights.  *Id.* at 487-88.  In *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 777 (11th Cir. 2024), there was an act of alleged discrimination distinct from speech, in excluding business owners who were not black females from a contract opportunity.  In *Jews for Jesus, Inc. v. Jewish Cmty. Rel. Council of N.Y., Inc.*, 968 F.2d 286, 296 (2d Cir. 1992), the conduct at issue consisted of a threatened economic boycott, which pressured

11

a hotel to cancel a contract with a claimed religious group.  *Id.*[3]; *see also SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, 2006 WL 2516519, at *7 (S.D.N.Y. Aug. 30, 2006) (leaflets violated federal trademark law by misusing the plaintiffs' marks).  Here, the only conduct at issue is advocacy at the FCC on a matter of public interest.

Plaintiffs also cite *R.A.V. v City of St. Paul*, 505 U.S. 377 (1992), in which the Supreme Court held a city ordinance facially invalid on First Amendment grounds.  The opinion notes that "sexually derogatory 'fighting words,'" among other words, may produce a violation of Title VII's general prohibition against sexual discrimination in employment practices."  *Id.* at 389.  Notably, no fighting words are at issue here.  All of the speech that Plaintiffs assail fits squarely into a protected class at "the highest rung of hierarchy of First Amendment values."  *Claiborne Hardware Co.*, 458 U.S. at 913.

*Petitioning Activity is Immune From Liability.*  The First Amendment right to petition the government also bars Plaintiffs' claims against DISH and Ergen.  The *Noerr-Pennington* doctrine implements the First Amendment right to petition, *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000), holding that individuals who petition the government for redress of grievances are immune from liability for that activity.  *Id.*

Plaintiffs seek to cabin the First Amendment protection of the right to petition the government to the antitrust context.  Omnibus Opp. at 124-27.  But, they provide no legitimate rationale for limiting the doctrine to antitrust.  District courts in this Circuit have held that the right to petition the government immunizes defendants from non-antitrust claims.  DISH MTD at 26-27.  Numerous Circuit Courts agree.  *See id.* at 27-29.  None of the Circuit-level-or-above

---

[3] The court in that case found that the speech was in connection with a private dispute, and not on a matter of public interest.  *Jews for Jesus*, 968 F.2d at 297.

cases that Plaintiffs cite hold otherwise.  Rather, they are either antitrust cases (*e.g.*, *Professional Real Estate Investors*, *Andrx Pharms.*, *Allied Tube, Coastal States Mktg.*)[4] or they take no position on the doctrine's application to other types of claims (*e.g.*, *Octane*, *Graham*, *Jefferson-11th*, *Acosta*).[5]

Plaintiffs contend that, even if *Noerr-Pennington* applies to their claims, they may invoke a "sham" exception, because *Noerr-Pennington* does not "cover activity that was not genuinely intended to influence governmental action."  Omnibus Opp. at 128.  The sham exception has no application here.  Plaintiffs concede that DISH and Ergen had valid concerns about increased retransmission consent fees.  *See, e.g.*, Am Comp. ¶¶ 83, 138.  It cannot be a "sham" to raise genuine concerns with a government agency.

Plaintiffs contend that the sham exception cannot be resolved at the motion to dismiss stage.  But, here, the D.C. Circuit's order on Plaintiffs' mandamus petition firmly rejected Plaintiffs' contention that the objections addressed in the HDO were a sham.  *See supra* at 6-10.  The D.C. Circuit found that Plaintiffs have not "shown that [the FCC] has a 'crystal clear' duty to rule on their application without resort to a hearing."  Doc. No. 55-12 (DISH MTD Ex. 12).  This ruling neutralizes the sham exception.

Plaintiffs argue that the FCC's HDO does not insulate Defendants from liability, because it was not a final agency action.  Omnibus Opp. at 133.  A final agency action is not required to

---

[4] *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993); *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799 (D.C. Cir. 2001); *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 358 (5th Cir. 1983) (noting that the immunity is grounded *both* in the First Amendment and in the Sherman Act).

[5] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015); *Jefferson-11th St., LLC v. District of Columbia*, 2020 WL 3035038 (D.D.C. June 5, 2020); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81 (D.D.C. 2010).

neutralize the sham exception; it will suffice to show that a party's positions were not objectively baseless. *See, e.g.*, *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 20 (D.D.C. 2014) (suit was not "objectively baseless" where it survived motion to dismiss), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015).

