UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| SGCI HOLDINGS III LLC and SOOHYUNG KIM,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION; JESSICA ROSENWORCEL, in her official capacity as Chairwoman of the FCC; HOLLY SAURER, in her official capacity as Chief of the Media Bureau; ALLEN MEDIA, LLC, d/b/a Allen Media Group; DISH NETWORK CORPORATION; EMMER CONSULTING, INC. d/b/a I Street Advocates f/k/a The Goodfriend Group; THE NEWSGUILD-CWA; NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES AND TECHNICIANS-CWA; UNITED CHURCH OF CHRIST, OC INC., d/b/a United Church of Christ Media Justice Ministry; COMMON CAUSE; BYRON ALLEN; CHARLES ERGEN; and DAVID GOODFRIEND,<br><br>    Defendants. | CASE NO.: 1:24-cv-01204-RC |

**DEFENDANTS ALLEN MEDIA LLC AND BYRON ALLEN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

                                                                                     **Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 2

       A.     This Court Lacks Subject Matter Jurisdiction........................................ 2

       B.     Plaintiffs Cannot Re-Argue Unreasonable Delay ................................. 6

       C.     Plaintiffs' Claims Are Barred By The First Amendment ....................... 7

       D.     Leave To Amend Should Be Denied ..................................................... 10

III.   CONCLUSION.................................................................................................. 10

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972) .................................................................................................. 7, 8

*City of Columbia v. Omni Outdoor Advertising, Inc.,*
    499 U.S. 365 (1991) ........................................................................................................ 8

*Fed. Election Comm'n v. Wis. Right to Life, Inc.,*
    551 U.S. 449 (2007) ........................................................................................................ 9

*Hill v. Colorado,*
    530 U.S. 703 (2000) ........................................................................................................ 9

*Mace v. Skinner,*
    34 F.3d 854 (9th Cir. 1994) ............................................................................................. 5

*Mais v. Gulf Coast Collection Bureau Inc.,*
    768 F.3d 1110 (11th Cir. 2014) ....................................................................................... 3

*Manhattan Cmty. Access Corp. v. Halleck,*
    587 U.S. 802 (2019) ........................................................................................................ 9

*McNary v. Haitian Refugee Ctr., Inc.,*
    498 U.S. 479 (1991) ........................................................................................................ 4

*Merritt v. Shuttle, Inc.,*
    245 F.3d 182 (2d Cir. 2001) ........................................................................................ 5, 6

*NRA v. Vullo,*
    602 U.S. 175 (2024) ..................................................................................................... 8, 9

*Patterson v. United States,*
    999 F. Supp. 2d 300 (D.D.C. 2013) ................................................................................ 9

*TRAC v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) .............................................................................. 2, 3, 4, 6

*United States v. Abu Khatallah,*
    151 F. Supp. 3d 116 (D.D.C. 2015) .......................................................................... 9, 10

**FEDERAL STATUTES**

28 U.S.C. § 2342 .................................................................................................................... 2

28 U.S.C. § 2344 .................................................................................................................... 2

47 U.S.C. § 402 ............................................................................................................... 2

**FEDERAL RULES**

Fed. R. Civ. P. 11 ........................................................................................................ 10

Fed. R. Civ. P. 12 ........................................................................................................ 10

I.   **INTRODUCTION**

This is not a complicated case.  Plaintiffs sought FCC approval in connection with their deal to acquire television stations from TEGNA.  Plaintiffs expected that the FCC would grant approval within 180 days.  But the FCC did not do so.  Instead, it granted additional public comment periods and ultimately decided that an evidentiary hearing was necessary.  Plaintiffs objected to these FCC actions and ultimately appealed to the D.C. Circuit, arguing that the FCC was engaging in unreasonable delay.  The D.C. Circuit denied the appeal.

Plaintiffs now seek vengeance against the FCC, FCC officials, trade unions and a bevy of private actors who they think are responsible for killing the deal.  No amount of money spent on high-priced lawyers can change the fundamental problem with Plaintiffs' case—they are in the wrong court.  Congress established a limited judicial review mechanism, entrusting the D.C. Circuit with exclusive original jurisdiction to review FCC actions.

Plaintiffs, now represented by different lawyers, claim that they did not have a fair opportunity to present their case under the framework set by Congress.  This position has been rejected by the D.C. Circuit.  Plaintiffs are not allowed to seek a second bite at the apple in this Court.