Finally, Plaintiffs argue that *Noerr-Pennington* does not apply because Defendants purportedly made misrepresentations and misleading statements in their FCC filings. Omnibus Opp. at 138-39. Plaintiffs claim that Mr. Goodfriend misrepresented documents in the record "to assert baseless claims that Standard General would impose layoffs." *Id.* However, the Media Bureau agreed with Mr. Goodfriend, stating in the HDO that the record contains documents "seeming to indicate intent and commitments to reduce station-level staff ..." Doc. 55-11 at 018, ¶ 43 (DISH MTD Ex. 11). The HDO found a genuine threat of layoffs, which would harm localism. *Id.* at 002, ¶ 3 ("substantial and material questions remain as to . . . the effect on localism through potential reductions in local jobs."). Plaintiffs' misrepresentation arguments may not be credited, and therefore provide no basis to avoid *Noerr-Pennington*.

### D. Plaintiffs Otherwise Fail to Plead Plausible Claims Against DISH and Ergen.

DISH and Ergen demonstrated that the Amended Complaint fails to allege plausible claims against them. In defense of the plausibility of their allegations, Plaintiffs stress that inferences should be drawn in their favor at this stage of the litigation. However, Plaintiffs may only receive the benefit of *reasonable* inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The inferences that Plaintiffs ask this Court to draw with respect to DISH and Ergen are wholly unreasonable. Plausibility requires more than a "sheer possibility" that a defendant may have acted unlawfully. *Id.* The allegations against DISH and Ergen fail the plausibility test, and fail to state a claim.

1.      **Civil Rights Counts.**

The civil rights counts pleaded against DISH and Ergen are conspiracy claims.  These claims fail, because Plaintiffs fail to plausibly plead DISH and Ergen's participation in a conspiracy, let alone a conspiracy formed for the purpose of discriminating on the basis of race.

*Plaintiffs Fail to Plead a Plausible Conspiracy.*  Mere association and parallel behavior does not make out a plausible conspiracy claim.  Plaintiffs argue that they provide sufficient support for a conspiracy claim in their general allegations that (i) Defendants shared a legitimate mutual dislike of the transaction; (ii) Defendants Goodfriend, Allen and Ergen know each other and have worked together; and (iii) Ergen had meetings with Chairwoman Rosenworcel.  Omnibus Opp. at 88-89.  Plaintiffs are mistaken.  As the D.C. Circuit has explained, "[t]he mere showing of frequent relations between alleged co-conspirators, [] is insufficient to infer an illegal agreement."  *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1488 (D.C. Cir. 1984) (refusing to "infer a conspiracy to violate the antitrust laws based on a showing of regular contact between two independent professional associations on general matters of mutual interest and concern").

The type of factual details that would allow the court "to infer that it was plausible that an actual agreement existed" include "who initiated the discussions . . ., what they proposed, the object of the alleged conspiracy, the fact that an agreement was reached among all [] defendants, and where and when the agreement was reached  . . ."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d 27, 34 (D.D.C. 2008).  Plaintiffs' Amended Complaint contains no such details.

*Plaintiffs Fail to Plead a Conspiracy Motivated by Racial Animus.*  A conspiracy under § 1985(3) must be "aimed at" interfering with the plaintiffs' civil rights.  The impairment of a protected right needs to be a conscious objective of the alleged enterprise.  *Bray v. Alexandria*

*Women's Health Clinic*, 506 U.S. 263, 275 (1993) (dismissing § 1985(3) claims because it was implausible that anti-abortion activists were acting for the purpose of interfering with civil rights). An incidental impact on a protected right will not suffice. *Id.*

A plaintiff on a § 1985(3) claim must present factual allegations to provide plausible support that defendants manifested the specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a racially discriminatory motive. *Nanko Shipping, Guinea v. Alcoa, Inc.*, 330 F. Supp. 3d 439, 449 (D.D.C. 2018). Section 1985(3) does not reach conspiracies motivated by economic or commercial animus. *United Broth. of Carpenters v. Scott*, 463 U.S. 825, 831-34 (1983).

With respect to DISH and Ergen, Plaintiffs concede that their concerns about the license-transfer application were purely economic. *See* Am. Comp. ¶¶ 83, 138, 139, 301, 304, 319. The lack of racial animus forecloses the civil rights conspiracy claims.

In a vain attempt to salvage these claims, Plaintiffs argue that "mixed motives" will not preclude § 1985 liability for DISH and Ergen. Omnibus Opp. at 94. But "mixed motives" still require some modicum of racial animus. The case law requires that a defendant be motivated "at least in part" by racial animus. *Id.* at 94-95. With respect to DISH and Ergen, Plaintiffs plead no racial animus whatsoever. And, they plead no circumstances that might allow a reasonable inference that DISH and Ergen harbored any racial animus.