Plaintiffs' claims are also defective and must be dismissed because they seek to hold the Allen Defendants liable for their protected speech.  Plaintiffs acknowledge that the Allen Defendants were engaged in protected speech, but they argue that does not matter because the Allen Defendants were part of a broader "conspiracy" to kill

the deal. This argument is legally meritless. There is no "conspiracy" exception to the First Amendment. The Allen Defendants have a constitutional right to donate to politicians and lobby the government, and no amount of rhetoric can support imposing a money judgment against them for engaging in protected speech.

The case should be dismissed on these grounds.

## II. ARGUMENT

Plaintiffs fail to state claims against the Allen Defendants for the reasons set forth in the Motion. The Allen Defendants write separately here to call attention to the fundamental problems with Plaintiffs' case that cannot be cured by amendment:

### A. This Court Lacks Subject Matter Jurisdiction

Under the Telecommunications Act and the Hobbs Act, federal district courts lack jurisdiction to review FCC actions. 28 U.S.C. §§ 2342, 2344 ("Hobbs Act"); 47 U.S.C. § 402(a), (b)(3); *TRAC v. FCC*, 750 F.2d 70, 75, 77 (D.C. Cir. 1984) (review of FCC action is committed by statute to the Court of Appeals). Federal district courts also lack jurisdiction to review claims that the FCC did not issue a final appealable order in a timely fashion. *TRAC*, 750 F.2d at 76 (the D.C. Circuit has exclusive jurisdiction to review claims that the FCC engaged in unreasonable delay). Under this established law, this Court has no jurisdiction over Plaintiffs' claims. (Mot. at pp. 14-21.)

In their Opposition, Plaintiffs state that they are not challenging any specific FCC action, but rather the "whole course of unprecedented, unlawful, and discriminatory FCC proceedings." (Opp. at p. 38.) This is nonsense. Plaintiffs never

describe what their case is about outside specific FCC actions this Court cannot review. Plaintiffs just rely on labels and conclusions, and then refer the Court indiscriminately to 75 consecutive Paragraphs wherein they allege their claims. (Opp. at p. 39, citing FAC ¶¶ 324-99.)

Stripping away Plaintiffs' rhetoric, the FAC makes clear that the only discrimination Plaintiffs allege they suffered arose from FCC actions as part of the agency's review of Standard General's license-transfer applications. (FAC ¶¶ 126, 131, 146, 156, 168, 201, 216, 222.) These alleged FCC actions are extending public comment periods (FAC ¶¶ 131, 146, 156, 168, 201), demanding more documents than initially requested (FAC ¶¶ 130, 168), issuing the Hearing Designation Order ("HDO") (FAC ¶¶ 225-26), and not approving the applications within the FCC's 180-day "shot clock" (FAC ¶ 126). This Court simply has no jurisdiction to review these FCC actions, even within disputes between private parties. *TRAC*, 750 F.2d at 75, 77; *Mais v. Gulf Coast Collection Bureau Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014) (whether challenge to an "FCC order 'arises in a dispute between private parties makes no difference'").

Plaintiffs' entire case hinges on the allegation that the FCC engaged in unreasonable delay in reviewing Standard General's license-transfer applications. (*E.g.*, FAC ¶ 331 (FCC denied equal protection by not voting "on [the applications] in a reasonable time"), ¶¶ 347-48 (blocking "FCC approval" and thereby "kill[ing] the Standard General-TEGNA deal"), ¶ 369 (interference "by delaying FCC review").) Indeed, Plaintiffs are seeking, as compensatory damages, the full amount of the $136

million "breakup" fee they paid to TEGNA. (FAC at p. 140.) Plaintiffs make it crystal clear that they had to pay this "breakup" fee because the FCC issued the HDO, which Plaintiffs label as an illegal "pocket veto." (*E.g.*, FAC ¶ 225 (the HDO "had no basis in law and made no sense"), ¶ 226 (the HDO "violated FCC rules").) There is no way around the fact that Plaintiffs are asking this Court to review the legality of the FCC HDO, which this Court cannot do.[1] *TRAC*, 750 F.2d at 75, 77.

It does not matter if the HDO is a final order or not. The D.C. Circuit has *exclusive jurisdiction* to review not only final FCC orders but also claims that the FCC failed to issue a final order in a timely fashion. 750 F.2d at 77 ("a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute"). Indeed, the D.C. Circuit held that it would be "anomalous" for federal district courts to have original jurisdiction over wide swaths of non-final FCC conduct. *Id.* That would defeat the intent of Congress to limit judicial review of agency actions to the Courts of Appeal which have "develop[ed] an expertise concerning the agencies assigned them for review." *Id.* at 78.