Acknowledging that DISH and Ergen lacked any intention to discriminate based on race, Plaintiffs seek to "impute" the purported racial animus of others to them. Omnibus Opp. at 95. That circular reasoning cannot save their claims. Plaintiffs argue that, *after* DISH and Ergen allegedly entered into a purported "conspiracy" (without any racial motivation), they became imputed with responsibility for racially charged statements made by others in FCC filings. *Id.*

16

Section 1985(3) requires that racism serve as the purpose of the conspiracy at the time of its formation. *See Nanko Shipping*, 330 F. Supp. 3d at 449. The alleged racism cannot come later, purely through imputation. The § 1985(3) claims against DISH and Ergen fail to state a claim upon which relief may be granted.

Plaintiffs concede that they cannot assert a § 1986 claim without a viable § 1985 claim. Omnibus Opp. at 96-97. Because the § 1985 claim fails, the § 1986 claim fails as well. Otherwise, the § 1986 claim fails because Plaintiffs do not plausibly plead that DISH and Ergen had the power to thwart the alleged conspiracy *See Smith v. Trump*, No. 21-CV-02265 (APM), 2023 WL 417952, at *7 (D.D.C. Jan. 26, 2023) ("[T]o hold a private individual responsible under § 1986, the person must be someone with actual authority to compel others to act or refrain from acting."), *aff'd*, No. 23-7010, 2023 WL 9016458 (D.C. Cir. Dec. 29, 2023). Plaintiffs' own allegations have DISH and Ergen on the outskirts of the purported conspiracy, and without any authority or influence to prevent it.

### 2.    Tortious Interference Counts.

Plaintiffs' tortious interference counts fail to state plausible claims for relief. Plaintiffs concede, as they must, that no contract was breached and no one in a business relationship with Plaintiffs was induced to end that relationship. Plaintiffs' transaction terminated after their financing commitments expired. Am. Comp. ¶ 261. DISH and Ergen had no role or influence in that financing, and did not interfere with Plaintiffs' funding. Indeed, DISH did not even request that the FCC deny the license-transfer application. Instead, it filed comments that sought to correct misstatements by Cox Media Group and it advocated for the FCC's imposition of conditions on any approval of the license-transfer application. *See* Docs. 55-8, 55-9 and 55-10 (DISH MTD Exhs.8, 9, 10, respectively). In any event, a business expectancy that depends on

governmental approval is too remote to support a tortious interference claim. *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978).

### 3. Civil Conspiracy Count.

Plaintiffs rely on their arguments in support of their civil rights and tortious interference claims to support their claim for civil conspiracy. Omnibus Opp. at 112. The civil conspiracy claim fails for all of the same reasons that those other claims fail.

### E. This Court Should Deny Leave to Amend.

Plaintiffs close their Opposition with a request for leave to amend. Omnibus Opp. at 140. That request should be denied, because leave to amend would be futile. *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Williams v. Chugach Alaska Corp.*, 210 F. Supp. 3d 25, 29–30 (D.D.C. 2016). Plaintiffs have not demonstrated how they might possibly cure the fatal deficiencies in their Amended Complaint. Nor have they complied with the local rules of this Court, which require that a request for leave to amend be accompanied by a proposed amended pleading. *See* Local Civil Rule 7(i); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130–31 (D.C. Cir. 2012). A bare request for leave to amend in an opposition to a motion to dismiss, without any indication of the grounds on which amendment is sought, does not suffice under Rule 15(a). *Id.* Plaintiffs already amended their complaint, in response to DISH and Ergen's initial Rule 11 motion (among others), and failed to cure the fatal deficiencies in the pleadings. There is no reason to grant another opportunity to amend.

## III.     CONCLUSION

For all of the foregoing reasons, and the reasons set forth in their Statement of Points and Authorities in Support of their Motion to Dismiss, Defendants DISH and Ergen respectfully request that this Court dismiss the Amended Complaint and deny Plaintiffs' request for leave to replead.

Dated:  December 10, 2024                    Respectfully submitted,

                                             STEPTOE LLP

                                             By:  *s/ Elyse D. Echtman*
                                                  Elyse D. Echtman
                                                  D.D.C. Bar No. NY0583
                                                  1114 Avenue of the Americas
                                                  New York, New York 10036
                                                  (212) 378-7551
                                                  eechtman@steptoe.com

                                                  *Counsel for Defendants DISH Network*
                                                  *Corporation and Charles Ergen*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I caused a true and accurate copy of the foregoing Reply in Support of

Motion to Dismiss by Defendants DISH Network Corporation and Charles Ergen to be filed

today, December 10, 2024, through the Court's CM/ECF system, which will send notice to all

parties of record.

*/s/ Elyse D. Echtman*
One of the Attorneys for
Defendants DISH Network
Corporation and Charles
Ergen