Plaintiffs have no response to *TRAC* other than to say that they are not challenging any FCC order, but that argument is entirely conclusory and make weight. Plaintiffs then say their case is analogous to *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), but that was a class action making a "general challenge" to

---

[1] Plaintiffs say their case is not about the legality of the HDO, but Plaintiffs reference the HDO and/or "pocket veto" a total of 77 times in their FAC and describe it as *the reason* why they could not close the deal. (*E.g.*, FAC ¶ 4 (FCC Chairwoman Rosenworcel "had her staffer *kill the deal with a pocket veto*") (emphasis added).)

a government process that deprived Haitian immigrants of due process in connection with an amnesty program. *Id.* at 490-91, 498-99. Plaintiffs are not representing a class or anyone other than themselves and are not challenging any systematic governmental processes.

Indeed, Plaintiffs think the FCC's process works just fine. Their complaint is that the FCC departed from its usual process only as to their applications. (*E.g.*, FAC ¶ 316 ("Media Bureau also departed from longstanding FCC practice"), ¶ 378 (FCC "ignored well-established FCC precedent").) Plaintiffs use the term "unprecedented" 21 times in the FAC to describe FCC actions—meaning, this is a one-off case and not a general challenge to FCC processes.[2] (*E.g.*, *id.* ¶ 23 (calling the FCC's actions an "unprecedented" effort to kill the deal).)

Plaintiffs also cite *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 189 (2d Cir. 2001), but that decision involved tort claims that were not based on agency *administrative* action. In *Merritt*, a pilot claimed he suffered injuries due to the FAA's failure to provide accurate and timely weather updates and that the FAA improperly suspended his license. *Id.* at 184-85. The Second Circuit held that the district court lacked jurisdiction to review the FAA's *administrative* actions, such as suspending his license, but the district court had jurisdiction over the tort claims that were

---

[2] Plaintiffs' reliance in *Mace v. Skinner*, 34 F.3d 854 (9th Cir. 1994), fails for the same reason. Plaintiffs are not challenging any "process"; they are challenging agency *actions* based on the merits of their applications. *Id.* at 856, 859 (noting that the plaintiff's claims were not "based on the merits of his individual situation" but rather a broad challenge to allegedly unconstitutional FAA practices, primarily revoking a certificate without a jury).

*independent* of FAA administrative actions, such as failing to provide weather updates. *Id.* at 186-89. Here, Plaintiffs are only challenging FCC administrative actions, such as extending public comment periods and ordering an evidentiary hearing. (FAC ¶¶ 126, 131, 146, 156, 168, 201, 216, 222.)

In sum, this Court has no jurisdiction over this case. It has long been established that when a party aggrieved by FCC actions seeks judicial review of those actions, like Plaintiffs do here, it must exhaust FCC administrative remedies and then seek judicial review in the D.C. Circuit. *TRAC*, 750 F.2d at 75, 77. It cannot repackage its arguments and label them as "constitutional challenges" to circumvent this well-established judicial review mechanism set by Congress. *Id.*

### B.      Plaintiffs Cannot Re-Argue Unreasonable Delay

Plaintiffs are also impermissibly attempting to relitigate their claim that the FCC engaged in unreasonable delay. Plaintiffs concede, as they must, that the D.C. Circuit rejected their claim of unreasonable delay. (Opp. at p. 46.) Plaintiffs try to avoid the preclusive effect of this prior ruling by arguing that their case is not about the FCC's unreasonable delay, but that position is contrary to their own allegations in the FAC.

Plaintiffs also try to show that this case is different than the one it presented in the D.C. Circuit, but *res judicata* bars claims that *could have been raised* in the prior proceeding. (Mot. at pp. 21-23.) That's the whole point of claim preclusion—parties cannot repackage their case after losing to get a second bite at the apple. (*Id.*)

### C.     **Plaintiffs' Claims Are Barred By The First Amendment**

Plaintiffs do not dispute that political donations and lobbying are First Amendment-protected speech. (Opp. at pp. 122-27.) They argue, however, that the Allen Defendants can still be liable because they "conspired" with others who engaged in unlawful conduct that had, as its object, an unlawful goal. (*Id.*) This argument is legally meritless.

There is no exception to the First Amendment that would allow a private party to sue another for engaging in protected speech as long as that speech was part of a broader "conspiracy." This is another make weight argument. It makes no sense to say that parties who agree to engage in First Amendment protected activity somehow lose their rights—lose constitutional protection—because they agreed to act in concert.[3] Plaintiffs seem to be trying to invoke the "sham" exception to the *Noerr-Pennington* doctrine.[4] (Opp. at p. 123 (relying on the "classic" sham case, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972)).) The "sham" exception does not apply for the simple reason that, even if the Court were to assume the Allen Defendants did everything alleged in the FAC with the intent to block the sale and even to "discriminate," the Allen Defendants and its alleged "conspirators" *were successful* in convincing the FCC that there were significant problems with the deal. (Mot. at pp. 28-29 (the sham exception does not apply if the protected activity was

---

[3] The Allen Defendants deny that they agreed to act in concert with the other defendants.

[4] The *Noerr-Pennington* doctrine applies for the reasons set forth in the Motion. (Mot. at pp. 26-27.) It is a separate and independent basis to dismiss the FAC.

*successful* in achieving its aims)); *see City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991).

Plaintiffs make it crystal clear that, in their view, the Allen Defendants intended to block the sale so that they could acquire the stations. (FAC ¶¶ 18-19.) The "sham" exception cannot as a matter of law apply because Plaintiffs allege that the FCC "blocked" the sale. *City of Columbia*, 499 U.S. at 380. This case is therefore not analogous to *Cal. Motor Transp.*, Plaintiffs' lead case, which was a "classic example" of the sham exception where a group of competitors conspired to file "frivolous objections to the license application of a competitor, *with no expectation of achieving denial of the license* but simply in order to impose expense and delay." *Id.* (emphasis added).

Grasping at straws, Plaintiffs cite *NRA v. Vullo*, 602 U.S. 175 (2024), as support for their "broader conspiracy" exception to well-established First Amendment doctrine. (Opp. at p. 122.) But that case is inapposite because it involved a *government agency* that was accused of violating the First Amendment by suppressing the free speech rights of private parties through sanctions-backed threats made through intermediaries. *Vullo*, 602 U.S. at 198 ("the critical takeaway is that the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech, directly or (as alleged here) through private intermediaries").

The rules are different for *private parties* who, unlike the government, are *protected* by the First Amendment. *E.g.*, *Manhattan Cmty. Access Corp. v. Halleck*,

587 U.S. 802, 804, 808 (2019) ("The Free Speech Clause of the First Amendment *constrains* governmental actors and *protects* private actors.") (emphasis added). The *government* in virtually every circumstance is prohibited from engaging in viewpoint discrimination in enforcing the law, either directly or indirectly. *Vullo*, 602 U.S. at 198; *Hill v. Colorado*, 530 U.S. 703, 735 (2000) (Souter, J., concurring) ("the government is held to a very exacting and rarely satisfied standard when it disfavors the discussion of particular subjects . . . or particular viewpoints within a given subject matter"). *Private parties*, by contrast, enjoy strong constitutional protections regardless of the motivation behind their protected speech. *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 468 (2007) ("[U]nder well-accepted First Amendment doctrine, a speaker's motivation is entirely irrelevant to the question of constitutional protection" as an "intent-based test [for First Amendment protection] would chill core political speech"); *Patterson v. United States*, 999 F. Supp. 2d 300, 312 (D.D.C. 2013) ("The First Amendment right to free speech is a bedrock constitutional freedom.").

Plaintiffs also cite *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 144 (D.D.C. 2015), for the proposition that a defendant engaging in protected speech can be liable for coordinating their efforts "with conspirators." (Opp. at p. 123.) *Khatallah* has nothing to do with this case. In that case, the court denied Abu Khatallah's motion to dismiss charges that he provided material support for the attack against the U.S. compound in Libya. The court rejected his First Amendment challenge because "even a cursory review" of the indictment made clear that the charges were

based "not on protected speech" but on his active participation in the attack. *Khatallah*, 151 F. Supp. at 144 (he coordinated the efforts of the attackers and turned away first responders).

In sum, there is no legal support for Plaintiffs' attempt to circumvent bedrock First Amendment protections.

### D. Leave To Amend Should Be Denied

Plaintiffs have now had two opportunities to allege their case. They have amended their allegations in response not just to proposed Rule 12 motions, but also in response to Rule 11 motions. Despite this, Plaintiffs cannot articulate a legal basis to show that they are in the right court or that they can state a claim. Plaintiffs are well-capitalized and hired experienced counsel to comb through a voluminous file to come up with some viable theory, but Plaintiffs continue to come up empty. Leave to amend would be futile and thus should be denied.

## III. CONCLUSION

For the reasons set forth herein, the Court should grant the Motion with prejudice.

Dated: December 10, 2024

/s/ *David W. Schecter*
Louis R. Miller (pro hac vice)
David W. Schecter (pro hac vice)
Nadia A. Sarkis (pro hac vice)
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
smiller@millerbarondess.com
dschecter@millerbarondess.com
nsarkis@millerbarondess.com
(310) 552-4400

*Attorneys for The Allen Media Group, Inc. and Byron Allen*